UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2004 JUN 21  P 4:46

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CYCLE-CRAFT CO., INC. d/b/a <br> BOSTON HARLEY-DAVIDSON/BUELL <br> Plaintiff, | * <br> * <br> * <br> * |
| v. | * Civil Action No. 04-11402-NMG <br> * |
| HARLEY-DAVIDSON MOTOR CO., INC. <br> and BUELL DISTRIBUTION CO., LLC <br> Defendants. | * <br> * <br> * |

### DECLARATION OF RONALD BUCHBAUM

I, RONALD BUCHBAUM, being duly sworn, do hereby depose and state:

1. I am over the age of 18 years, and have personal knowledge of all of the facts stated in this Declaration.

2. I am General Manager of plaintiff Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft"). I have held that position since February 2003. As general manager of Cycle-Craft, I oversee all aspects of the dealership on behalf of John Atwood, the president and co-owner. I report to Mr. Atwood.

3. Harley-Davidson's allocation closes on July 31 of each year. Any inventory not sold by July 31 is deducted from the dealership's allocation in the following year, and then replaced in the year after that. In July, 2003, Cycle-Craft faced an overstocked inventory situation. As a result, there was a risk to Cycle-Craft of a reduction in its 2004 allocation.

4. To reduce the overstocked inventory and prevent a temporary reduction in the dealership's allocation, I extended an offer to Cycle-Craft employees or their relatives to buy

units during July 2003 at $500.00 over dealer invoice. This step was within my discretion as General Manager of the dealership.

5.    To my knowledge, only two Cycle-Craft employees or employee relatives took advantage of this offer to buy units at $500.00 over dealer invoice. One of these was Joseph Giordano, who is a Cycle-Craft employee. Mr. Joseph Giordano bought a motorcycle on July 3, 2003.[1] The other, an employee named Charles Potts, bought a motorcycle on July 10, 2003. Documents demonstrating these two sales at $500.00 over invoice are attached as Exhibits 1 and 2 to this Declaration. Harley-Davidson has not challenged these two sales.

6.    Later in July, 2003, in an attempt to clear further inventory, I offered to let Cycle-Craft employees and family buy motorcycles at dealer cost without any markup. Again, this was within my discretion. Thirteen employees or employee relatives initially ordered motorcycles pursuant to this expanded offer, but none of these sales were ultimately completed.

7.    For a variety of reasons, none of these 13 prospective employee/employee-relative buyers carried through with their purchases. Some simply changed their minds for personal reasons. All understood that if a customer indicated interest in the unit before the employee/relative took delivery, the employee/relative would cancel his order as a courtesy to the dealership, to allow the dealership to make the sale. Several of the employees/relatives acted in accordance with this understanding, and relinquished their chosen motorcycles to customer purchasers.

8.    I have personal knowledge of the exact details of two of the challenged sales, which demonstrate what occurred with respect to many of these motorcycles. I intended to buy two motorcycles myself at dealer cost. One of these was intended for my son Jarred and one was for myself. I understood, however, that, if a customer indicated an interest in either of these units

---

[1] Mr. Fred Giordano, Joseph Giordano's brother, also purchased a motorcycle, on July 10, 2003. This purchase is addressed in the Declaration of Kenneth McPhee.

2

before I took delivery of them, I would turn them back to the dealership as a matter of courtesy and loyalty, in order to allow the dealership to make the sale.

9. It is important to stress that these were purchases that I would not have chosen at the time to make, but for the potential over-stock situation resulting in a loss of future motorcycle allocation to the dealership. I believe this is true as well with regard to the motorcycles chosen by other Cycle-Craft employees and relatives. In other words, while I was willing to "do my part" and purchase two motorcycles at cost, these were not motorcycles that I was in need of, or that I would have otherwise purchased at the time. I was therefore pleased when customers (paying full price) presented themselves and showed interest in the motorcycles.

10. In fact, an individual named Edwin Velasquez came into the dealership and expressed interest in the motorcycle intended for Jarred on July 31, 2003. I cancelled my purchase of Jarred's motorcycle, and Mr. Velasquez signed a bill of sale purchasing the motorcycle that day. Exhibit 3.

11. Similarly, before I had taken delivery of the other motorcycle, an individual named Robert Tindle came into the dealership and expressed interest in it. I cancelled my purchase, and Mr. Tindle signed a bill of sale purchasing the motorcycle on August 6, 2003. Exhibit 4.

12. It is not at all uncommon for a person to come into the dealership and act as a referral or representative for other individuals who wish to buy motorcycles from Cycle-Craft. For example, Thomas Mulvey, a police officer in Lynn, Massachusetts, routinely brings or refers groups of three or four friends, co-workers or acquaintances to Cycle-Craft to buy motorcycles. Officer Mulvey has done this several times a year for the last two or three years.

I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts that the foregoing is true and correct and that this declaration was executed in Everett, Massachusetts on JUNE 21, 2004.

_____
Ronald Buchbaum

4

LIBA/1387536.3