UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN 21 P 4: 46

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| CYCLE-CRAFT CO., INC. d/b/a | * | |
| BOSTON HARLEY-DAVIDSON/BUELL | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.  04-11402-NMG |
| | * | |
| HARLEY-DAVIDSON MOTOR CO., INC. | * | |
| and BUELL DISTRIBUTION CO., LLC | * | |
| Defendants. | * | |

## DECLARATION OF KENNETH MCPHEE

I, KENNETH MCPHEE, being duly sworn, do hereby depose and state:

1.      I am over the age of 18 years, and have personal knowledge of all of the facts stated in this Declaration.

2.      I am the operations manager of plaintiff Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft").  I have been employed by Cycle-Craft in different positions since 1997.  As operations manager, I oversee the following departments: new and used motorcycle sales, parts and accessories, service, finance and insurance, and general merchandise. I report to Ron Buchbaum, general manager of the dealership, and to John Atwood, its president.

3.      On February 17 and 18, 2004, Harley-Davidson conducted an inspection of Cycle-Craft's sales records.  I met with Harley-Davidson's personnel while they were at the dealership.  They were given free and unfettered access to the dealership, and to approximately 2800 records of motorcycle sales that occurred in the years 2001 through 2003.  Harley-Davidson's personnel asked Cycle-Craft's employees to leave the room while they were conducting the records inspection, and we did so.

4.    I have reviewed the letter that was sent to Cycle-Craft following that inspection, from Harley-Davidson's Vice President Jon Flickinger, dated April 20, 2004 and titled "Inspection of Records." In that letter, Mr. Flickinger challenges 45 unit sales that were made in the summer of 2003, out of the 2800 sales records provided to Harley-Davidson to review. A copy of that letter is attached as Exhibit 1 to this Declaration.

5.    In my capacity as operations manager, I am familiar with each of the sales discussed in Mr. Flickinger's "Inspection of Records" letter.

## Sales to Residents of Florida – 19 Motorcycles

6.    Harley-Davidson's "Inspection Of Records" letter claimed that 19 motorcycles were "purchased from Cycle-Craft by motorcycle wholesaler, DCI Imports International of Deerfield Beach, Florida (DCI)." Id. In point of fact, according to the criteria set out in the Harley-Davidson non-retail sales policy, by which I and my staff evaluate each and every motorcycle purchase, each of these motorcycles was purchased by an individual. Each individual purchaser took title to his or her motorcycle in his or her own name, as reflected on the Certificates of Origin in each deal jacket. Cycle-Craft properly identified each individual purchaser as the customer on the Sales and Warranty Registration ("SWR") form for each motorcycle, again according to Harley-Davidson policy. Each of the cashier's checks representing payment for these motorcycles indicates that the remitter is the individual listed on the SWR. On paper and as far as anyone at Cycle-Craft knew or could have known, these were sales to individual purchasers in compliance with all Harley-Davidson policies.

7.    A sample set of documents from one of these 19 sales is attached as Exhibit 2 to this Declaration. I have personally reviewed each of the sales folders for the other 18 Florida sales, and can attest that each contains similar documents reflecting sales to individual purchasers.

## Sales to Residents of New Hampshire – 8 Units

8.      The "Inspection of Records" letter identifies eight units which Harley-Davidson claims were sold "to Lee Custom Cycle, a used motorcycle dealer in Lee, New Hampshire." Exhibit 1. Again, in point of fact each of the motorcycles was sold not to Lee Custom Cycle, but to the individuals identified as the customer on the SWRs. Each customer took title to the motorcycle in his or her own name and, to Cycle-Craft's knowledge, paid for the motorcycle with his or her own funds. Each customer individually took delivery of his or her unit on Cycle-Craft's premises. All of this occurred in compliance with Harley-Davidson policy.

9.      I was unaware of any affiliation between the individual purchasers and Lee Custom Cycle, and to my knowledge, nobody at Cycle-Craft knew of any such affiliation.

10.     A sample set of documents from one of these 8 sales is attached as Exhibit 3 to this Declaration. I have personally reviewed each of the sales folders for the other 7 New Hampshire sales, and can attest that each contains similar documents reflecting sales to individual purchasers.

## Sale to Jayne Handscom – One Unit

11.     The "Inspection of Records" letter claims that one motorcycle "was sold by Cycle-Craft to Lou Winz Auto, a Massachusetts used vehicle dealer, but falsely designated as a retail sale." Exhibit 1. This is incorrect. The ultimate user of the motorcycle is in fact one Jayne Handscom. I believe that Harley-Davidson's confusion stems from the fact that Ms. Handscom is apparently (based on my review of the documentation) the wife of Lou Weinstein, owner of Lou Winz Auto. The sales folder contains a copy of Mr. Weinstein's driver's license, which lists the same address as Ms. Handscom's. The bill of sale to Ms. Handscom bears a notation "Lou's cell

phone," and the cell phone number. Copies of the relevant paperwork are reproduced as Exhibit 4 to this Declaration.

12.    My review of the sales documents leads me to conclude that Lou Winz Auto bought this unit for the use of Jayne Handscom, the wife of its owner. Lou Winz Auto is listed as the customer on the SWR and on the Certificate of Origin. Ms. Handscom signed both documents on behalf of Lou Winz Auto. Copies of the relevant documents are included in Exhibit 4 to this Declaration. Such a purchase by a business – in this case an auto dealership – for the use of an individual is not at all uncommon.

**The Remaining 17 Sales**

13.    The "Inspection of Records" letter states that "Cycle-Craft also submitted false Sales and Warranty Registration Forms," under fictitious names or sales dates, for 17 units. Exhibit 1. This is incorrect. All of these were in fact legitimate retail sales.

14.    Three of these units were kept by Cycle-Craft. John Atwood, President and co-owner of Cycle-Craft, has the dealership purchase two or three motorcycles from every year's allocation to add to his personal collection. The three units were in fact added to that collection. They were not falsely reported sold at retail, as Mr. Flickinger mistakenly claims. They were legitimate sales to Cycle-Craft. See Exhibit 25 to the Declaration of John Atwood ("Atwood Declaration"), a true and accurate list of the motorcycles currently in Mr. Atwood's collection.

15.    One challenged unit was sold on July 3, 2003 to Mr. Fred Giordano of 13240 Inkster Road, Romulus, Michigan. Mr. Giordano is related to a Joseph Giordano who is a Cycle-Craft employee. Mr. Fred Giordano paid for the unit with a check written on the account of his business, First Class Autos, Inc. Again, however, it is my understanding that the mere fact that a motorcycle was purchased using the funds of an auto dealership is not enough to render that sale

4

in violation of the non-retail sales policy, which concerns itself with the identify of the ultimate user of the motorcycle, and more specifically with whether the motorcycle is ultimately re-sold. Here, in fact, the motorcycle was sold to Mr. Giordano as an individual. Mr. Giordano did not re-sell the motorcycle, through his dealership or otherwise; he donated the unit to a Toys for Tots raffle in Michigan. The winner of the raffle was one Michael J. Pankake, of 9343 Caprice Drive, Plymouth, Michigan. The certificate of origin reflects that the unit was titled to Mr. Pankake, who was also properly recorded as the owner on the SWR. See Exhibit 5.

16.    The other 13 units were initially chosen for purchase by Cycle-Craft employees or their relatives. Naturally, Cycle-Craft employees and their relatives from time to time buy motorcycles from the dealership. I bought a Harley-Davidson motorcycle from Cycle-Craft on February 6, 2003.

17.    Harley-Davidson's allocation closes on July 31 of each year. Any inventory not sold by July 31 is deducted from the dealership's allocation in the following year. In July, 2003, Cycle-Craft faced an overstocked inventory situation. As a result, there was a risk to Cycle-Craft of significant reduction in its 2004 allocation.

18.    To reduce the overstocked inventory and preserve the dealership's 2004 allocation, Ron Buchbaum, the dealership's general manager, allowed Cycle-Craft employees or their relatives to buy units during July 2003 at $500.00 over dealer invoice. To my knowledge, two Cycle-Craft employees or employee relatives in fact bought and took delivery of units at $500.00 over dealer invoice. Harley-Davidson did not challenge these two sales.

19.    Later in July, 2003, still facing an overstock situation, Ron Buchbaum expanded this

program, and offered Cycle-Craft employees and family the opportunity to buy motorcycles at

dealer cost without any markup.  Thirteen employees or employee relatives initially ordered

motorcycles pursuant to this expanded offer.

20.    For a variety of reasons, none of these 13 prospective employee/relative buyers carried

through with their purchases.  Some simply changed their minds for personal reasons.  All

understood that if a customer indicated interest in the unit before the employee/relative took

delivery, the employee/relative would cancel the order as a courtesy to the dealership, to allow

the dealership to make the sale.  Several employees acted in accordance with this understanding,

and relinquished their chosen motorcycles to customer purchasers.  Each motorcycle was

thereafter in fact sold to individual purchasers, and therefore represented entirely legitimate retail

sales.

21.    These 13 transactions are among those identified in the "Inspection of Records" letter,

and are explained below.  They are identified by the last six digits of their VIN numbers.

22.    Three of these units were resold to the second purchaser on or before July 31, 2003, the

last day of the allocation period.  They are:

**638979:** Cycle-Craft general manager Ron Buchbaum ordered this motorcycle on July 31, 2003
for his son, Jarred.  Before Mr. Buchbaum took delivery, customer Edwin Velasquez negotiated
the purchase of this unit.  Mr. Buchbaum cancelled his purchase, and the unit was purchased by
Mr. Velasquez.  See Declaration of Ronald Buchbaum; see also Exhibit 6 to this Declaration.

**107390:** Michael Bloom, Cycle-Craft's sales manager, ordered this unit on July 31, 2003.  Mr.
Bloom later changed his mind and cancelled his purchase of this unit.  It was then purchased by
customer Joann Stanwood.  The second bill of sale reflects that Ms. Stanwood negotiated the
purchase of this unit on July 31, 2003, although funding was not complete until the next day,
August 1, 2003.  The SWR was properly adjusted to reflect Ms. Stanwood as the owner.  See
Exhibit 7 to this Declaration.

**097183:** Roderick Granese ordered this unit on July 31, 2003.  Mr. Granese is not an employee
of Cycle-Craft, and so I do not know why he did not follow through on the purchase.  The

second bill of sale for this unit reflects that customer Jason Blodgett negotiated the purchase of this unit on the same day, July 31, 2003, although financing was not completed until approximately August 7, 2003. The SWR was properly adjusted to reflect Mr. Blodgett as the owner. See Exhibit 8.

23.    Another nine of the units identified in this section of the "Inspection of Records" letter were resold on after August 1, 2003. With two exceptions, the second transaction was, according to the bill of sale, entered into within a few days after the initial transaction, although the financing on the second transaction frequently required approximately another week to be completed. This is not at all unusual. These nine sales are listed as follows:

| VIN/ Exhibit | Name of Employee/Relative | Second Purchaser | Date of 2nd Purchase, per bill of sale |
|---|---|---|---|
| 105487 Exh. 9 | Salvatore Giordano, son of maintenance supervisor Joseph Giordano | Michael Botelho | 8/1/03 |
| 842917 Exh. 10 | Lissa Bloom, daughter of sales mgr Mike Bloom | Jorge Orellana | 8/2/03 |
| 085436 Exh. 11 | Matthew Bloom, son of sales mgr Mike Bloom | Mark Connelly | 8/3/03 |
| 052286 Exh. 12 | Joseph Giordano, maintenance supervisor | Deborah Colleran | 8/4/03 |
| 839405 Exh. 13 | Sean Walsh, salesperson | Paul Kalinoski | 8/5/03 |
| 638193 Exh. 14 | Ron Buchbaum, general mgr | Robert Tindle | 8/6/03 |
| 099680 Exh. 15 | John Sica | Robert Richards | 8/9/03 |
| 314311 Exh. 16 | Daniel Sica | Stephen Kenney | 9/14/03 |
| 842594 Exh. 17 | Jamie McGrath | Vincent Fiamma | 11/5/03 |

In each case, the SWR was appropriately adjusted to reflect the second purchaser as the customer.

24.    The last of the 13 units follows this pattern, with a slight twist, since it, like unit #082225, was donated to a charity raffle. Elaine Bloom, wife of Cycle-Craft's sales manager Mike Bloom, signed a bill of sale for unit # 848962 on July 31, 2003. Ms. Bloom later changed her mind and

decided not to purchase the unit.   Customer Thomas Mulvey negotiated the purchase of the motorcycle on August 22, 2003, according to the bill of sale.  Mr. Mulvey donated the unit to a charity raffle.  The winner of the raffle was one Lorraine Sheehan, who was designated the customer on the SWR.  Ms. Sheehan transferred the unit to one Steven Smyrnios.  Mr. Smyrnios is the current owner of the vehicle and is currently recorded as the customer on the SWR. Supporting documents are attached as Exhibit 18.

25.     In 2003, Cycle-Craft sold approximately 800 new motorcycles.  Sales in 2004 to date are on track to increase over 2003.

I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts that the foregoing is true and correct and that this declaration was executed in Everett, Massachusetts on _June 21_____, 2004.


_Kenneth McPhee_ (signature)

Kenneth McPhee