UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYCLE-CRAFT CO., INC. d/b/a <br> BOSTON HARLEY-DAVIDSON/BUELL <br> Plaintiff, <br> <br> v. <br> <br> HARLEY-DAVIDSON MOTOR CO., INC. <br> AND BUELL DISTRIBUTION CO., LLC <br> Defendants. | * <br> * <br> * <br> * <br> * Civil Action No.  04 11402 NMG <br> * <br> * <br> * <br> * |

## AMENDED COMPLAINT AND JURY DEMAND

Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") files this Complaint against Harley-Davidson Motor Co., Inc. and Buell Distribution Co., LLC (collectively, "Harley-Davidson").

### Introduction

1. Harley-Davidson has announced its intention to terminate Cycle-Craft, a local motorcycle dealership that for almost 50 years has operated as a successful family business and an exemplary corporate citizen. Cycle Craft has invested millions of dollars in its state-of-the-art facility in a renovated industrial building on Revere Beach Parkway in Everett. The sole purported basis for this termination is the allegation that the sales of 45 motorcycles - out of approximately 800 sold by Cycle-Craft in 2003 - violate certain Harley-Davidson sales policies.

2. Chapter 93B of the Massachusetts General Laws, sometimes referred to as the "Dealers' Bill of Rights," requires Harley-Davidson to prove that it has "good cause" for the termination. As explained below, Harley-Davidson cannot meet this burden. Indeed, Harley-Davidson's rush to impose the ultimate penalty of termination for what is at most a *de minimis*

infraction is arbitrary and in bad faith, in violation of Chapter 93B. Accordingly, the threatened termination should be preliminarily and permanently enjoined.

3. Harley-Davidson, by these actions, has also violated their contract with Cycle-Craft and breached the covenant of good faith and fair dealing, thereby causing Cycle-Craft to suffer damages.

**Parties**

4. Plaintiff Cycle-Craft is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business in Everett, Massachusetts. It is in the business of selling and servicing motorcycles and selling motorcycle parts, accessories and motor clothes.

5. Defendant Harley-Davidson is a corporation organized under the laws of the state of Wisconsin, with a principal place of business in Milwaukee, Wisconsin.

6. Defendant Buell Distribution Co., LLC is a limited liability company organized under the laws of the state of Wisconsin, a sister corporation of Harley-Davidson, with a principal place of business in Milwaukee, Wisconsin at the same address as that of Harley-Davidson.

**Jurisdiction and Venue**

7. The Court has jurisdiction over this controversy pursuant to 28 U.S.C. §1332, since the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over both of the defendant corporations, who have repeated contacts with and transact substantial business in this District, including the actions that form the basis for this Complaint.

9. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(a) and (c).

**Facts**

10. Since 1959, Cycle-Craft has been authorized to sell and service Harley-Davidson motorcycles, under successive dealer franchise agreements with Harley-Davidson (the "Dealer Contracts").

11. Cycle-Craft is also a franchisee of Buell Distribution Co., LLC, a sister corporation of Harley-Davidson, and has sold and serviced Buell motorcycles under separate but interrelated Dealer Contracts with Buell or its predecessor since approximately 1994.

12. By the terms of the Dealer Contracts, termination of the Harley-Davidson dealership automatically results in termination of the coupled Buell dealership.

13. Cycle-Craft carries no other motorcycle lines, and no automobile lines. Indeed, aside from the sale and service of Harley-Davidson/Buell motorcycles and products, Cycle-Craft has no other business at all.

14. Cycle-Craft's most recent Dealer Contracts with Harley-Davidson and with Buell's predecessor were executed on or about September 19, 2000. The two franchisors are collectively referred to herein as "Harley-Davidson."

15. Cycle-Craft has for several years been among the top ten percent of Harley-Davidson dealers nationwide in the purchase of motorcycles, motor clothes, parts and accessories.

16. Over the decades, Cycle-Craft has been the frequent recipient of "Bronze Shield" awards, conferred by Harley-Davidson to recognize the dealership's superlative performance.

17. More recently, Cycle-Craft has received several "Pegasus" awards, conferred by Buell to recognize the dealership's superlative performance.

18. Most recently, Cycle-Craft was invited to participate in a dealer incentive trip to Alaska, an honor bestowed only on the top 30 (of over 650) dealerships in the country. This invitation was subsequently revoked, purportedly due to the present controversy.

19. Cycle-Craft has an extraordinarily loyal customer base. Many customers are second generation customers, and hundreds of them participate actively in the Harley Owners' Group ("HOG") chapter sponsored by the dealership.

20. Cycle-Craft, independently and through its sponsorship of the HOG chapter, is actively involved in significant civic and charitable endeavors. The dealership sponsors, raises money for and/or holds benefit rides and other events to raise money for multiple local charities, including the Muscular Dystrophy Association, the Comen Breast Cancer Foundation, the Ronald McDonald House, My Brother's Table, the Massachusetts Firefighters' Association, the Everett Cal Ripken Buddy Ball League for Mentally Challenged Children, the American Cancer Society and the local Kiwanis chapter.

21. Cycle-Craft is a family-owned business, run by successive generations of the Atwood family for nearly five decades. It is currently run by John Atwood, president of Cycle-Craft, who inherited the business along with his sister, Karen Atwood, from Bill and Kitty Atwood, their parents and the original owners of the dealership.

22. Over the past 45 years, the Atwood family has made enormous investments in real estate, equipment and personnel in order to represent Harley-Davidson, and later, Buell. Most significantly, in the mid-1990s the Atwoods spent $2.7 million to renovate a dilapidated, contaminated former paint factory across the street from the dealership's then-current location, because the building reminded the Atwoods of Harley-Davidson's original plant in Wisconsin.

This renovation was reported in the Boston Globe and the Boston Herald, and heralded by the Mayor of Everett as likely to attract new business to the area.

23.     Harley Davidson's 1997 Annual Report to its shareholders prominently featured Cycle-Craft's renovated facility, and noted, "The skills acquired by dealers each year at Harley-Davidson University, as well as the capital improvements exemplified by the Atwood's investments, make our dealers the best in the business. The Atwoods' three-story, 86,000 square-foot facility is an example of that excellence."

24.     In 1998, the Massachusetts chapter of the Small Business Association recognized John and Karen Atwood as the Massachusetts Small Business Persons of the Year.

25.     The dealership currently employs over 60 men and women to handle sales, service, finance, parts and accessories. The majority of these employees live in the Everett area, and most are motorcycle riders and enthusiasts. Cycle-Craft provides many of these employees with health coverage under Blue Cross/Blue Shield, dental coverage, short and long-term disability insurance, and a savings plan through American Express Financial Advisors.

26.     Cycle-Craft sells and leases motorcycles to literally dozens of area police departments, and employs a Police Fleet Sales Manager specifically to handle this significant aspect of the business.

27.     On or about April 20, 2004, Harley-Davidson sent a letter to Cycle-Craft described as a "Notice of Dealer Contract Termination" ("Termination Notice"), which Cycle-Craft received on April 23, 2004. The letter indicated that Cycle-Craft's Dealer Contracts with Harley-Davidson and Buell would be terminated effective 60 days from its receipt of the letter (June 22, 2004). As grounds for termination, the letter specified Cycle-Craft's alleged violation

of Harley-Davidson's policy prohibiting non-retail sales with respect to 45 motorcycles, and on allegedly inaccurate paperwork regarding those 45 sales.

## COUNT I
## Violation of Mass. Gen. Laws ch. 93B, §5

28. Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs as if fully stated herein.

29. The franchise relationship between Harley-Davidson and Cycle-Craft is governed by Mass. Gen. Laws ch. 93B (2002).

30. Mass. Gen. Laws ch. 93B §5(a) prohibits a manufacturer such as Harley-Davidson from terminating the Franchise Agreement of a dealer such as Cycle-Craft "without good cause, in bad faith or in an arbitrary or unconscionable manner."

31. Harley-Davidson's intended termination of Cycle-Craft, as announced in the Termination Notice, is without good cause, in bad faith, and arbitrary and unconscionable.

32. Specifically, and without limitation, Harley-Davidson cannot meet its burden of demonstrating that it has "good cause" to terminate Cycle-Craft, as that term is defined in §5(j) of Chapter 93B. Subsection 5(m) explicitly places the burden of demonstrating "good cause" on the manufacturer.

33. In determining whether the manufacturer has met this burden, Mass. Gen Laws ch. 93B, §5(j) provides:

> [T]he court shall consider all pertinent circumstances, that may include, but shall not be limited to:
>
> (1) the amount of business transacted by the affected motor vehicle dealer during the 3 year period immediately preceding such notice as compared to the business available to it;
>
> (2) the investment necessarily made and obligations incurred by the affected motor vehicle dealer to perform its obligations under the existing franchise agreement;

6

    (3)   the permanency of the investment of the affected motor vehicle dealer;

    (4)   whether it is injurious or beneficial to the public welfare for the franchise agreement of the affected motor vehicle dealer to expire, to be modified, or to be terminated, or for the affected motor vehicle dealer to be replaced;

    (5)   whether the affected motor vehicle dealer has adequate motor vehicle sales and service facilities, equipment, vehicle parts and qualified personnel to reasonably provide for the needs of the consumers for motor vehicles handled by the affected motor vehicle dealer;

    (6)   whether the affected motor vehicle dealer has been and is rendering adequate services to the public; and

    (7)   the existence and materiality of any breaches, defaults or violations by the affected motor vehicle dealer of the terms or provisions of the existing franchise agreement or of applicable law.

34.    Not a single one of these factors weighs in favor of a conclusion that Harley-Davidson in fact has good cause to terminate Cycle-Craft. To the contrary, consideration of the facts applying to each of these statutory factors militates in favor of an injunction barring Harley-Davidson from pursuing any such termination:

    (1)   **Amount of business/market penetration:** Cycle-Craft has more than successfully taken advantage of the business available to it during the last three years, routinely performing as one of the top 10% purchasing volume dealers for Harley-Davidson nationwide in every category: motorcycles, parts, accessories and general merchandise. Over the past three years, Harley-Davidson's market share in the Boston area (where Cycle-Craft is the exclusive dealer) has routinely met or exceeded its market share throughout New England. Boston also exceeds Harley-Davidson's market share nationwide.

    (2)   **Investment in the dealership:** The Atwood family has invested nearly five decades of time, money and effort in the Cycle-Craft dealership, which has grown into one of the largest Harley-Davidson dealerships and retail outlets in the world. Over these years, the family has invested literally millions of dollars in the business, exemplified by the $2.7 million it spent in the late 1990s to acquire and renovate the building in which the dealership currently resides.

    (3)   **Permanency of investment:** The investments of the Atwoods are not fleeting in nature, but rather inure to the permanent institutional benefit of Harley-Davidson. Harley-Davidson itself featured the Atwoods and the investment they

7

have made in Cycle-Craft as an example of the "excellence" that "make our dealers the best in the business" in its 1997 Annual Report.

(4) **Injury to the public welfare:** Termination of the Cycle-Craft dealership would be highly injurious to the public it serves, as well as to its more than sixty local employees. Cycle-Craft is the only Harley-Davidson dealership in the immediate Boston area (and the only Harley dealership in the country with exclusive coverage of a major metropolitan area). Should Cycle-Craft close down, its customers would literally have nowhere else convenient to turn either for purchases of new motorcycles or for service of their current motorcycles. The dozens of area police departments that purchase and lease their motorcycles from Cycle-Craft would be forced to seek another supplier. All of the multiple civic and charitable organizations that depend on Cycle-Craft's financial support and active participation in their endeavors, including the Muscular Dystrophy Association, the Comen Breast Cancer Foundation, the Ronald McDonald House, My Brother's Table, the Massachusetts Firefighters' Association, the Everett Cal Ripkin Buddy Ball League for Mentally Challenged Children, the American Cancer Society and the local Kiwanis chapter would lose the benefit of Cycle-Craft's significant contributions. Less tangibly, but no less importantly, Cycle-Craft is community institution. Generations of the Atwoods have sold Harley-Davidson motorcycles to generations of families in and around Boston since 1959. Even if Harley-Davidson could seamlessly replace Cycle-Craft with another dealer, which is extremely unlikely, the loyalty and sense of community institution that exists now would be irretrievably lost. Further, Cycle-Craft's extraordinary facility, which preserves the concept of Harley-Davidson's original headquarters, would also become unavailable.

(5) **Superior facilities and service:** Cycle Craft has exemplary, state-of-the-art motorcycle sales and service facilities, a comprehensive accessory sales operation, and an enthusiastic, knowledgeable staff. Again, Harley Davidson's 1997 Annual Report, published soon after the opening of the current Cycle-Craft facility, noted: "In addition to a 5,000 square-foot showroom, 15,000 square-feet are dedicated to MotorClothes apparel and collectibles, and parts and accessories. The service department has 15,000 square feet, featuring 16 lifts and a fully outfitted dynomometer area." Since these accolades were published in 1997, Cycle-Craft's facilities, services and capabilities have only improved.

(6) **Service to the public:** Cycle-Craft has been and is rendering superior service to the public, in all aspects of its business and in all aspects of its active life as a corporate citizen of the Everett area. As noted above, Cycle-Craft is a top performer among Harley-Davidson dealers nationwide. Its facilities are state-of-the-art. Its staff is comprised of highly-qualified motorcycle enthusiasts, mostly from the Everett area. It is active in a wide range of civic and charitable activities, provides a home and sponsorship for the local HOG chapter, and has been credited by the media with spurring a revitalization of the area of the Revere Beach Parkway on which its facility sits. John and Karen Atwood were

        named Small Business Persons of the Year for 1998 by the Small Business Association, based on the booming performance, expansion and corporate citizenship of Cycle-Craft.

    (7)   ***De minimis* breach, if any:**  Cycle-Craft denies that there have in fact been any "breaches, defaults or violations…of the terms or provisions of the existing franchise agreement," M.G.L. ch. 93B § 5(j), and believes that the incidents cited by Harley-Davidson as the bases for its termination of Cycle-Craft's dealership can be fully explained and/or justified. Notwithstanding this denial, even taking Harley-Davidson's accusations as true, for the purposes of argument, the breaches and violations asserted were *de minimis* at most, are capable of being fully cured, and by Harley-Davidson's own policies may be punished by any of a number of sanctions far less severe than the ultimate sanction of dealer termination.

35.    Fair consideration and balancing of all of the relevant statutory factors must lead to the conclusion that Harley-Davidson cannot meet its burden of demonstrating that there is good cause to terminate its franchise with Cycle-Craft.

36.    The intended termination lacks good cause, and is in bad faith, arbitrary and unconscionable, since Harley-Davidson is applying to Cycle-Craft the ultimate sanction of termination, which, upon information and belief, is far in excess of the sanction imposed upon other dealers across the United States for engaging in similar conduct.

37.    Further, the intended termination lacks good cause, and is in bad faith, arbitrary and unconscionable because Harley-Davidson is using Cycle-Craft's alleged violation of Harley-Davidson's sales policies as a pretext to mask Harley-Davidson's true motive for desiring to terminate Cycle-Craft. Harley-Davidson's true motive for terminating Cycle-Craft is that it desires to install a new Harley-Davidson and Buell dealer in or near Danvers, Massachusetts, and wishes to avoid a protracted and expensive protest of the proposed Danvers dealer by Cycle-Craft pursuant to Mass. Gen. Laws ch. 93B §6.

38.    The parties have met and conferred as required by M.G.L. ch. 93B §15(b).

39. Pursuant to M.G.L. ch. 93B §5(g), upon the filing by Cycle-Craft of a Motion for Preliminary Injunction, Harley-Davidson and Buell should be barred from terminating their franchise relationship with Cycle-Craft "[p]ending a decision by the court" on the Motion. Subsection 5(g) states that in this situation the parties "shall in good faith perform all obligations incumbent upon them under the franchise agreement and applicable law." Accordingly, Harley-Davidson should be required to perform "all obligations incumbent upon them," to include, without limitation: normal supply of motorcycles and all other product; support from and communication with Harley Davidson's corporate representatives, as is provided in the ordinary course; uninterrupted payment of any and all incentives, bonuses, etc. to include participation by Cycle-Craft in the upcoming incentive trip, as earned by the dealership prior to the instant controversy; and continued good faith cooperation with Cycle-Craft in all aspects of the relationship between the companies, as occurs in the ordinary course.

40. Pursuant to Mass. Gen. Laws ch. 93B §5(a) and (f), Cycle-Craft is entitled to an order from this Court enjoining Harley-Davidson and Buell from terminating Cycle-Craft as a Harley-Davidson and Buell dealer.

41. Harley-Davidson's actions have been in bad faith, entitling Cycle-Craft to an award of its attorneys' fees pursuant to M.G.L. ch. 93B §15(c).

## COUNT II
### Breach of Contract

42. Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs as if fully stated herein.

43. Harley-Davidson and Cycle-Craft has valid and enforceable Dealer Contracts whereby Cycle-Craft operates as a franchisee of Harley-Davidson, authorized to sell and service Harley-Davidson and Buell motorcycles.

44. Cycle-Craft has at all times performed all the conditions and covenants required of it under the Dealer Contracts.

45. Harley-Davidson has breached the Dealer Contracts, inter alia, by improperly threatening to terminate the franchise relationship by improperly altering Cycle-Craft's vehicle allocation, and by improperly assessing other charges on Cycle-Craft in connection with the threatened termination.

46. Harley-Davidson's breach has caused Cycle-Craft damage.

## COUNT III
### Violation of the Implied Covenant of Good Faith and Fair Dealing

47. Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs as if fully stated herein.

48. The Dealer Contracts between Harley-Davidson and Cycle-Craft contain an implied covenant of good faith and fair dealing.

49. Harley-Davidson conduct, as described herein, constitutes a breach of the implied covenant of good faith and fair dealing.

50. As a result of Harley-Davidson's breach of the implied covenant of good faith and fair dealing, Cycle-Craft has been damaged.

WHEREFORE, Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell requests that this Honorable Court:

A. Permanently enjoin Harley-Davidson Motor Co., Inc. and Buell Distribution Co., LLC from terminating their respective franchise relationships with Cycle-Craft;

B. Preliminarily enjoin Harley-Davidson and Buell from terminating their franchise contract with Cycle-Craft pending a determination on the merits;

  C. Award Cycle-Craft its costs and attorneys' fees pursuant to M.G.L. ch. 93B §15(c);

  D. Grant Cycle-Craft judgment against Harley-Davidson on Count II for breach of contract and award damages in an amount to be determined at trial;

  E. Grant Cycle-Craft judgment against Harley-Davidson on Count III for a violation of the implied covenant of good faith and fair dealing and award damages in an amount to be determined at trial; and

  F. Grant such other and further relief as may be just and equitable.

## Jury Demand

Cycle-Craft demands a trial by jury as to all issues so triable.

Respectfully submitted,

**CYCLE-CRAFT CO., INC.**

By its attorneys,

/s/ Angela B. Smagula
_____
James C. Rehnquist, BBO# 552602
Angela B. Smagula, BBO# 643764
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: October 29, 2004

LIBA/1425092.1