UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYCLE-CRAFT CO., INC. d/b/a BOSTON HARLEY-DAVIDSON/BUELL, <br><br> Plaintiff, <br><br> v. <br><br> HARLEY-DAVIDSON MOTOR COMPANY, INC. and BUELL DISTRIBUTION COMPANY, LLC, <br><br> Defendants. | CIVIL ACTION NO. 04 11402 NMG |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

This case arises out of the notice of termination sent by Harley-Davidson Motor Company, Inc. and Buell Distribution Company, LLC (collectively "Harley-Davidson") to the motorcycle dealership of Cycle-Craft Co., Inc., d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") due to the dealer's falsification of its sales reports to Harley-Davidson. After an audit, Harley-Davidson discovered that Cycle-Craft had reported the sale of 28 motorcycles as retail sales, when in fact, the sales were made to other commercial entities. Additionally, Cycle-Craft had reported the sale of 17 motorcycles to its own employees and their families and friends, when in fact these sales never took place. After Harley-Davidson gave notice of termination, Cycle-Craft brought this action alleging wrongful termination under G.L. c. 93B.

Pursuant to the scheduling order in this case, the parties propounded written discovery, including document requests and interrogatories, on each other on November 1, 2004. On November 11, 2004, before the parties had even responded to each other's written discovery, Cycle-Craft served an all-encompassing notice of deposition on Harley-Davidson pursuant to Fed. R. Civ. P. 30(b)(6). *See* Cycle-Craft's Notice of Deposition, attached at

Tab 1. The deposition was noticed to take place on November 22, 2004. As many of the topics are the same as those covered in Cycle-Craft's document request and interrogatories, the deposition notice effectively cut short the time that Harley-Davidson would ordinarily have to respond. Moreover, the deposition was noticed to take place in Boston, Massachusetts, even though Harley-Davidson's principal place of business is in Milwaukee, Wisconsin and its employee witnesses live and work there.

Harley-Davidson seeks a protective order limiting the scope of the deposition, continuing it until objections are ruled upon and requiring the depositions to take place in Milwaukee, Wisconsin.

## ARGUMENT

### I.    THE REQUESTED 30(B)(6) DEPOSITION OF HARLEY-DAVIDSON SHOULD BE POSTPONED UNTIL ITS OBJECTIONS ARE BRIEFED AND RULED UPON.

Harley-Davidson has objected to many of the subject matters listed in Cycle-Craft's deposition notice on the grounds that they are overly broad, unduly burdensome and otherwise not reasonably calculated to lead to the discovery of admissible evidence. For example, the deposition notice calls for discovery regarding Harley-Davidson's relationships with all of its dealers worldwide -- dealers other than Cycle-Craft -- going back ten years in time. *See* Objection and Response to Plaintiff's 30(b)(6) Notice of Deposition, attached at Tab 2. Cycle-Craft has made similar overreaching requests for discovery in their document request and interrogatories. Given the wide-ranging nature of Cycle-Craft's discovery requests, and Harley-Davidson's objections thereto, this Court should first determine the proper scope of discovery prior to the commencement of depositions, including the noticed 30(b)(6) deposition.

## II.   THIS COURT SHOULD ISSUE AN ORDER LIMITING THE SCOPE OF DISCOVERY.

Most of Cycle-Craft's objectionable requests seek information concerning Harley-Davidson's relationship with all of its other authorized Harley-Davidson dealers, going back ten years in time.   Such information about Harley-Davidson's dealers who are located throughout the world over a ten year period is neither relevant to the issues in this action nor reasonably calculated to lead to the discovery of admissible evidence.   Moreover, such a request is unduly burdensome.   While Fed. R. Civ. P. 26(b) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," there are "ultimate and necessary boundaries."   *See Hickman v. Taylor*, 329 U.S. 495 (1947).   These boundaries prevent Cycle-Craft from making demands which are unduly burdensome or seek irrelevant information.

Rule 26(c) of the Federal Rules of Civil Procedure gives this Court broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Baker v. Liggett Group,* 132 F.R.D. 123, 125 (D. Mass. 1990), *citing Seattle Times v. Rhinehart,* 467 U.S. 20, 36 (1984).   It is well established that "the scope and timing of discovery is within [the trial court's] discretion, and that the 'prevention of discovery abuse . . . is sufficient justification for the authorization of protective orders.'"   *Cronin v. Strayer,* 392 Mass. 525, 536 (1984), *quoting Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35-36 (1984).   "With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process."   *Id., quoting Herbert v. Lando*, 441 U.S. 153, 177 (1979).

Furthermore, pursuant to Fed. R. Civ. P. 26(c), for good cause shown, the court may

make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . * * * . . . that discovery may be had only on specified terms and conditions, including a designation of the time or place . . . .

Fed. R. Civ. P. 26(c).   *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) ("[D]iscovery, like all matters of procedure has ultimate and necessary

-3-

boundaries . . . .   Discovery of matter 'not reasonably calculated to lead to admissible evidence' is not within the scope of Rule 26(b)(1)").

**A.     Plaintiff's Requests Concerning Harley-Davidson's Relationships With Other Dealers Are Irrelevant To The Asserted Claims And Are Beyond The Reasonable Scope of Discovery.**

Topics 3, 5, 6, 14, 15 and 16 of Cycle-Craft's 30(b)(6) notice of deposition (as well as many of its document requests and interrogatories) seek information concerning Harley-Davidson's relationships with all of its other dealers.  Yet, Harley-Davidson's relationship with dealers other than Cycle-Craft have no bearing on the issues in this case.  The basis for Cycle-Craft's termination was false reporting of its sales data.   Given Cycle-Craft's wrongful termination claim, the inquiry for trial is whether false reporting of sales data constitutes good cause for termination.  There is no claim, and Cycle-Craft can make none, that it is entitled to some alleged "equal treatment" with respect to other dealers.

Moreover, Harley-Davidson has dealers all over the world which operate under different laws.  Thus, any comparison between Harley-Davidson's treatment of Cycle-Craft and its treatment of other dealers would be invalid unless the parties were to examine the details of each circumstance.  This would create a series of mini-trials, putting each dealer's situation at issue, an exercise not warranted by the limited issues in this case.  Indeed, it is well-established that evidence of disparate treatment is irrelevant to the issue of whether good cause exists for termination.

In *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies,* 970 F.2d 273 (7th Cir. 1992), the Seventh Circuit held that a franchisor's contractual relationship with its other franchisees was not relevant to one franchisee's claim that its termination violated the franchise agreement. *Id.* at 279.  The Court reasoned that allegations of disparate treatment were not a defense to the franchisee's breach of the franchise agreement stating that:

> [t]he fact that the [franchisor] may, as the [franchisee] argue[s], have treated other franchisees more leniently is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket.

*Id.*

Similarly, here, Harley-Davidson's relationship with other dealers and Harley-Davidson's decision whether or not to terminate other dealers simply has no bearing on whether Cycle-Craft's defaults of its obligations under the Dealer Agreement provided sufficient grounds for Harley-Davidson to issue a Notice of Termination. *Id.  See also Professional Mobile Home Brokers, Inc. v. Security Pacific Housing Services, Inc.,* 53 F.3d 329, 1995 WL 255937 (4th Cir. 1995) (affirming district court's exclusion of evidence concerning finance company's dealings with other dealers despite proponent's contention that it was necessary to establish a "scheme" undertaken by finance company in violation of North Carolina's unfair trade practices statute); *Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co.,* 781 F.2d 1520, 1527 (11th Cir. 1986) ("[The Franchisee] also argues that the quota system was applied to it selectively.  If by that [the franchisee] means to argue that it is bad faith not to terminate all dealers who fail to reach quotas we reject that argument."); *Zebelman v. Chrysler Corp.,* 299 F. Supp. 653, 658 (E.D. Mo. 1968) ("The franchise agreement does not require that a dealer who falls below his assigned [minimum sales responsibility] must be terminated.  It merely makes termination possible.  The determination of whether or not to terminate a franchise is a management decision.").  *See Lopez v. Huntington Autohaus, Ltd.,* 540 N.Y.S.2d 874, 876, 150 A.D.2d 351, (N.Y.A.D. 2nd Div. 1989) (court determined that discovery seeking "unlimited information as to all inquiries or investigations made at any level of government since mid-1984 with respect to all 1984 Audi 5000's sold" were "so overbroad and seek so much irrelevant and immaterial information that they are unduly burdensome and oppressive"); *Capoccia v. Spiro,* 453 N.Y.S.2d 70, 72, 88 A.D.2d 1100, 1101, (N.Y.A.D. 3 Dept. 1982) ("*carte blanche* demands are [not] to be honored, and those demands which are unduly burdensome . . . or seek irrelevant information or are otherwise improper must be denied").

-5-

In Topics 7, 8 and 14 of Cycle-Craft's 30(b)(6) notice of deposition (as well as many of its document requests and interrogatories), Cycle-Craft seeks information relating to any dealership Harley-Davidson has proposed in the New England area. Harley-Davidson has agreed to provide information concerning a proposed dealership in the Danvers, Massachusetts area, as Cycle-Craft has indicated in its Complaint its position that this proposed dealership was the motive for Harley-Davidson's notice of termination of Cycle-Craft's dealership. Information concerning any other proposed dealership in New England is not relevant to Cycle-Craft's claim nor is it otherwise relevant to the litigation; it should not be discoverable.

Likewise, in Topics 13 and 17 of Cycle-Craft's 30(b)(6) deposition, Cycle-Craft seeks information concerning Harley-Davidson's criteria for ranking dealers and its document retention policy. Harley-Davidson's criteria for ranking dealers is not relevant to this case as the dispute revolves around Cycle-Craft's false reporting of sales data. There is no claim of poor performance and therefore no cause to delve into the ranking criteria. Harley-Davidson has agreed to provide information concerning Harley-Davidson's document retention policy with respect to dealer documents, but its policies with respect to other documents is beyond the scope of this litigation and should not be required to be produced.

**B.      Cycle-Craft's Request For Records Dating Back 10 Years Is Beyond The Reasonable Scope of Discovery.**

Topics 3, 14, 15 and 16 of Cycle-Craft's 30(b)(6) notice of deposition (as well as many of its document requests and interrogatories) seek information going back ten years in time. In light of the issues in this case, the temporal scope of these requests make them overly broad. *See Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666 (D. Kan. 2003) (limiting scope of discovery requests to three years prior to date plaintiff filed suit); *North River Ins. Co. v. Greater New York Mut. Ins. Co.*, 872 F.Supp. 1411 (E.D. PA 1995) (holding that discovery seeking evidence of "other bad faith actions" in last seven years highly unlikely to

-6-

have any relevance to issues at hand ); *EEOC v. Kansas City Southern Railway*, 2000 WL 33675756 (D. Kan.) (limiting plaintiff's discovery to three years prior to alleged discrimination).

Harley-Davidson sent Cycle-Craft a notice of termination on April 20, 2004 because Cycle-Craft submitted fraudulent sales records and reports in July 2003 in direct contravention of its obligations under the dealer agreements. Requests that seek information concerning other dealer relations predating these events by 10 years simply have no relevance to the facts or legal claims in this case. In *North River Ins. Co.*, the plaintiff moved to compel the defendant to answer interrogatories regarding "whether it has ever been a party to other bad faith actions in the last seven years . . . ." The Defendant opposed the motion arguing that the requests were irrelevant to the facts of their case and not reasonably calculated to lead to the discovery of admissible evidence. The Court agreed and ruled that "[t]hese prior bad faith cases, if any, will necessarily involve totally different facts and circumstances from those present here." *Northern River Ins. Co.* 872 F.Supp. at 1412. The Court further stated that "[a]ny discovery of this material would properly be characterized as a fishing expedition, causing needless expense and burden to all concerned." *Id*. Likewise, here, Cycle-Craft's requests for information going back ten years in time is overbroad and burdensome. Defendants have limited the scope of their request to three years prior to the events at issue in this case. Accordingly, Harley-Davidson respectfully requests that the Court limit the scope of discovery to the period of August 1, 2000 to the present, absent a showing that a request for earlier records is reasonably calculated to lead to the discovery of admissible evidence.

LITDOCS/577023.2

## III. THE 30(B)(6) DEPOSITION OF HARLEY-DAVIDSON SHOULD TAKE PLACE WHERE THE DEPONENTS LIVE AND WORK.

Harley-Davidson's principal place of business is in Milwaukee, Wisconsin and all of its relevant employee witnesses live and work there. As such, the representatives designated to testify for Harley-Davidson should not be forced to travel to Massachusetts in order to testify.

As a rule, "the defendant in an action should be examined at his or her residence or place of business or employment." *Fortune Mgmt. v. Bly*, 118 F.R.D. 21, 22 (D. Mass. 1987) (emphasis added). *See also Pinkham v. Paul,* 91 F.R.D. 613, 615 (D. Me. 1981). If a deponent is an officer or agent of a defendant corporation, the presumption that the deposition should be held at his/her residence or at the corporation's principal place of business is even stronger. *See, e.g., Smith v. Shoe Show of Rocky Mount, Inc.*, 2001 WL 1757184 (D. Mass. 2001) (ordering that corporate defendant's deposition be held in North Carolina rather than in Springfield because employee operated out of North Carolina at all relevant times); *Harrigan v. Electronic Pre-Press Sys., Inc.*, 1992 WL 121438 (S.D.N.Y. 1992) (ordering depositions to be conducted at defendant's principal place of business in Massachusetts rather than at plaintiff's offices in New York); *Snow Becker Krauss P.C. v. Proyectros y Instalaciones de Deselacion, S.A.,* 1994 WL 464221 (S.D.N.Y. 1994) (ordering depositions to be conducted at defendant's principal place of business in Spain, rather than at plaintiff's offices in New York).

Since Harley-Davidson's principal place of business is Milwaukee, Wisconsin, and since all of its employee witnesses work and reside there, Harley-Davidson requests that the Court issue an order requiring the 30(b)(6) deposition take place in Milwaukee, Wisconsin.

LITDOCS/577023.2

## CONCLUSION

Harley-Davidson respectfully requests this Court to allow its Motion for Protective Order and issue an Order in the form attached to the Motion.

**HARLEY-DAVIDSON MOTOR COMPANY, INC., and BUELL DISTRIBUTION COMPANY, LLC**

By their attorneys,

/s/ Serena D. Madar

William N. Berkowitz, BBO# 544148
Sabita Singh, BBO# 560146
Serena D. Madar, BBO# 654326
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA 02110
(617) 951-8000

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.1

I hereby certify that on November 18, 2004 at 1:30 PM a telephone conference was held between Sabita Singh, counsel for Harley-Davidson, and James C. Rehnquist and Angela Smagula, counsel for Cycle-Craft, in an attempt to narrow the areas of disagreement to the greatest extent possible. The parties agreed only that the deposition noticed for November 22, 2004 would not go forward on that date.

/s/ Sabita Singh

Sabita Singh

LITDOCS/577023.2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYCLE-CRAFT CO., INC. d/b/a<br>BOSTON HARLEY-DAVIDSON/BUELL,<br><br>     Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY, INC.<br>and BUELL DISTRIBUTION COMPANY, LLC,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION<br>)    NO. 04 11402 NMG<br>)<br>)<br>)<br>)<br>) |

## <u>NOTICE OF DEPOSITION</u>

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, on November 22, 2004 Plaintiff Cycle-Craft Co., Inc. d/b/a Boston Harley-

Davidson/Buell ("Cycle-Craft") will take the deposition upon oral examination of a

representative or representatives of Harley-Davidson Motor Co., Inc. and Buell Distribution Co.,

Inc. (collectively, "Harley-Davidson"). The deposition will begin at 10:00 am and will continue

from day to day until completed. The deposition will take place at the offices of Goodwin

Procter LLP, Exchange Place, 53 State Street, Boston, Massachusetts 02109-2881.

The plaintiff requests, pursuant to Rule 30(b)(6), that Harley-Davidson make available

the person or persons able to testify on its behalf concerning the subject matters listed in

Schedule A. For each person selected to testify on its behalf, Harley-Davidson will provide the

plaintiff with the name, position, and particular matters on which each person will testify three

(3) days in advance of the deposition date.

The deposition will be conducted before a notary public or other officer authorized to administer oaths and will be videotaped.  Counsel is invited to attend and participate, as allowed by the Federal Rule of Federal Procedure.

Respectfully submitted,

CYCLE-CRAFT CO., INC.

By its attorneys,

James C. Rehnquist, BBO# 552602
Angela B. Smagula, BBO# 643764
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated:  November 11, 2004

**Certificate of Service**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on November 11, 2004

-2-

## DEFINITIONS AND INSTRUCTIONS

1.  "Cycle-Craft" means Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell, and its partners, shareholders, officers, directors, employees, corporate parent, subsidiaries, affiliates, attorneys, agents, and representatives.

2.  "Harley-Davidson" means Harley-Davidson Motor Co., Inc. and Buell Distribution Co., LLC., and their partners, shareholders, officers, directors, employees, corporate parent, subsidiaries, affiliates, attorneys, agents, and representatives.

3.  "Franchise agreement" means any contract or agreement, written or otherwise, or any part thereof, between Harley-Davidson and any other person or entity that authorizes such person or entity to sell, distribute, service, and/or repair Harley-Davidson vehicles, parts, accessories and/or general merchandise.

4.  "Franchise" means any entity doing business under a franchise agreement with Harley-Davidson.

5.  "Franchisee" means the owner or operator of a franchise pursuant to a franchise agreement.

6.  "Non-retail sales policy" means any contract or agreement, written or otherwise, or part thereof, that restricts the sale or distribution of Harley-Davidson vehicles, parts, accessories and/or general merchandise to ultimate consumers or end-users and prohibits that sale or distribution to any person who intends to resell or redistribute the Harley-Davidson vehicles, parts, accessories, and/or general merchandise.

7.  "New England area" means the States of Connecticut, Maine, New Hampshire, Vermont, and Rhode Island, and the Commonwealth of Massachusetts.

8.  The term "document" or "documents" shall be interpreted in their broadest possible sense and at a minimum shall be synonymous in meaning and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, and mean any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including any medium in which information is stored, including but not limited to correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guarantees, summaries, pamphlets, books, prospectuses, inter-office communications, offers, notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, telefax, worksheets and all drafts, alternations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic records or representations of any kind, electronic, mechanical or electric records or representations of any kind, including but not limited to computer tapes, disks or diskettes and including all documents stored in or on a computer, back-up tape or other electronic usage medium or other electronic device or electronic mailboxes.

-3-

9.   The term "person" means any natural person or any business, legal or governmental entity or association.

10.  The terms "communication" means the conveyance of information in any form and by any means.

11.  The terms "concerning" or "concern" mean constituting, relating to, mentioning, discussing, evidencing, involving, depicting, describing, listing, consisting of, forming the basis of, commenting on, supporting, analyzing, forwarding, demonstrating, referring to or connected with, relying upon, or in any way related to the indicated subject.

12.  The term "material involvement" means any significant, pertinent, relevant, or important association with, connection to, participation in, or contribution to any matter.

13.  The term "adverse action" is defined as any legal proceeding, and/or disciplinary action, including but not limited to penalties, fines, chargebacks, allocation adjustments, sanctions, and terminations.

14.  In construing these definitions and instructions: (i) the singular shall include the plural and the plural shall include the singular; (ii) the masculine, feminine or neuter pronoun shall not exclude the other genders; (iii) the conjunctions "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of the request all information that might otherwise be construed to be outside its scope; (iv) the word "any" shall be read to mean each and every; and (v) no request will be geographically limited, except where specified.

## SCHEDULE A

1.   The nature and location of documents concerning Cycle-Craft, including documents concerning Harley-Davidson's decisions to (a) audit Cycle-Craft in February 2004 and (b) terminate Cycle-Craft's franchise agreement in April 2004.

2.   The formation and development of Harley-Davidson's non-retail sales policy.

3.   Any adverse action taken, threatened, and/or contemplated by Harley-Davidson against a franchisee for an actual or alleged violation of any non-retail sales policy within the last 10 years.

4.   Harley-Davidson's procedures for addressing sales suspected to be in violation of the non-retail sales policy.

5.   The nature and location of any documents concerning audits of other franchisees concerning an actual or alleged violation of any non-retail sales policy.

6.   The nature and number of any communications to franchisees concerning any non-retail sales policy and the nature and location of any documents concerning the same.

7.   Any proposed or potential franchise in the New England area, including, without limitation, a franchise in or near Danvers, Massachusetts.

8.   The nature and location of any documents, including market studies, concerning any new, proposed, or potential franchisee in the New England area.

9.   The factual basis for Harley-Davidson's denial of the allegations made by Cycle-Craft in Paragraph 30 of the Complaint.

10.  The nature and location of any documents concerning the factual basis for the denial of the allegations made by Cycle-Craft in Paragraph 30 of the Complaint.

11.  The factual basis for Harley-Davidson's denial of the allegations made by Cycle-Craft in Paragraph 33 of the Complaint.

12.  The nature and location of any documents concerning the factual basis for the denial of the allegations made by Cycle-Craft in Paragraph 33 of the Complaint.

13.  The nature and location of any documents concerning the criteria on which Harley-Davidson franchises are ranked, judged, considered, evaluated, or otherwise compared, including documents that memorialize the rankings and evaluations.

14.  The names, titles, positions, current location, roles and responsibilities of the individuals having material involvement in the following:

   a.   creation, drafting, alteration, implementation, and/or approval of any non-retail sales policy;

-5-

b.    any audit or adverse action taken, threatened, and/or contemplated by Harley-Davidson against any franchisee for an actual or alleged violation of any non-retail sales policy;

c.    discussion, planning, development, implementation, and/or approval during the last 10 years of any new franchise in the New England area.

d.    the factual basis for the denial of the allegations made by Cycle-Craft in Paragraph 30 of the Complaint.

e.    the factual basis for the denial of the allegations made by Cycle-Craft in Paragraph 33 of the Complaint.

15.    The nature and number of threatened terminations and terminations of any Harley-Davidson franchise in the last 10 years.

16.    The nature and location of any documents concerning threatened terminations and termination of any Harley-Davidson franchise in the last 10 years.

17.    Harley-Davidson's policy or procedure concerning document retention, including all policies or procedures concerning the deletion, retention, and storage of electronic information.

LIBA/1394295.2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYCLE-CRAFT CO., INC.<br>d/b/a BOSTON HARLEY-DAVIDSON/BUELL,<br><br>Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY, INC.<br>and BUELL DISTRIBUTION COMPANY, LLC,<br><br>Defendants. | CIVIL ACTION<br>NO. 04 11402 NMG |

## OBJECTION AND RESPONSE TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE

Defendants Harley-Davidson Motor Company, Inc. ("Harley-Davidson") and Buell Distribution Company, LLC ("Buell") (collectively "Harley-Davidson") hereby object to the 30(b)(6) Notice of Deposition served on Harley-Davidson by Plaintiff Cycle-Craft Co., Inc., d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft"):

### GENERAL OBJECTIONS

1.    Harley-Davidson objects to the date of the proposed deposition as November 22, 2004, because it fails to give reasonable notice as required under Fed. R. Civ. P. 30, particularly where Cycle-Craft served the notice on November 11, 2004 and listed 17 topics, the majority of which are objectionable. Harley-Davidson objects to the deposition going forward until such time as the Court rules on the scope, location and timing of the deposition. As the deposition date precedes the date that responses are due to Cycle-Craft's document request and interrogatories and covers many of the same topics, the deposition notice effectively cuts short the time that Harley-Davidson would otherwise have to respond.

2.    Harley-Davidson objects to the proposed location of the deposition as "the offices of Goodwin Proctor LLP, Exchange Place, 53 State Street, Boston, Massachusetts" given that Harley-Davidson's principal place of business is in Milwaukee, Wisconsin and all of Harley-

Davidson's employee witnesses live and work there. Additionally, many of the designated witnesses are likely to be deposed in their individual capacity, and any such depositions should be consolidated in order to avoid witnesses having to appear and testify at deposition on multiple occasions.

3.      These general objections are incorporated into each numbered response, as if each general objection was specifically set forth therein.

4.      Harley-Davidson objects to any definition, request or instruction listed in the notice that purports to impose any obligation not expressly provided for in the Federal Rules of Civil Procedure or Local Rules.

5.      Harley-Davidson objects to the notice to the extent that it seeks documents protected by the attorney-client privilege, the work-product doctrine or are otherwise protected from disclosure.

6.      Harley-Davidson objects to the definition of the term "material involvement" as stated in the notice as vague, particularly to the extent that the term "material" is inherently subjective.

7.      Harley-Davidson objects to the definition of the term "adverse action" as stated in the notice as overbroad, particularly as Cycle-Craft has arbitrarily characterized certain actions such as "allocation adjustments" and "chargebacks" as "adverse."

8.      Harley-Davidson objects to the overbroad temporal scope of the deposition which appears to be unlimited or limited to an expansive ten year time frame.

## SPECIFIC OBJECTIONS AND RESPONSES TO SCHEDULE A

## TOPIC NO. 1

The nature and location of documents concerning Cycle-Craft, including documents concerning Harley-Davidson's decisions to (a) audit Cycle-Craft in February 2004 and (b) terminate Cycle-Craft's franchise agreement in April 2004.

### RESPONSE

Harley-Davidson will designate and identify the person(s) most knowledgeable about this topic, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

### TOPIC NO. 2

The formation and development of Harley-Davidson's non-retail sales policy.

### RESPONSE

Harley-Davidson will designate and identify the person(s) most knowledgeable about this topic, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

### TOPIC NO. 3

Any adverse action taken, threatened, and/or contemplated by Harley-Davidson against a franchisee for an actual or alleged violation of any non-retail sales policy within the last 10 years.

### RESPONSE

Harley-Davidson objects to this topic on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Harley-Davidson's actions with respect to dealers other than Cycle-Craft have no bearing on whether there is good cause for termination of Cycle-Craft's dealer contracts pursuant to the notice of termination.

### TOPIC NO. 4

Harley-Davidson's procedures for addressing sales suspected to be in violation of the non-retail sales policy.

### RESPONSE:

Harley-Davidson will designate and identify the person(s) most knowledgeable about this topic, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

**TOPIC NO. 5**

The nature and location of any documents concerning audits of other franchisees concerning an actual or alleged violation of any non-retail sales policy.

**RESPONSE**

Harley-Davidson objects to this topic on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Harley-Davidson's actions with respect to dealers other than Cycle-Craft have no bearing on whether there is good cause for termination of Cycle-Craft's dealer contracts pursuant to the notice of termination.  Therefore, the nature and location of documents concerning this topic is irrelevant.

**TOPIC NO. 6**

The nature and number of any communications to franchisees concerning any non-retail sales policy and the nature and location of any documents concerning the same.

**RESPONSE**

Harley-Davidson objects to this topic on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Harley-Davidson's actions with respect to dealers other than Cycle-Craft have no bearing on whether there is good cause for termination of Cycle-Craft's dealer contracts pursuant to the notice of termination.

**TOPIC NO. 7**

Any proposed or potential franchise in the New England area, including, without limitation, a franchise in or near Danvers, Massachusetts.

**RESPONSE**

Harley-Davidson objects to this topic on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Harley-Davidson's actions with respect to dealers in areas other than the relevant market area, as defined by G.L. c. 93B, are irrelevant.

Subject to and without waiving any objections, Harley-Davidson will designate and identify the person(s) most knowledgeable about any proposed dealer in or near Danvers, Massachusetts, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

## TOPIC NO. 8

The nature and location of any documents, including market studies, concerning any new, proposed or potential franchisee in the New England area.

### RESPONSE

Harley-Davidson objects to this topic on the grounds that it is overly broad and otherwise not reasonably calculated to lead to the discovery of admissible evidence.  Harley-Davidson's actions with respect to dealers in areas other than the relevant market area, as defined by G.L. c.93B, are irrelevant.  Therefore, the nature and location of documents concerning this topic is irrelevant.

Subject to and without waiving any objections, Harley-Davidson will designate and identify the person(s) most knowledgeable about any proposed dealer in or near Danvers, Massachusetts, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

## TOPIC NO. 9

The factual basis for Harley-Davidson's denial of the allegations made by Cycle-Craft in Paragraph 30 of the Complaint.

### RESPONSE

Harley-Davidson objects to this topic on the ground that it calls for testimony constituting legal conclusions.

Subject to and without waiving any objections, Harley-Davidson will designate and identify the person(s) most knowledgeable about the facts and circumstances of Harley-Davidson's notice of termination of Cycle-Craft's dealer contracts, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

## TOPIC NO. 10

The nature and location of any documents concerning the factual basis for the denial of the allegations made by Cycle-Craft in Paragraph 30 of the Complaint.

### RESPONSE

Harley-Davidson objects to this topic on the ground that it calls for testimony constituting legal conclusions. Therefore, the nature and location of documents concerning this topic is irrelevant.

Subject to and without waiving any objections, Harley-Davidson will designate and identify the person(s) most knowledgeable about the nature and location of any documents concerning the facts and circumstances of Harley-Davidson's notice of termination of Cycle-Craft's dealer contracts, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

## TOPIC NO. 11

The factual basis for Harley-Davidson's denial of the allegations made by Cycle-Craft in Paragraph 33 of the Complaint.

### RESPONSE

Harley-Davidson objects to this topic on the ground that it calls for testimony constituting legal conclusions.

Subject to and without waiving any objections, Harley-Davidson will designate and identify the person(s) most knowledgeable about the facts and circumstances of Harley-Davidson's notice of termination of Cycle-Craft's dealer contracts, and will produce such individual(s) for deposition at a mutually agreeable time, or in accordance with a court order.

**TOPIC NO. 12**

The nature and location of any documents concerning the factual basis for the denial of the allegations made by Cycle-Craft in Paragraph 33 of the Complaint.

**RESPONSE**

Harley-Davidson objects to this topic on the ground that it calls for testimony constituting legal conclusions. Therefore, the nature and location of documents concerning this topic is irrelevant.

Subject to and without waiving any objections, Harley-Davidson will designate and identify the person(s) most knowledgeable about the nature and location of any documents concerning the facts and circumstances of Harley-Davidson's notice of termination of Cycle-Craft's dealer contracts, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

**TOPIC NO. 13**

The nature and location of any documents concerning the criteria on which Harley-Davidson franchises are ranked, judged, considered, evaluated, or otherwise compared including documents that memorialize the rankings and evaluations.

**RESPONSE**

Harley-Davidson objects to this topic on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Harley-Davidson's dealer ranking criteria has no bearing on whether there is good cause for termination of Cycle-Craft's dealer contracts pursuant to the notice of termination. Therefore, the nature and location of documents concerning this topic is irrelevant.

**TOPIC NO. 14**

The names, titles, positions, current location, roles and responsibilities of the individual having material involvement in the following:

    (a)    creation, drafting, alteration, implementation, and/or approval of any non-retail sales policy;

(b)     any audit or adverse action taken, threatened, and/or contemplated by Harley-Davidson against any franchisee for an actual or alleged violation of any non-retail sales policy;

(c)     discussion, planning, development, implementation and/or approval during the last 10 years of any new franchise in the New England area.

(d)     the factual basis for the denial of the allegations made by Cycle-Craft in Paragraph 30 of the Complaint.

(e)     the factual basis for the denial of the allegations made by Cycle-Craft in Paragraph 33 of the Complaint.

**RESPONSE**

Harley-Davidson objects to this topic on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any objections, Harley-Davidson will designate and identify the person(s) most knowledgeable about the names, titles, positions, current location, roles and responsibilities of the individual having involvement in: (i) creation, drafting, alteration and/or approval of any non-retail sales policy; (ii) any audit or adverse action taken, threatened, and/or contemplated by Harley-Davidson against Cycle-Craft for an actual or alleged violation of any non-retail sales policy; (iii) discussion, planning, development, implementation and/or approval of any new dealership in the Danvers, Massachusetts area; and (iv) the facts and circumstances of Harley-Davidson's notice of termination of Cycle-Craft's dealer contracts. Harley-Davidson will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

**TOPIC NO. 15**

The nature and number of threatened terminations and terminations of any Harley-Davidson franchise in the last 10 years.

#### RESPONSE

Harley-Davidson objects to this topic on the grounds that it is overly broad, unduly burdensome and otherwise not reasonably calculated to lead to the discovery of admissible evidence. Harley-Davidson's actions with respect to dealers other than Cycle-Craft have no bearing on whether there is good cause for termination of Cycle-Craft's dealer contracts pursuant to the notice of termination.

## TOPIC NO. 16

The nature and location of any documents concerning threatened terminations and terminations of any Harley-Davidson franchise in the last 10 years.

#### RESPONSE

Harley-Davidson objects to this topic on the grounds that it is overly broad, unduly burdensome and otherwise not reasonably calculated to lead to the discovery of admissible evidence. Harley-Davidson's actions with respect to dealers other than Cycle-Craft have no bearing on whether there is good cause for termination of Cycle-Craft's dealer contracts pursuant to the notice of termination. Therefore, the nature and location of documents concerning this topic is irrelevant.

## TOPIC NO. 17

Harley-Davidson's policy or procedure concerning document retention, including all policies or procedures concerning the deletion, retention, and storage of electronic information.

#### RESPONSE

Harley-Davidson objects to this topic on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any objections, Harley-Davidson will designate and identify the person(s) most knowledgeable about Harley-Davidson's policy or procedure concerning retention of documents relating to its dealers, and will produce such individual(s) for deposition at a mutually agreeable time or in accordance with a court order.

**HARLEY-DAVIDSON MOTOR COMPANY, INC.,
and BUELL DISTRIBUTION COMPANY, LLC**

By their attorneys,

William N. Berkowitz, BBO# 544148
Sabita Singh, BBO# 560146
Serena D. Madar, BBO# 654326
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA  02110
(617) 951-8000

## CERTIFICATE OF SERVICE

I, Serena D. Madar, hereby certify that a true copy of the above document was served

upon the attorney of record for each other party, listed below, by hand on December 3, 2004:

Angela Buchanan Smagula, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Serena D. Madar