UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYCLE-CRAFT CO., INC. d/b/a )<br>BOSTON HARLEY-DAVIDSON/BUELL, )<br>  )<br>    Plaintiff, )<br>  )<br>v. )<br>  )<br>HARLEY-DAVIDSON MOTOR COMPANY, INC. )<br>and BUELL DISTRIBUTION COMPANY, LLC, )<br>  )<br>    Defendants. )<br> ) | CIVIL ACTION<br>NO. 04 11402 NMG |

**PLAINTIFF CYCLE-CRAFT CO., INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants Harley-Davidson Motor Company, Inc. and Buell Distribution Company, LLC (collectively "Harley-Davidson") have filed a motion for a protective order in an attempt to improperly limit the scope of Cycle-Craft's 30(b)(6) deposition notice, and require that the deposition take place in Milwaukee, Wisconsin instead of in Boston, Massachusetts. Plaintiff Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") hereby opposes this motion for a protective order for the reasons stated below.

The thrust of Harley-Davidson's motion for a protective order is that the issue to be litigated here is narrowly confined to whether Cycle-Craft violated certain alleged policies that Harley-Davidson purports to impose on its dealers. But Harley-Davidson's position ignores the substantive Massachusetts law that governs this dispute, the so-called "Dealer Protection Act" codified by M.G.L. c. 93B; Cycle-Craft's claim that Harley-Davidson's threatened termination is a mere pretext; and the discovery standards of the Federal Rules of Civil Procedure, which authorize discovery that is "reasonably calculated to lead to the discovery of admissible

evidence." Most significantly, Harley-Davidson ignores the command under M.G.L. c. 93B § 5(j) that "all pertinent circumstances" must be considered in determining whether Harley-Davidson has terminated Cycle-Craft "without good cause, in bad faith or in an arbitrary or unconscionable manner." Compl. at ¶30. This broad substantive legal standard, which necessarily contemplates information that is relevant to Cycle-Craft's "pretext" claim and to whether any alleged policy violations by Cycle-Craft were "material," easily justifies the discovery Cycle-Craft seeks.

Harley-Davidson's insistence that the Boston lawyers on both sides of this case travel to Milwaukee for the Rule 30(b)(6) deposition is also unfounded. The normal "presumption" that a representative of a corporate defendant should have his deposition taken at the corporation's place of business is inapplicable here where the dispute was initiated by Harley-Davidson's threatened termination of Cycle-Craft, and where plaintiff Cycle-Craft had no choice under M.G.L. c. 93B § 5 to file suit anywhere but Massachusetts. In addition, the "equities" that courts in this district consider in determining the applicability of the "presumption" relied on by Harley-Davidson cut in favor of a Boston deposition.

## BACKGROUND

This case arises out of a Notice of Termination sent by Harley-Davidson to Cycle-Craft on April 20, 2004. In that Notice of Termination, Harley-Davidson stated three grounds for the termination: (1) Cycle-Craft had submitted false information to Harley-Davidson; (2) Cycle-Craft had sold Harley-Davidson products to non-retail purchasers; and (3) Cycle-Craft had failed to maintain completed Sales and Warranty Registration Forms and other related paperwork. *See* April 20, 2004 Letter from Jon Flickinger to John Atwood, attached as Exhibit 1. Prior to April 20, 2004, Cycle-Craft had been given no notice of, or opportunity to explain or cure, the

allegations in the letter. On June 18, 2004, Cycle-Craft brought this action pursuant to M.G.L. c. 93B §5. Compl. ¶¶ 27-36.

Chapter 93B §5(a) prohibits a manufacturer like Harley-Davidson from terminating a franchise agreement with a dealer "without good cause, in bad faith or in an arbitrary or unconscionable manner." M.G.L. c. 93B §5(a). Cycle-Craft alleges in its Complaint that Harley-Davidson's Notice of Termination was without good cause, was in bad faith, and was arbitrary and unconscionable. Compl. at ¶30. Furthermore, Cycle-Craft claims that the alleged violations identified in Harley-Davidson's Notice of Termination were a pretext for Harley-Davidson's true motive for terminating Cycle-Craft, namely, that Harley-Davidson wanted to install a <u>new</u> dealer in or near Danvers, Massachusetts, part of Cycle-Craft's market area, and wanted to avoid a protracted and expensive "protest" of the proposed Danvers dealership by Cycle-Craft pursuant to M.G.L. c. 93B §6. *Id*. at ¶36.[1]

Both parties propounded discovery in early November. Cycle-Craft included in its affirmative discovery a notice of deposition pursuant to Rule 30(b)(6) to take place in Boston, Massachusetts. The deposition notice identified several topics on which testimony was sought, a list that was carefully tailored to gather information related to, inter alia, Cycle-Craft's claim that its threatened termination was not for "good cause" and was, in fact, pretextual. Although Harley-Davidson's brief conveys the impression that Cycle-Craft is seeking "all encompassing" discovery regarding "Harley-Davidson's relationship with all of its authorized dealers," Mem. at 3, the objected-to topics are far narrower. The bulk of the six topics to which Harley-Davidson

---

[1] Under M.G.L. c. 93B §6, a manufacturer must send written notice to a dealer of its intention to enter into another franchise agreement within the dealer's market area. *Id.* at § 6(c). The dealer then may object by sending a protest in writing to the manufacturer. *Id.* at § 6(d). If a written protest is provided to the manufacturer, then either the manufacturer or the dealer may file a complaint in the superior court or in the federal district court for the district of Massachusetts to enforce or enjoin the proposed appointment. *Id.* at § 6(e).

3

objects seek information regarding Harley-Davidson's implementation and enforcement of the very same policies that Harley-Davidson alleges Cycle-Craft has violated.

In the brief supporting its motion for a protective order, Harley-Davidson objects, inter alia, to the scope and location of the noticed deposition. As explained more fully below, these objections lack merit. As a threshold matter, it is worth noting that Harley-Davidson raises for the first time in its brief several objections that have not been discussed between the parties, notwithstanding a substantial telephonic conference pursuant to Local Rule 37.1(A) that was held on November 18, 2004: to discovery regarding Harley-Davidson's relationship with other dealers "worldwide," Mem. at 2, 4; to discovery regarding other possible new dealerships in New England, Mem. at 6; and to discovery regarding Harley-Davidson's criteria for ranking dealers and its document retention policy. *See id*. In addition, although Harley-Davidson raised a general objection to Cycle-Craft's request for certain information from the previous ten years, this was never discussed further because Harley-Davidson flatly refused to produce any information on Harley-Davidson's enforcement of policies as to other dealers, regardless of the time period. Many of these disputed areas might have been the subject of compromise had Harley-Davidson raised them during the meet and confer.[2] Indeed, Cycle-Craft engaged in a good faith effort to reach a compromise on these issues, proposing several accommodations that were unacceptable to Harley-Davidson. *See infra* §I.

For the reasons stated below, Cycle-Craft requests that the Court deny Harley-Davidson's request for a protective order and order that the 30(b)(6) deposition takes place in Boston, Massachusetts at a mutually convenient time for both parties.

---

[2] For example, if Harley-Davidson had given any representations as to why discovery of non-U.S. dealers was unduly burdensome or was not relevant, Cycle-Craft would have limited its request to U.S. dealers.

4

# ARGUMENT

**I.    The Rule 30(b)(6) Deposition Has Been Deferred Because Harley-Davidson Refused to Produce a Witness.**

Harley-Davidson has requested that all depositions, but specifically the Rule 30(b)(6) deposition, be "postponed" until the Court rules on its objections to Cycle-Craft's discovery. Mem. at 2. Significantly, however, Harley-Davidson fails to mention that during the meet and confer Cycle-Craft offered numerous compromises in an effort to have the Rule 30(b)(6) deposition go forward, at least in part. For example, Cycle-Craft offered to go forward with the deposition and reserve until later the topics regarding information about the other dealers. *See* November 23, 2004 Email from Angela Smagula Buchanan to Sabita Singh, attached as Exhibit 2. A number of topics in the deposition notice were not objected to by Harley-Davidson, and its representatives could have been examined on these. This offer was rejected. In the alternative, Cycle-Craft offered to agree to defer the Rule 30(b)(6) deposition until after the Court's decision regarding the scope of the deposition if Harley-Davidson would agree to conduct the Rule 30(b)(6) depositions and the later substantive depositions in Boston. This too was rejected. Thus, despite all of Cycle-Craft's efforts to reach a compromise, Harley-Davidson has steadfastly refused to produce a witness for the Rule 30(b)(6) deposition until all of its objections to Cycle-Craft's discovery requests are resolved. Such recalcitrance should not be entertained by this Court, and the 30(b)(6) deposition should not be delayed any further.

**II.    Harley-Davidson's Objections to the Scope of Discovery Sought By Cycle-Craft Ignore Both Cycle-Craft's Claim of Bad Faith Termination and the "All Pertinent Circumstances" Inquiry Under Chapter 93B.**

In its brief, Harley-Davidson consistently mischaracterizes the scope of the issues to be litigated here. For example, it asserts that "the inquiry for trial is whether false reporting of sales data constitutes good cause for termination." Mem. at 4. This assertion not only fails to

5

acknowledge Harley-Davidson's own termination notice, which included three separate grounds for termination, *see* Exhibit 1, but wholly ignores the claims made by Cycle-Craft. Indeed Harley-Davidson's argument also fails to acknowledge the Federal Rules of Civil Procedure, which mandate that discoverable information only need be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). *See, e.g., Klonoski v. Mahlab*, 156 F.3d 255, 267 (1st Cir. 1998) ("[T]he plain language of this Rule 26(b)(1) contemplates wide-ranging discovery to the fullest possible extent.")

Cycle-Craft's claim is brought pursuant to M.G.L. c. 93B §5(a), which prohibits termination "without good cause, in bad faith or in an arbitrary or unconscionable manner." Compl. ¶30. Pursuant to the statute, "all pertinent circumstances" are to be considered in determining good cause or lack thereof. M.G.L. c. 93B §5(j). Consequently, Cycle-Craft is entitled to discovery of "all pertinent circumstances," which includes information on Harley-Davidson's dealings with other dealers based on violations similar to those Harley-Davidson alleges were committed by Cycle-Craft, as well as other information objected to by Harley-Davidson.

  **A.  Information Concerning Harley-Davidson's Dealings With Other Dealers Regarding the Policies Allegedly Violated Here Is Relevant.**

Cycle-Craft alleges that Harley-Davidson violated M.G.L. c. 93B by terminating the franchise agreement without good cause and in bad faith. M.G.L. c. 93B §5(j) states that, in determining whether good cause has been established for terminating a franchise agreement, "the court shall consider <u>all pertinent circumstances</u>, that may include, but shall not be limited to:

> (1)  the amount of business transacted by the affected motor vehicle dealer during the 3 year period immediately preceding such notice as compared to the business available to it;

>   (2)    the investment necessarily made and obligations incurred by the affected motor vehicle dealer to perform its obligations under the existing franchise agreement;
>
>   (3)    the permanency of the investment of the affected motor vehicle dealer;
>
>   (4)    whether it is injurious or beneficial to the public welfare for the franchise agreement of the affected motor vehicle dealer to expire, to be modified, or to be terminated, or for the affected motor vehicle dealer to be replaced;
>
>   (5)    whether the affected motor vehicle dealer has adequate motor vehicle sales and service facilities, equipment, vehicle parts and qualified personnel to reasonably provide for the needs of the consumers for motor vehicles handled by the affected motor vehicle dealer;
>
>   (6)    whether the affected motor vehicle dealer has been and is rendering adequate services to the public; and
>
>   (7)    the existence and materiality of any breaches, defaults or violations by the affected motor vehicle dealer of the terms or provisions of the existing franchise agreement or of applicable law.

(emphasis added).

As the plain language of the statute states, this list is not exhaustive, and thus allows for a wide ranging inquiry. Any action — or lack of action — taken by Harley-Davidson against other dealers in circumstances similar to Cycle-Craft's are "pertinent circumstances," as such information will shed light on whether Cycle-Craft's alleged breaches were "material" under M.G.L. c. 93B §5(j) and whether Cycle-Craft was terminated in bad faith. In particular, information regarding Harley-Davidson's dealings with other dealers regarding alleged or suspected violations of Harley-Davidson's non-retail sales policy are relevant to the "materiality" of the breaches alleged here. For example, if Harley-Davidson has historically required that violations of any non-retail policy be of a certain number, or duration, or character before termination or any other discipline is imposed, that would suggest that certain lesser

violations are not seen by Harley-Davidson as "material." Similarly, such discovery is relevant to whether Harley-Davidson's threatened termination is pretextual. If Harley-Davidson has singled out Cycle-Craft for treatment that is markedly different than its treatment of other dealers, this lends substantial support to Cycle-Craft's allegation that the stated ground for the termination is pretextual, and that Harley-Davidson may have alternative reasons for its action. In short, Harley-Davidson's claim that its "relationship with dealers other than Cycle-Craft have no bearing on the issues in this case," Mem. at 4 (emphasis added), is incorrect.

Ample case law confirms that discovery regarding a manufacturer's dealings with "other" dealers is permissible in dealer termination cases, as is discovery related to allegations of "pretext." *See, e.g., Coady Corp. v. Toyota Motor Distributors, Inc.,* 361 F.3d 50, 55 (1st. Cir. 2004) (evidence of Toyota's actions with other dealers was presented to show Toyota's allocation system as to plaintiff dealer was arbitrary and unfair); *American Honda Motor Co., Inc. v. Bernardi's Inc.*, 113 F. Supp. 2d 58, 62-64 (D. Mass. 1999) (information concerning distributor's alleged arbitrary actions and retaliatory motives, and its decision making process regarding the election of a new dealer were "pertinent circumstances" and thus discoverable); *Sam Goldfarb Plymouth, Inc. v. Chrysler Corp.*, 214 F.Supp. 600, 602 (E.D. Mich. 1962) (testimony presented to show that other dealers who failed to reach quota received termination notices); *Blackstone Subaru, Inc. v. Subaru of New England, Inc.,* 1993 WL 818780 at *1 (Mass. Super. 1993) (Court denied motion in limine to exclude post-termination negotiations with other dealers that might reflect on Subaru's good faith in its dealings with Blackstone). *American*

*Honda Motor*, in particular, illustrates why "pretext" discovery is proper under Chapter 93B.[3]

As explained above, the scope of relevant information is far broader under Chapter 93B than in a breach of contract case, where there is no statutory command that "all pertinent circumstances" be considered and where pretext is not normally relevant.[4] Accordingly, Harley-Davidson's heavy reliance on a straightforward breach of contract case, *Original Great American Chocolate Chip Cookie, Co., Inc. v. River Valley Cookies, Ltd.,* 970 F.2d 273 (7th Cir. 1992), is misplaced. *See* Mem. at 4-5. In that case, the court held that the franchisee's claim that the franchisor treated other franchisees more leniently was not a defense to a claim for breach of the franchise agreement. *American Cookie,* 970 F.2d at 279. This conclusion is inapposite here, where the issues under M.G.L. c. 93B §5(a) and Cycle-Craft's pretext claim are much broader. Additional cases cited by Harley-Davidson are also inapplicable as this confuses relevance with admissibility. Although Harley-Davidson cites cases purportedly standing for the proposition that information regarding other dealers is not discoverable, *see* Mem. at 5, those cases do not even addresses whether such information is discoverable but focus, instead, on the admissibility

---

[3] In *American Honda Motor*, the Court held that discovery related to a claim of "retaliation" and information on dealer candidate selection were "pertinent circumstances" under a prior version of Chapter 93B. 113 F.Supp.2d at 63-64. American Honda sought to limit the counter-claim plaintiff's discovery on its claim that American Honda took retaliatory action against it because of the counter-claim plaintiff's participation in multidistrict litigation against American Honda in a separate matter. *Id.* at 63. The Court rejected American Honda's argument that discovery should be limited to the enumerated factors under Chapter 93B and concluded that the counter-claim plaintiff's "allegations of retaliation by American Honda are 'pertinent circumstances'" under the statute. *Id.* at 63. The "retaliation" claim made in *American Honda Motor* is analogous to the "pretext" claim here, and the discovery sought here should likewise be permitted.

[4] As previously explained, " (7) the existence of any breaches . . . of the terms or provisions of the existing franchise agreement" is just one factor in the non-exhaustive list of possible "pertinent circumstances" contained in the statute for a court to consider in making an overall determination of good cause.

or sufficiency of evidence.[5] In sum, both the facts and the law demonstrate that Harley-Davidson's objections to Cycle-Craft's focused discovery regarding other dealers should not be allowed.

### B. Harley-Davidson's Other "Scope" Objections Are Also Meritless.

Harley-Davidson also argues that discovery concerning any proposed dealership in New England, other than in the Danvers, Massachusetts area, is "not relevant to Cycle-Craft's claim nor is it otherwise relevant to this litigation." Mem. at 6. Again, Harley-Davidson ignores the plain language of Chapter 93B §5(j), which lists "whether it is injurious or beneficial to the public welfare for the franchise agreement of the affected motor vehicle dealer . . . to be terminated" as just one of many factors to be considered by the court in making the determination of "good cause," rendering information concerning other existing and proposed dealerships in New England relevant to the determination of how the proposed termination will affect the public. M.G.L. c. 93B §5(j)(4).

Harley-Davidson's argument that its "criteria for ranking dealers is not relevant to this case as the dispute revolves around Cycle-Craft's false reporting of sales data," Mem. at 6, is similarly meritless  According to Chapter 93B §5(j), a relevant factor in the determination of "good cause" is "the amount of business transacted by the affected motor vehicle dealer during the 3 year period immediately preceding such notice as compared to the business available to it." M.G.L. c. 93B §5(j)(1). Discovery related to Harley-Davidson's criteria for ranking dealers is

---

[5] *See Professional Mobile Home Brokers, Inc. v. Security Pacific Housing Services, Inc.*, 53 F.3d 329, 1995 WL 255937 (4th Cir. 1995) (information regarding the defendant's dealings with other mobile home dealers was ruled inadmissible at trial because the probative value was outweighed by the risk of confusion); *Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co.,* 781 F.2d 1520, 1527-28 (11th Cir. 1986) (evidence at trial that the distributor did not uniformly apply its quota system was not sufficient to prove bad faith termination); *Zebelman v. Chrysler Corp*., 299 F. Supp. 653, 658 (E.D. Mo. 1968) (evidence regarding distributor's inconsistent actions regarding quota allocation with other dealers was held insufficient to enjoin the termination).

10

certainly relevant, as an analysis of the amount of business transacted by Cycle-Craft compared to the business available to it would be both impossible and meaningless without the availability of comparison to the amount of business transacted by other dealers and information about other dealers that affect the amount of business available to Cycle-Craft.

        **C.     Cycle-Craft's Request for Documents Dating Back Ten Years Is Reasonable and Harley-Davidson Has Made No Showing That Compliance Would Be Burdensome.**

Harley-Davidson argues that the temporal scope of certain of Cycle-Craft's discovery requests "make them overly broad" because they "seek information going back ten years in time." Mem. at 6. According to Harley-Davidson, the scope of the discovery should be limited to a period of three years prior to the events at issue in this case. *Id*. at 7. Harley-Davidson has not made any showing, however, as to why a ten-year period is burdensome, and has offered little support for its position that discovery should be limited to a three-year period save for three district court opinions in which the respective courts so limited discovery. Those opinions are from other jurisdictions and do not involve Chapter 93B. Moreover, Cycle-Craft has no idea how many times in the last 10 years Harley-Davidson has enforced the policies it alleges have been violated here. Both Cycle-Craft and the Court can only guess as to whether Harley-Davidson's compliance would be burdensome, and whether a shorter period would adequately respond to Cycle-Craft's legitimate discovery needs.

In short, unless and until Harley-Davidson makes some sort of factual showing that Cycle-Craft's discovery needs can otherwise be met, Cycle-Craft's requests for information from within a ten year period should not be limited. Information regarding Harley-Davidson's

treatment of other dealers in similar circumstances during this time period is presumptively relevant to Cycle-Craft's claim of bad faith termination.

>    III.   **Contrary to Harley-Davidson's Objection to a Boston Deposition, the Equities of the Case Require that the 30(b)(6) Deposition Take Place in the Forum State.**

It is well settled that "[a] party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order by the Court . . . ." *Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D. N.C. 1988); C. A. Wright, A. R. Miller & R. L. Marcus, *Federal Practice and Procedure: Federal Rules of Civil Procedure* § 2112 (West 2002). Although there is an initial presumption that a corporate defendant should be examined at its principal place of business, based on the theory that the plaintiff brings the lawsuit and chooses the forum,[6] in this district courts have considered numerous factors that may rebut this presumption and require the deposition to be conducted in the forum district or some other place. *Smith v. Shoe Show of Rocky Mount, Inc.*, 2001 WL 1757184 at *2-3 (D. Mass. 2001). *See also St. Hilaire and Assoc., Inc.,* 1994 WL 575773 at *2 (quoting *Turner*, 119 F.R.D. at 383). These factors include (1) the location of counsel for the parties; (2) the number of corporate representatives a party is seeking to depose; (3) the likelihood of significant discovery disputes that would necessitate resolution by the foreign court; (4) whether the person sought to be deposed often travels for business purposes; (5) whether the defendant has filed a permissive counterclaim; and (6) the equities with regard to the nature of the claim and the parties' relationship. *Smith,* 2001 WL 1757184 at *2-3. Indeed, the *Smith* Court emphasized the

---

6   *See St. Hilaire and Assoc., Inc. v. FDIC*, 1994 WL 575773 at *2 (D.N.H. 1994) (the "general rule is based on the concept that it is the plaintiffs who bring the law suit and who exercise the first choice as to the forum.") (internal quotations and citations omitted); *Lexington Ins. Co. v. Commonwealth Ins. Co.*, 1999 WL 33292943 at *9 (N.D.Cal. 1999) ("[t]he underlying rationale offered in these cases is that because the plaintiff rather than the defendant chooses the forum, the defendant and its representatives should not be required to travel to the forum for deposition.")

importance of considering each of those factors, and held that the presumption is "merely a decision rule that facilitates determination when other relevant factors do not favor one side over the other." *Id.* (quoting *Bank of New York v. Meridien BIAO Bank of Tanzania Ltd.*, 171 F.R.D. 135, 155 (S.D.N.Y. 1997)).  As such, the Court must consider each case on its own merits. *See id.* at *3; *Turner*, 119 F.R.D. at 383.

As a threshold matter, it is doubtful that the presumption described above is even applicable in this case.  Here, unlike in most cases, Cycle-Craft's presence at the top of the caption is a matter more of form than of substance.  Cycle-Craft assumed the role of plaintiff, pursuant to the remedial structure set forth in Chapter 93B, in direct response to Harley-Davidson's threatened termination.  Compl. at ¶1.  In other words, Cycle-Craft no more initiated this litigation than did Harley-Davidson.  Chapter 93B, moreover, the statutory scheme governing Harley-Davidson's relationship with Cycle-Craft, explicitly requires that suit be filed in Massachusetts state or federal court.  M.G.L. c. 93B §5(f).  In other words, Cycle-Craft no more "chose" this forum than did Harley-Davidson.  For these reasons, the presumption that the deposition of Harley-Davidson should be held in Milwaukee is inapplicable, as Cycle-Craft cannot be viewed as dragging Harley-Davidson in to litigation in a forum of its choosing. Accordingly, Cycle-Craft should be entitled to choose Boston as the place of the deposition, which is the location of both parties' counsel.

Even if the presumption had some initial force, it is amply rebutted here, as several of the *Smith* factors weigh in favor of having Harley-Davidson's agents deposed in the forum state. First, all counsel for both parties are located in Boston.  Although Harley-Davidson does not identify how many individuals it would put forth as witnesses, it is likely that the number of lawyers will outnumber the number of deponents.  Moreover, all documents related to the Rule

30(b)(6) deposition presumably will be reviewed and produced by Harley-Davidson's Boston counsel in Boston, a factor weighing in favor of a Boston deposition. *See, e.g., Turner*, 119 F.R.D. at 383 (citing *General Leasing v. Lawrence Photo-Graphic Supply*, 84 F.R.D. 130 (W.D. Mo. 1979) (court considers the expense and inconvenience of moving large amounts of documents)); *St. Hilaire and Assoc., Inc.,* 1994 WL 575773 at *2 (same).

Second, discovery has only just begun and the parties are already before the Court with a significant discovery dispute, a dispute that will have the inevitable, if unfortunate, result that the Court will become familiar with the contested discovery issues. Accordingly, any additional discovery disputes that arise will be resolved much more efficiently and economically if the depositions are held in the forum state. *See Minnesota Mining & Mfg. Co. v. Dacar Chem. Prods., Co.,* 707 F. Supp. 793, 795 (W.D. Pa. 1989) ("pragmatically permits the trial court to resolve disputes that may take place during the course of the depositions without undue expenditure of time").

Third, Harley-Davidson is a large publicly traded corporation that conducts business all over the country, not to mention "worldwide," as it argues in its brief. Surely, the relevant Harley-Davidson executives are not unaccustomed to extensive business travel, and any inconvenience will be minimal. *See Turner*, 119 F.R.D. at 383. In contrast, Cycle-Craft is just one franchise doing business in the Massachusetts area. Harley-Davidson has not attempted to make any showing that requiring a few individuals to come to Boston – which may be the individuals' "territory" in any event – would be overly burdensome.

Finally, with regard to the equities of the case, it should be noted that inasmuch as Harley-Davidson chose to terminate its Massachusetts dealership, and the actions that it identifies as violations of the relationship occurred in Massachusetts, it is not unreasonable it

should appear and be examined about such matters in Massachusetts. In addition, as noted above, under the statutory scheme of 93B, Cycle-Craft was required to bring suit in Massachusetts. *See, e.g., St. Hilaire and Assoc., Inc.,* 1994 WL 575773 at *2 (noting that plaintiff's choice of forum was dictated by federal statute under which it sought relief).

In sum, consideration of all factors, as well as the relative position of the parties, tip the balance in favor of Cycle-Craft and require that Harley-Davidson produce its executive(s) for the 30(b)(6) deposition in Boston.

## CONCLUSION

Cycle-Craft respectfully requests that Harley-Davidson's request for a protective order be denied.

    Respectfully submitted,

    **CYCLE-CRAFT CO., INC.**

    By its attorneys,

    /s/ James C. Rehnquist_____
    James C. Rehnquist (BBO# 552602)
    Angela Buchanan Smagula (BBO# 643764)
    GOODWIN PROCTER LLP
    Exchange Place
    Boston, MA 02109
    (617) 570-1000

Dated: December 21, 2004