UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
CYCLE-CRAFT CO., INC. d/b/a                 )
BOSTON HARLEY-DAVIDSON/BUELL,               )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )   CIVIL ACTION
                                            )   NO. 04 11402 NMG
HARLEY-DAVIDSON MOTOR COMPANY, INC.         )
and BUELL DISTRIBUTION COMPANY, LLC,        )
                                            )
        Defendants.                         )
_____)

**PLAINTIFF CYCLE-CRAFT CO., INC.'S OPPOSITION
TO DEFENDANTS' MOTION TO STRIKE JURY DEMAND**

Cycle-Craft opposes Harley-Davidson's motion to strike its jury demand on its Chapter 93B claim.

Harley-Davidson's motion should be denied for several reasons. First, under the Seventh Amendment, Cycle-Craft enjoys a constitutional right to a jury—a right not to be lightly denied—where "the nature of the issue to be tried" resembles an action at law. *E.g., In re Acushnet River & New Bedford Harbor*, 712 F.Supp 994, 998 (D.Mass 1989). The issues to be tried on Cycle-Craft's Chapter 93B claim are largely contractual and quasi-contractual ones, and therefore the action indeed resembles an action at law. Harley-Davidson does not advance any alternative view of the "issues to be tried," and for this reason alone its motion should be denied.

Second, none of the legal authority enlisted by Harley-Davidson demonstrates the absence of a right to a jury trial under Chapter 93B. The federal cases it relies on, *Wallace Motor Sales Inc. v. American Motors Sales Corp.*, 780 F.2d 1049 (1st Cir. 1985) and *Gallo Motor Center Corp. v. Mazda Motor of America, Inc.*, 172 F.Supp.2d 292 (D. Mass. 2001), are

LIBA/1440184.5

both cases where plaintiff appears to have waived any right to a jury trial. And the state case it relies on, *Nei v. Burley*, 388 Mass. 307 (1983) (no right to jury on chapter 93A claim in state court), is inapposite, as the question of a right to a jury trial in federal court is a matter of federal law. *Simler v. Conner*, 372 U.S. 221, 222 (1963).

Third, even if this Court does not find that Cycle-Craft has a *right* to a jury, it should nonetheless empanel a binding or advisory jury to hear the case. Empanelling a jury would be an efficient way of safeguarding judicial resources, given the substantial overlap between Cycle-Craft's Chapter 93B claims and its common-law claims.

For all of these reasons, Harley-Davidson's motion should be denied.

## ARGUMENT

I. **Cycle-Craft Has a Jury Right on its Chapter 93B Claim Because the "Nature Of the Issues To Be Tried" Are Largely Contractual**

   A. *The Issues To Be Tried In This Chapter 93B Case Are Largely Contractual And Therefore Traditionally Legal, Rather Than Equitable*

In analyzing the right to a jury on a state law claim, a court "must look first to state law to determine the elements of the cause of action and the propriety of the remedies sought [and then] turn to federal law to 'characterize' the action and remedies as either legal or equitable." *Gallagher v. Wilton Enters.,* 962 F.2d 120, 122 (1st Cir. 1992). Harley-Davidson cites this passage in their brief, Def. Mem. p. 2, but fails to recognize that this "characterization" requires a court to consider the true nature of the issues for trial. Indeed, Harley-Davidson does not even attempt to "characterize" Cycle-Craft's suit, nor does it advance any position as to "the issues to be tried." In short, Harley-Davidson fails to recognize that, under the Seventh Amendment, "it is not the suit, but the particular issues within a suit upon which the determination will depend: 'The Seventh Amendment question depends on the nature of the issue to be tried rather than the

2

character of the overall action.'" Achushnet, 712, F. Supp. at 998 (quoting *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).

Under this standard, Cycle-Craft's Chapter 93B claim must be heard by a jury. The issues to be tried here are largely contractual or quasi-contractual, and a contract action is exactly the sort of classically "legal" (rather than "equitable") issue that draws the protections of the Seventh Amendment. The First Circuit noted decades ago that "if a vendor had brought an action for damages for breach of contract to purchase land, this proceeding of course would have been on the law side of a federal district court, and the defendant as of right could have demanded a jury trial on any disputed issues of fact as to the making of the contract, its breach, or the amount of damages resulting therefrom." *Chappell & Co. v. Palermo Café, Co., Inc*, 249 F.2d 77, 80-81 (1st Cir. 1957). More recently, First Circuit decisions make plain that contract and contract-based claims are a jury's domain. *See*, *e.g., Nasco, Inc. v. Public Storage, Inc.*, 127 F.3d 148, 151 (1st Cir. 1997) (affirming case where "a jury ruled for the defendant on the contract claim and on the implied covenant of good faith claim"); *Zyla v. Wadsworth,* 360 F.3d 243, 253 (1st Cir. 2004) (noting that "[n]o reasonable *jury* could find here that Thomson violated that covenant [of good faith and fair dealing]") (emphasis added).[1]

There can be no doubt that Cycle-Craft's claim under Chapter 93B centers on the contract that is at the heart of this case: the motorcycle dealership contract between Cycle-Craft and Harley-Davidson that Harley-Davidson is violating and improperly terminating. And because of

---

[1] Harley-Davidson advances no argument that Cycle-Craft does not have the right to a jury trial on its breach-of-contract and implied-covenant claims—and indeed no such argument can be made. Harley-Davidson does hedge its bets as to those two claims by using the phraseology of "*[w]hether or not* Cycle-Craft is entitled to a jury on [the breach-of-covenant and breach-of-contract] claims…" Def. Mem. at 4 (emphasis added). But Harley-Davidson undercuts its cautious language in the very next sentence by referring to the claims as "legal" ones. *Id*.

3

Harley-Davidson's improprieties, Cycle-Craft's complaint[2] alleges breach of contract and breach of the covenant of good faith and fair dealing, as well as claims under Section 5 of Chapter 93B. As a result, the issues to be tried under Chapter 93B in this case are similar to those that are traditionally tried in breach-of-contract cases, and which will be tried here under Cycle-Craft's breach-of-contract and covenant-of-good-faith claims. Those issues include the existence, formation, and terms of the dealership agreement; whether either party has breached the agreement; whether any breach by Cycle-Craft was material; whether Harley-Davidson provided Cycle-Craft any opportunity to cure any breach; what remedy, if any, is appropriate; whether Harley-Davidson's threatened termination of the agreement was for "good cause"; and whether Harley-Davidson's threatened termination was pretextual. All of these are the sort of issues considered in traditional contract actions.

Cycle-Craft's right to a jury trial is especially clear because its Chapter 93B claim is brought under Section 5 of that statute. Section 5 deals exclusively with contracts, as opposed to other, less traditionally common-law (and less contract-based) aspects of Chapter 93B that concern, for example, coercing dealers into making unwanted purchases, or relocating a dealer into another dealer's territory. *See* Mass G.L. c. 93B § 4(b)(1) (unwanted purchases); § 6(a)(2) (relocating dealers). Even if some other actions arising under Chapter 93B might present different "issues to be tried," and the right to a jury trial might be less clear, Cycle-Craft's complaint here raises issues that are unambiguously similar to those in common-law contract cases.[3]

---

[2]   Cycle-Craft timely filed a motion to amend its complaint on October 29, 2004. No opposition has been filed.

[3]   Different sections of the same enactment can legitimately differ on the Seventh Amendment question: for instance, cases have held that there is no jury right on claims under § 271(e) of the Waxman-Hatch Act, but that there can be a jury right on claims under § 271(a) of that same act. *Sanofi-Synthelabo v. Apotex Inc.*, 2002 WL 1917871 (S.D.N.Y. 2002) (collecting cases).

In sum, under the authority of *Acushnet, Gallagher,* and *Ross*, *supra*, the "nature of the issue to be tried" here is largely contractual. The holding of those cases is that a court should look beyond the "label" of the action—here, that it is "a 93B claim"—and recognize what issues are actually in play. That analysis reveals the significant common-law, contract-based aspects of Cycle-Craft's case. As such, Cycle-Craft has a Seventh Amendment right to have a jury hear its case.

### B. *Claims Based on the Federal Statutory Counterpart to Chapter 93B Carry a Right to a Jury*

Since "[t]he Seventh Amendment question depends on the nature of the issue to be tried," it is powerful evidence for the existence of a jury right here that a jury right has been found in claims under the federal counterpart to Chapter 93B, the Automobile Dealer's Day in Court Act, 15 U.S.C. §§1221 et seq. ("ADDCA").[4] Like Chapter 93B, the ADDCA does not explicitly grant a jury right. But numerous courts have nonetheless held that claims under the ADDCA are properly put to a jury. Less than a month ago, the First Circuit reiterated that "[i]n *Rohlsen* [an ADDCA case], we held that the distributor's termination of a dealer's franchise related to the conduct of a dealer's agency. . .was a jury question," *George Lussier Enters., Inc. v. Subaru of New England*, 2004 WL 2913675, *6 (1st Cir. Dec. 16, 2004). Other courts agree: "[T]he question of whether or not International's actions vis-à-vis James Artman constitute bad faith coercion within the meaning of the Automobile Dealers' Day in Court Act. . .should be presented to a jury," *Artman v. International Harvester Co.*, 355 F.Supp. 482, 490 (W.D.Pa 1973); "[W]e can see no basis for confining the jury to a more limited role in the fact-finding process in suits

---

4   The equivalency of Chapter 93B and the ADDCA is not in doubt: "Chapter 93B of the Massachusetts General Laws is the state law counterpart of the ADDCA." *General GMC, Inc., v. Volvo White Truck Corp.*, 918 F.2d 306, 308 (1st Cir. 1990); *George Lussier Enters., Inc. v. Subaru of New England*, 2004 WL 2913675, *7 & n6, *8 (1st Cir. Dec. 16, 2004) (Chapter 93A is "statutory counterpart" to ADDCA.)

under the [ADDCA] than in other cases," *Autowest, Inc. v. Peugeot, Inc.*, 434 F.2d 556, 563 (2d Cir. 1970).

Thus, ADDCA claims—which concern improper conduct by motor vehicle manufacturers—are routinely placed before juries (and those juries' determinations have been upheld by federal appellate courts.) In other words, "the nature of the issue to be tried" in an ADDCA claim is of the type properly tried before a jury. And since the nature of the issues to be tried in ADDCA and Chapter 93B cases are similar, if not identical, then by the same token, Chapter 93B claims are properly tried before a jury.

**C.   *Harley-Davidson Relies on Non-Controlling or "Wholly Irrelevant" State Law Cases***

   1. <u>None of the Cases Cited by Harley-Davidson Governs Whether Cycle-Craft Has A Jury Right In This Case</u>

Contrary to Harley-Davidson's arguments, no precedent governs this Court as to whether Cycle-Craft has a Seventh Amendment jury right in a Chapter 93B claim for contract termination. Harley-Davidson argues that the issue was decided by *Wallace Motor Sales Inc. v. American Motors Sales Corp.*, 780 F.2d 1049 (1st Cir. 1985). But Harley-Davidson omits a key fact: that the parties in *Wallace* had previously <u>agreed</u> among themselves that a jury should not decide the claim. *Id.* at 1052 n.1, 1064. This is no minor matter—the First Circuit emphasized the point twice—and therefore the case provides no legitimate precedential basis on the issue. Rather, *Wallace*'s Seventh Amendment analysis concerned the different question of whether "the district court violated Wallace's seventh amendment right to a jury trial by deciding the chapter 93A and B claims contrary to the finding of the jury on the issues submitted to it." *Id*. at 1064. Of course, Cycle-Craft does not make the same waiver made by the parties in *Wallace*.

Harley-Davidson also notes that this Court, in *Gallo Motor Center Corp. v. Mazda Motor of America, Inc.*, 172 F.Supp.2d 292, 295 (D. Mass. 2001), stated that "Gallo is not entitled to a

6

jury trial under [93B]." But, as in *Wallace*, the issue did not appear to have been in controversy between the parties—indeed, *Gallo* referred to certain issues as being "jury-<u>waived</u>," apparently referring to Chapter 93B. *Id.* at 296 (emphasis added).[5] More significantly, the particular section of Chapter 93B at issue in *Gallo* is different from the section at issue in this case. *Gallo* arose under Section 4(3)(*l*) of the pre-2002 version of Chapter 93B, which concerned "manufacturers' ability to open new franchises in territory already served by dealers." *Id.* at 294. This case, on the other hand, concerns contract termination, and arises under what would have been Section 4(3)(e) of the pre-2002 Chapter 93B.[6] In short, the nature of the issue to be tried in *Gallo*, even though brought under the same general statute, was much more "equitable" in nature than Cycle-Craft's claim, which raises classic contract issues.

      2.    <u>*Nei v. Burley*, the SJC Case upon Which Harley-Davidson Heavily Relies, Concerns A Different Statute, Is Irrelevant In A Federal Action, and Is Misread By Harley-Davidson</u>

Although Harley-Davidson relies heavily on *Nei v. Burley*, 388 Mass. 307 (1983), Def. Mem. at 3, that case does not advance its argument. *Nei* stands only for the proposition that, in a Massachusetts state court, a Chapter 93A claimant is not entitled to a jury. It is inapt here for three reasons.

First, the right to a jury trial in a federal case is a matter of federal law, not state law, even where the claims are based on state law. *Simler v. Conner*, 372 U.S. 221, 222 (1963). A leading commentator has gone so far as to describe state law as "wholly irrelevant" in this context. 9 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2303

---

[5] In a subsequent Chapter 93B case heard by this Court and upheld by the First Circuit, the First Circuit also referred to the trial as having been "jury-<u>waived</u>." *Coady Corp. v. Toyota Motor Distributors, Inc.*, 361 F.3d 50, 54 (1st Cir. 2004) (emphasis added.)

[6] In fact, the 2002 amendments, which govern this case, put an even greater separation between Cycle-Craft's cause of action and Gallo's, since Cycle-Craft brings its action under Section 5, while Gallo's cause of action

(2d ed. 1995). Contrary to Harley-Davidson's argument, the question here is not whether the reasoning of *Nei* extends to Chapter 93B claims but whether, as a matter of federal law, "the nature of the issues to be tried" are legal or equitable. *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970) ("the Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.") *Nei* has not been expansively construed by Massachusetts state courts, moreover, and it is far from clear that even Massachusetts courts would view it as dispositive in the context of Chapter 93B. *See Dalis v. Buyer Advertising, Inc.*, 418 Mass. 220 (1994) (refusing to expand the holding of *Nei* to statutory sex discrimination claims.)

Second, the case at bar is about Chapter 93<u>B</u>, not 93<u>A</u>, and the statutes have important differences. Chapter 93A is intended to protect consumers: indeed, its full title states that it is "For Consumers['] Protection." Conversely, Chapter 93B's full title speaks only to <u>business</u> relationships "between" manufacturers, distributors and dealers. In *Nei*, the Supreme Judicial Court relied strongly on "the equitable nature of consumer actions," *Nei* at 314, in finding no right to a jury under Chapter 93A. But 93B has little to do with protecting consumers. The Court should not equate Chapters 93A and B merely due to their proximity in the General Laws: Title XV, under which the two statutes appear, deals with the broad subject of "Regulation of Trade," and indeed Chapter 93D, just two entries down, concerns the disparate issue of regulating billboards near highways.

Finally, *Nei*'s analysis of the term "the court" as it is used in Chapter 93A has no bearing on interpreting Chapter 93B, and cannot be taken, as Harley-Davidson proposes, to suggest that juries are disfavored in Chapter 93B claims. In particular, Harley-Davidson's reliance on the

---

would now be found separately in Section 6. As discussed above, Section 5 of the current Chapter 93B deals with contractual issues.

8

references to "the court" in Section 5(g) is misguided. Harley-Davidson fails to make clear that Section 5(g) addresses the possibility of preliminary injunctive relief in claims under Section 5. *See* Mass. G.L. c. 93B, § 5(g) ("The court shall have authority. . .to enjoin the effective date of the termination . . . <u>pending a determination by the trial court of the issues raised by a complaint</u> filed pursuant to subsection (f).") (emphasis added). But preliminary injunctions, of course, are always heard and determined by "the court," even where the right to a jury trial on the merits is unambiguous.

In any event, however the term "the court" may have been used in Chapter 93A, the term has a purely jurisdictional meaning in Chapter 93B—particularly under the 2002 amendments to Chapter 93B that govern this case. The first reference to the term "the court" in Chapter 93B is in Section 2, a long-arm provision stating that parties engaging in purposeful in-state contacts concerning motor vehicles "shall be subject to this chapter and shall be subject to the jurisdiction of *the courts* of the commonwealth." (emphasis added). That phrasing is entirely in line with jurisdictional concepts. No drafter would have written that a party would be subject to "the juries of the commonwealth," and so no anti-jury message can be taken from it. Later references to "the court" are best understood as a shorthand that refers merely to a state or a federal court, as applicable. Section 5(4)(f) verbosely establishes that Chapter 93B complaints may be brought in both state and federal courts: "in the superior court, or if applicable in the federal district court for the district of Massachusetts." In order to avoid repeating that wordy turn of phrase, other parts of the Chapter—including the very next subsection—simply speak of "the court," apparently as a cipher for the appropriate forum (i.e. superior or district court). That shorthand says nothing about the appropriateness of a jury, and should not be read as such.

## II. Even if Cycle-Craft Has No *Right* To A Jury On Its Chapter 93B Claim, This Court Can and Should Submit The Claim To A Jury

Even if Cycle-Craft is not entitled to a jury trial on its Chapter 93B claim as a matter of right, this Court has the broad discretion to submit the Chapter 93B claim to a jury, either for a binding or an advisory determination—and the circumstances strongly favor this Court's exercise of that discretion. The authority to do so is settled as a matter of federal law. A court may submit a case to a jury even where there is no Seventh Amendment requirement to do so:

> We do not rest our decision to grant a jury trial in this case on the plaintiffs' constitutional rights.
>
> We base our decision to award a jury trial in this case on our discretion as a Court of equity to submit any questions of fact to a jury. There is no principle of law, nor any constitutional guarantee, which requires us to try an issue without a jury.
>
> *Taxin v. Food Fair Stores, Inc.*, 24 F.R.D. 457, 459-460 (E.D.Pa. 1959)

*See also* Fed. R. Civ. P. 39(c) (permitting advisory jury in all actions not triable of right by a jury.)

Harley-Davidson, which tries to liken this Chapter 93B case to a Chapter 93A action, cannot object to delegating the case to a jury, since Chapter 93A cases are routinely submitted to juries in federal cases (and those submissions have been upheld by the First Circuit). As examples, Chapter 93A claims were submitted to the jury in *Gerli v. G.K. Hall & Co.,* 851 F.2d 452, 453 (1st Cir. 1988); *Star Financial Services, Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 8 (1st Cir 1996); *Computer Systems Engineering, Inc. v. Qantel Corp.*, 571 F.Supp. 1365, 1372-1373 (D.Mass. 1983), affd. 740 F.2d 59 (1st Cir. 1984); and *Val Leasing, Inc. v. Hutson,* 674 F.Supp. 53, 54 (D.Mass. 1987).

Not only <u>can</u> this Court submit Cycle-Craft's 93B claim to a binding or advisory jury determination, it <u>should</u> in the circumstances of this case, in the interests of efficiency and

10

safeguarding judicial resources. It is a fundamental principle that Cycle-Craft is entitled to a jury trial on any overlapping issues between its legal claims and any claim this Court finds to be equitable. *Curtis v. Loether*, 415 U.S. 189, 196 n. 11 (1974). It is equally fundamental that a jury must decide the legal claims before the Court considers any equitable ones. *Beacon Theatres Inc. v. Westover*, 359 U.S. 500, 510-11 (1959). The evidence that will be presented to the jury on the breach-of-contract and implied-covenant counts will likely be, in all respects, the same as the evidence presented on the Chapter 93B claim. Since the jury would be hearing all of the evidence relating to all three claims, and since the issues in the three claims are so similar, it makes perfect sense for the jury to decide all the claims. Furthermore, permitting the jury to decide the three claims virtually precludes the potential complexities that would arise in the event of inconsistent findings between judge and jury.[7]

## **CONCLUSION**

The Seventh Amendment grants Cycle-Craft a jury right on its Chapter 93B claim—and a binding or advisory jury is highly appropriate for this case in any event. This Court should deny Harley-Davidson's motion to strike Cycle-Craft's jury demand.

---

[7] Harley-Davidson admits (and Cycle-Craft agrees) that, even if this Court finds no right to a jury under Cycle-Craft's Chapter 93B claim, Cycle-Craft still has the right to have a jury hear all issues common to the Chapter 93B claim on the one hand and the breach-of-contract and implied-covenant claims on the other. Def. Mem. at 4. But Harley-Davidson then cites *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003), apparently to provide an example of a situation where an equitable and legal claim did not have common issues. Not only is the factual basis of that case entirely different than the facts of this case—making the comparison not useful—but the passage cited by Harley-Davidson from *Bogosian* concerns an entirely different issue: whether a jury waiver on one claim may be avoided if it has issues in common with other claims where the jury has not been waived. *Id*. at 61.

> Respectfully submitted,
>
> **CYCLE-CRAFT CO., INC.**
>
> By its attorneys,
>
> /s/ Angela Buchanan Smagula
> James C. Rehnquist (BBO# 552602)
> Angela Buchanan Smagula (BBO# 643764)
> GOODWIN PROCTER LLP
> Exchange Place
> Boston, MA 02109
> (617) 570-1000

Dated: January 10, 2004

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing has been forwarded this day, December 17, 2004, by hand to Sabita Singh, Esquire, Bingham McCutchen, LLP, 150 Federal Street, Boston, MA 02110-1726, counsel for the Defendants.

> /s/ Angela Buchanan Smagula
> Angela Buchanan Smagula

12

LIBA/1440184.5