UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
CYCLE-CRAFT CO., INC.                        )
d/b/a BOSTON HARLEY-DAVIDSON/BUELL,    )
                                                )
                Plaintiff,      )
                                                )
v.                                                )  CIVIL ACTION
                                                )  NO. 04 11402 NMG
HARLEY-DAVIDSON MOTOR COMPANY, INC.)
and BUELL DISTRIBUTION COMPANY, LLC,  )
                                                )
                Defendants.  )
_____)

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO STRIKE JURY DEMAND**

       Defendant Harley-Davidson Motor Company, Inc. and Buell Distribution Company, LLC (collectively "Harley-Davidson") submit this Reply to the Opposition of Plaintiff Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") to Harley-Davidson's Motion to Strike Jury Demand.

**I.    FIRST CIRCUIT PRECEDENT HOLDS THAT THERE IS NO RIGHT TO A JURY TRIAL IN CASES UNDER G.L. C. 93B.**

       The First Circuit in *Wallace Motor Sales Inc. v. American Motor Sales Corp.*, 780 F.2d 1049 (1st Cir. 1985) and this Court in *Gallo Motor Center Corp. v. Mazda Motor of America, Inc.*, 172 F.Supp.2d 292 (D. Mass. 2001) held that there is no right to a jury trial in G.L. c. 93B cases. In its Opposition, despite this clear precedent, Cycle-Craft argues that the parties in these cases "appeared" to have waived their right to a jury trial and therefore the precise question of the parties' right to jury trial was never decided. Opposition at 1-2, 6-7. Contrary to Cycle-Craft's suggestion, there was no waiver.

       In *Wallace*, the parties at trial agreed that, as with G.L. c. 93A cases, there was no right to a jury trial in G.L. c. 93B cases. On appeal, the jury trial issue was squarely raised: "The question is whether the district court violated Wallace Motor's seventh amendment

right to a jury trial by deciding the chapter 93A and B claims contrary to the findings of the jury on the issues submitted to it." *Wallace, supra*, at 1064. Although Cycle-Craft suggests that this is a different question from whether there is a right to a jury trial under 93B, the court did analyze the seventh amendment issue and did determine that there was no such right. After reviewing the language of both G.L. c. 93A and G.L. c. 93B, the court stated: "we believe that the reasoning employed by the Massachusetts Supreme Judicial Court in *Nei* is determinative of the seventh amendment issue." *Id.* at 1064. The court went on to emphasize this point: "There being no right to a jury trial under chapter 93A and B, it was for [the trial judge] to decide *both* whether the statute had been violated *and* what kind of relief was warranted." (emphasis in original) (*Id.* at 1066); "whether the chapter 93A and B claims had been proven was for the trial judge" (*Id.* at 1067); "We hold that joining the Massachusetts 93A and B claims with the jury claims did not convert them into 'suits at common law' entitled to a jury trial under the seventh amendment" (*Id.*).

Likewise, in *Gallo*, the court clearly determined that "Gallo is not entitled to a jury trial under M.G.L. c. 93B, § 4." 172 F.Supp.2d at 295. Additionally, the court emphasized that "Gallo may assert its right to a jury trial only with respect to its common law claims of unfair competition and intentional interference." *Id*. Nevertheless, Cycle-Craft argues that the court's mention of "jury-waived" issues indicates that the parties had waived a jury as to their 93B claim. Opposition at 7. Yet, the case is silent as to which, if any, claims may have been jury-waived (or whether the term "jury-waived" was used as a short-hand reference to claims to be tried to the court). Given the court's language explicitly prohibiting a jury trial on the 93B claim, Cycle-Craft's assumption as to waiver cannot be sustained.

Cycle-Craft attempts to further distinguish *Gallo* by arguing that a jury may have been available there because the 93B claim arose under former § 4(3)(l), which Cycle-Craft characterizes as "more 'equitable' in nature" than current § 5, under which Cycle-Craft brings this action. Opposition at 7. Former § 4(3)(l) dealt with a manufacturer's ability to

-2-

open a new dealership in a relevant market area and prevented the appointment of a new dealer if the same was determined to be arbitrary. Under former § 4(3)(l), the court determined whether the appointment of a new dealer in a relevant market area was arbitrary by considering "all pertinent circumstances" including eight enumerated factors. Current § 5 deals with a manufacturer's ability to terminate a dealership and prevents termination if the same is not supported by good cause. Under current § 5, the court determines whether the termination is supported by good cause by considering "all pertinent circumstances" including seven enumerated factors. There is little to distinguish the two sections, let alone to characterize one as "equitable" and therefore denying a jury and the other as "legal" and therefore allowing a jury.

Plaintiffs have failed to distinguish *Wallace* and *Gallo*. They should be accepted precedent for the proposition that there is no right to a jury trial in cases under G.L. c. 93B.[1]

## II. CHAPTER 93B PROVIDES AN EQUITABLE REMEDY THAT WAS NOT AVAILABLE AT COMMON LAW AND THEREFORE ENTAILS NO RIGHT TO JURY TRIAL.

Cycle-Craft contends that a claim under G.L. c. 93B, § 5 is contract-based and therefore should be considered a legal claim for which a right to jury is provided. Opposition at 2-5. Aside from the fact that a contract ordinarily exists between a manufacturer and a dealer, there is no support for the proposition that a wrongful

---

[1] Cycle-Craft also argues that the federal counterpart to 93B, the ADDCA, 15 U.S.C., §§ 1221, *et seq.*, provides a right to a jury trial as support for its claim that 93B should also provide such a right. Opposition at 5-6. Yet, none of the cases cited by Cycle-Craft provides any analysis of the right to a jury trial under the ADDCA. Any difference between the jury trial right under the ADDCA and 93B may be explained by the differences between the two statutes. The main provision of the ADDCA focuses on a dealer's right to bring suit and recover damages in federal court, *see* 15 U.S.C., § 1222, while the main provisions of 93B focus on a dealer's right to obtain injunctive relief against a manufacturer's actions. *See* G.L. c. 93B, §§ 5-6. Thus, the ADDCA is more concerned with providing a convenient federal forum within which dealers may bring suit, while 93B is more concerned with providing dealers with equitable relief. In any event, the cases cited by Cycle-Craft do not establish that a jury trial is available under the ADDCA. Even if they did, Cycle-Craft has brought this action under 93B, which the federal courts in *Wallace* and *Gallo* have specifically ruled does not entail a right to jury trial.

termination claim under § 5 is "contract-based." A 93B violation may be found without any breach of contract; conversely, a breach of contract may be found without any violation of 93B. A § 5 claim turns on "good cause" and "bath faith," concepts defined entirely outside of the contractual relationship. Section 5 directs that all pertinent factors be considered when determining whether good cause exists, sets forth specific equitable factors to be considered and provides for an expedited trial. Under § 5, the focus is not on damages but on equitable relief - enjoining the termination of a dealership if good cause is not present. Indeed, Cycle-Craft brought this action under 93B, § 5, requesting an injunction to prevent termination, and without claiming damages.

Although Cycle-Craft acknowledges that state law first must be reviewed to determine the elements of the cause of action and the propriety of the remedies sought (Opposition at 2), it dismisses the leading state case in the area - *Nei v. Burley*, 388 Mass. 307 (1983). Cycle-Craft contends that *Nei* is "wholly irrelevant" because it discusses G.L. c. 93A, rather than G.L. c. 93B. Opposition at 6. Contrary to Cycle-Craft's argument, *Nei* is highly instructive.[2]

In *Nei*, the court held that there is no right to jury trial in cases under 93A, prohibiting unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce. *Nei, supra*, at 315. There, the court noted that the statutory words "unfair methods of competition" and "unfair or deceptive acts or practices" used in 93A were not limited by traditional tort and contract requirements. *Id.* at 312-313. Though the terms were undefined in the statute, 93A provided that interpretation of these terms were

---

[2] Cycle-Craft also contends that *Nei* is irrelevant because federal law governs the issue of whether the nature of the issues to be tried is legal or equitable. Opposition at 8. Cycle-Craft chooses, however, to disregard the federal authority which relied on the analysis in *Nei* to support its own determination that 93B is an equitable claim with no right to a jury. *See Wallace Motor Sales Inc. v. American Motor Sales Corp.*, 780 F.2d at 1064 ("reasoning employed by the Massachusetts Supreme Judicial Court in *Nei* is determinative of the seventh amendment issue").

to be guided by Federal Trade Commission Act. *Id.* at 313. Additionally, the Attorney General was empowered to make interpretive rules and regulations. Against this backdrop, the court stated: "This flexible set of guidelines as to what should be considered lawful or unlawful under c. 93A suggests that the Legislature intended the terms . . . to grow and change with the times. Thus, although certain consumer violations are perhaps rooted in common law claims, the Legislature left the terms sufficiently open-ended to embrace causes of action for which there are no common law analogues."[3] *Id.* As a consequence, the court stated that 93A "created new substantive rights in which conduct heretofore lawful under common and statutory law is now unlawful," and held that there was no right to jury trial.[4]

The analogy to 93B is clear. Chapter 93B also prohibits "[u]nfair methods of competition" and "unfair or deceptive acts or practices" in the context of business practices between motor vehicle manufacturers, distributors and dealers. G.L. c. 93B, § 3(a). It also leaves the terms undefined but provides for guidance from the Federal Trade Commission Act and for the Attorney General to make interpretive rules and regulations. G.L. c. 93B,

---

[3] Cycle-Craft contends that the key difference between 93A and 93B is that 93A is a consumer protection statute while 93B is a business regulation statute. Opposition at 8. Cycle-Craft argues that consumer actions are equitable in nature while business regulation is not. *Id.* In fact, 93A is both a consumer protection statute and a business regulation statute. *See* G.L. c. 93A, titled "Regulation of Business Practices for Consumers Protection." *See also* G.L. c. 93A, § 11 (prohibiting unfair methods of competition and unfair trade practices among businesses). Likewise, the courts have viewed 93B as a consumer protection statute as well. *See American Honda Motor Co., Inc. v. Bernardi's, Inc.*, 432 Mass. 425, 433 (2000) (93B serves to protect public, striking balance between existing dealers' interests and public's interests); *Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 319 (1978) (noting that 93B "must in the end also affect consumers").

[4] The *Nei* court also observed that 93A's multiple references to "the court" and "if the court finds" indicated that a trial by court was contemplated, rather than a trial by jury. *Nei, supra*, at 312. Cycle-Craft contends that these same references in 93B cannot be taken in the same way. Opposition at 9. Cycle-Craft argues that references to "the court" in § 5 of G.L. c. 93B are in the context of actions that only a court takes, i.e., granting injunctions. *Id.* Yet, this is a recognition that § 5 is more equitable in nature and therefore supports Harley-Davidson's position.

§§ 1, 3(b)&(c). Thus, the Legislature "left the terms sufficiently open-ended to embrace causes of action for which there are no common law analogues." *Nei, supra*, at 313. Indeed, it is well established that 93B was enacted in order to provide new substantive rights to motor vehicle dealers who were thought to be in need of special protections. *See Deere & Co. v. Ford*, 434 Mass. 223, 230-231 (2001) (discussing purpose and history of 93B). *See also Beard Motors, Inc. v. Toyota Motor Distributors, Inc.*, 395 Mass. 428, 433 (1985) (93B intended to protect motor vehicle franchises and dealers from type of injury to which they had been susceptible by virtue of inequality of bargaining power); *Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 321 (1978) (93B protects dealers from inequitable consequences of overweening economic power wielded by manufacturers).

There can be no question that 93B, § 5, which was intended to provide remedies over and above those available at common law, which focuses on a dealer's ability to obtain injunctive relief from a manufacturer's actions, which mandates an expedited trial and the consideration of equitable factors bearing on "good cause" and "bad faith," is primarily equitable in nature and therefore provides no right to a jury trial.

## CONCLUSION

For the foregoing additional reasons, Harley-Davidson respectfully requests this Court to allow its Motion to Strike Jury Demand.

**HARLEY-DAVIDSON MOTOR COMPANY, INC., and BUELL DISTRIBUTION COMPANY, LLC**

By their attorneys,

/s/ Sabita Singh
_____
William N. Berkowitz, BBO# 544148
Sabita Singh, BBO# 560146
William F. Benson, BBO# 646808
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA  02110
Ph (617) 951-8000
Fx (617) 951-8736

-6-