UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CYCLE-CRAFT CO., INC.<br>d/b/a BOSTON HARLEY-DAVIDSON/BUELL,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY, INC.<br>and BUELL DISTRIBUTION COMPANY, LLC,<br><br>　　　　　　　　　　　Defendants. | CIVIL ACTION<br>NO. 04 11402 NMG |

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, defendants, Harley-Davidson Motor Company, Inc. and Buell Distribution Company (collectively, "Harley-Davidson"), submit this Statement of Undisputed Facts in support of their motion for Summary Judgment.[1]

## UNDISPUTED FACTS

### I.    The Parties

1.      Harley-Davidson Motor Company, Inc. is a corporation organized under the laws of the state of Wisconsin, with a principal place of business in Milwaukee, Wisconsin.  Buell Distribution Co., LLC is a limited liability company organized under the laws of the state of Wisconsin, with a principal place of business in Milwaukee, Wisconsin.  Amended Complaint, ¶5.

---

[1] For purposes of this motion for summary judgment, Harley-Davidson asserts that the following facts are undisputed.

2.      Harley-Davidson, together with its affiliate, Buell Distribution Corporation (collectively hereinafter, "Harley-Davidson"), manufactures and distributes Harley-Davidson motorcycles, parts and accessories to retail customers through a network of independent dealers located throughout the United States.  Affidavit of Steven Verduyn ("Verduyn Aff."), ¶3, submitted herewith.  The relationship between Harley-Davidson and its independent dealers is governed by the terms of the Harley-Davidson Motor Company Motorcycle Dealer Contract entered into by the respective parties.  *Id.*

3.      Plaintiff Cycle-Craft Co., Inc. d/b/a Boston-Harley-Davidson Buell ("Cycle-Craft") is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business in Everett, Massachusetts.  Cycle-Craft is in the business of selling and servicing Harley-Davidson motorcycles.  Amended Complaint, ¶4.

## II.      Dealer Agreement Between Harley-Davidson and Cycle-Craft

4.      The relationship between Harley-Davidson and its independent dealers is governed by the terms of the Harley-Davidson Motor Company Motorcycle Dealer Contract entered into by the respective parties.  Verduyn Aff. ¶3.  As discussed below, under the terms of this contract, a dealer becomes authorized to purchase new Harley-Davidson motorcycles and to resell them to retail (i.e., end-user) customers; however, sales to persons other than retail customers (e.g., wholesalers, brokers, unauthorized bike shops) are expressly prohibited.  *Id.*

5.      On or about September 19, 2000, Harley-Davidson and the plaintiff entered into a Harley-Davidson Motor Company Motorcycle Dealer Contract (the "Dealer Agreement").  A true copy of the Dealer Agreement is included in the Appendix ("App.") filed in support hereof at Tab A.  *See* Deposition of John Atwood., p. 19 (hereinafter, "Atwood Dep."), App. Tab B.[2] *See also* Verduyn Aff., ¶3.  Pursuant to the Dealer Agreement, Cycle-Craft agreed, among other things, (i) "to Tell the Truth" (ii) not to sell Harley-Davidson products, including new

---

[2] Excerpts from the deposition of John Atwood are included in the Appendix filed in support hereof at Tab B.

motorcycles, to non-retail customers, (iii) to complete and return a sales and warranty registration form for every new Harley-Davidson Motorcycle it sold, and (iv) that each of these responsibilities under the Dealer Agreement was reasonable, proper, and fundamental to the purpose of the Dealer Agreement. *Id.*; Dealer Agreement, Sections A, B(6), F(7), P(6); App. Tab A.

6.     In or about June 2002, Harley-Davidson and Cycle-Craft entered into an extension to the Dealer Agreement. Atwood Dep., pp. 20-22, App. Tab B.   A true copy of the extension is included in the Appendix filed in support hereof at Tab C.

7.     The Dealer Agreement provides, among other things, that "Dealer [Cycle-Craft] shall not sell Harley-Davidson Products for resale to non-retail customers other than United States authorized Harley-Davidson dealers.   Seller [Harley-Davidson] reserves the right to establish from time to time such policies and position statements it believes are necessary or advisable to carry out the purpose or intent of this part of this Contract." Dealer Agreement, Standard Provisions, Section 6, App. Tab A.   See also Declaration of John F. Atwood, ¶30 ("Atwood Decl."), App. Tab D.[3]

8.     Harley-Davidson may terminate the Dealer Agreement if a dealer submits "any application, claim, report, record or other information which is fraudulent or contains material misrepresentations."   Dealer Agreement, Standard Provisions, Section 4(b), App. Tab A. Harley-Davidson may also terminate the Dealer Agreement if a dealer breaches, violates or fails to fulfill any of its responsibilities under the contract. *Id.,* Section 6(f), App. Tab A.

9.     Further, the Dealer Agreement provides that "[i]f Dealer has entered into a dealer agreement with Buell Distribution Corporation ('Buell Agreement'), Dealer hereby agrees that the Buell Agreement shall, at the option of Buell Distribution Corporation terminate

---

[3] A copy of the Declaration of John F. Atwood (without exhibits) is included in the Appendix filed in support hereof at Tab D.

3

automatically and without further notice upon termination of this [Harley-Davidson] Contract for any reason." Dealer Agreement, Section M(4), App. Tab A.

## III.    Non-Retail Sales Policy

10.    For every year since the early 1990s, Harley-Davidson has issued annual policies describing its Non-Retail Sales Policy ("NRSP"). Verduyn Aff., ¶5. True copies of the NRSPs for the years 1998-2002 are attached to the Verduyn Aff. at Exhibit 2.

11.    For the 2003 Model Year (August 1, 2002 to July 31, 2003), Harley-Davidson issued a Motorcycle Non-Retail Sales Policy ("2003 NRSP"). Atwood Decl, ¶31, App. Tab D; Verduyn Aff., ¶5. A true copy of the 2003 NRSP is included in the Appendix at Tab E. Cycle-Craft received a copy of this policy through the mail. Atwood Dep., p. 27, App. Tab B.

12.    As set forth in the 2003 NRSP, the policy is designed to "ensure customer satisfaction and safety, facilitate compliance with federal and state law and laws in various foreign countries, maintain Harley-Davidson's competitive position and protect the integrity of Harley-Davidson's worldwide distribution network." App. Tab E. Among other things, by prohibiting Harley-Davidson dealers from selling motorcycles to resellers and by requiring dealers to submit the names and addresses of the retail customers to whom they sell motorcycles, our company can better (i) assure that consumers are receiving proper guidance, instructions and orientation with respect to the safe operation of our motorcycles; (ii) allocate and distribute our products to those geographic areas and dealers where they are most needed, and (iii) notify customers in case of a safety recall. Verduyn Aff., ¶6.

13.    The 2003 NRSP states that "[a]s provided in the Dealer Contract, dealers are prohibited from engaging in non-retail sales of motorcycles." App. Tab E. Further, "[a] sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a 'non-retail sale' for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer.

4

An 'ultimate consumer' is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, without the intent to resell, pays all applicable taxes and registration fees, and titles the vehicle in his or her own name." *Id. See also* Atwood Decl., ¶32, App. Tab D; Verduyn Aff., ¶7.

14.    Since the early 1990s, Cycle Craft was aware that Harley-Davidson had policies prohibiting dealers from selling motorcycles to persons intending to resell them. Atwood Dep., p. 32, App. Tab B. Cycle-Craft was also aware that it was only supposed to sell motorcycles to ultimate consumers. *Id.*, p. 42, App. Tab B.

15.    As set forth in the 2003 NRSP, Harley-Davidson reserves the right to terminate a dealer's Motorcycle Dealer Contract for failing to comply with this policy. App., Tab E.

**IV.    Submission of SWRs and Allocation of Motorcycles**

16.    To inform Harley-Davidson that a new motorcycle has been sold, Cycle-Craft submits an electronic Sales & Warranty Registration ("SWR") form to Harley-Davidson. Deposition of Ronald Buchbaum, pp. 169, 185 ("Buchbaum Dep."), App. Tab F;[4] Verduyn Aff., ¶8. The SWR advises Harley-Davidson whether the sale was made to a retail customer and provides Harley-Davidson with the Vehicle Identification Number for the motorcycle sold, the name of the customer, the customer's address and telephone number, a certification that the Harley-Davidson dealer that sold the motorcycle had delivered the motorcycle to the customer and that the warranty had been explained to the customer. Verduyn Aff., ¶8. Harley-Davidson requires that its dealers submit SWRs electronically within ten days of delivery to the customer to enable Harley-Davidson to comply with federal law and to ensure that the motorcycle is qualified for warranty coverage. *Id.*

---

[4] Excerpts from the deposition of Ronald Buchbaum are included in the Appendix filed in support hereof at Tab F.

17.     After the SWR is submitted to Harley-Davidson, the warranty period for that motorcycle starts for the customer who purchased the motorcycle. Buchbaum Dep., p. 170, App. Tab F; Atwood Dep., p. 71-72, App. Tab B; Verduyn Aff., ¶9. Cycle-Craft submits an SWR to Harley-Davidson only after the motorcycle is sold and delivered to the retail customer. Atwood Dep., p. 73, App. Tab B; Verduyn Aff., ¶9.

18.     Harley-Davidson's allocation of motorcycles to dealers for a given model year is based substantially upon the dealers' reported retail sales for the preceding model year. Verduyn Aff., ¶10. The model year ends on July 31 of each year. Declaration of Ronald Buchbaum, ¶3 ("Buchbaum Decl."), App. Tab G;[5] Any dealer inventory not sold by July 31 is deducted from the dealership's allocation in the following year. Buchbaum Decl., ¶3; Buchbaum Dep., pp. 183-184, App. Tab F; Verduyn Aff., ¶10.

19.     In recent years, including 2003 and 2004, the popularity of Harley-Davidson motorcycles has grown, and Harley-Davidson dealers have generally sought to maximize their factory allocation of new motorcycles by selling out of their allocation each model year. Verduyn Aff., ¶10. In addition, as is common in the motor vehicle industry, Harley-Davidson routinely administers dealer incentive programs which offer dealers cash payments based upon their reported retail sales. *Id.* However, as described above, sales must only be made to bona-fide retail consumers, as set forth in our dealer agreement and NRSP. *Id.*

20.     A reduction in allocation for Cycle-Craft would result in a reduction in sales and a reduction in profits for the dealership. Buchbaum Dep., pp. 184-185, App. Tab F. It was very important to Cycle-Craft to avoid having its allocation reduced. *Id.,* p. 185, App. Tab F.

21.     As of July 2003, Cycle-Craft had not sold all of its allocated bikes and there was a risk that its 2004 allocation would by reduced by Harley-Davidson. Buchbaum Decl., ¶3, App. Tab G; Buchbaum Dep., pp. 185-186, App. Tab F.

---

[5] A copy of the declaration of Ronald Buchbaum (without exhibits) is included in the Appendix filed in support hereof at Tab G.

## V.     Harley-Davidson's Inspection of Cycle-Craft's Sales Records

22.     On August 9, 2003, Harley-Davidson received an email from a dealer alerting us to certain new Harley-Davidson motorcycles being sold by a motorcycle shop (i.e., a non-Harley-Davidson dealer) in Lee, New Hampshire called Lee Custom Cycle. Verduyn Aff., ¶11. By tracing the Vehicle Identification Number ("VIN") for one of those vehicles, Harley-Davidson determined that the new motorcycle had been sold by Harley-Davidson to Cycle-Craft. *Id.* Based on this fact, and the fact that Cycle-Craft had reported a large number of retail sales at the very end of the 2003 Model Year, i.e., close to July 31, 2003, Harley-Davidson decided to exercise its contractual right to conduct an on-site inspection of certain of Cycle-Craft's sales records to determine whether the dealership was in compliance with the Dealer Agreement and the 2003 NRSP. *Id.* Harley-Davidson notified Cycle-Craft of the inspection by letter dated February 13, 2004. *Id.*

23.     On February 17 and 18, 2004, Harley-Davidson conducted an inspection of certain of Cycle-Craft's sales records. Verduyn Aff., ¶12; Atwood Decl., ¶39, App. Tab D. During this inspection, Harley-Davidson reviewed the SWRs and supporting documents for the new motorcycles that Cycle-Craft had reported as being sold during the 2002, 2003, and year-to-date 2004 model years. Verduyn Aff., ¶12.

## VI.     Cycle-Craft's Submission of False SWRs

### A.     Cycle-Craft Submits SWRs for Thirteen Sales That Were Never Made.

24.     On the last day of the 2003 Model Year, July 31, 2003, Cycle-Craft submitted SWRs to Harley-Davidson for thirteen individuals indicating that retail sales had been made to them by Cycle-Craft. Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶10. None of these thirteen individuals purchased the motorcycles from Cycle-Craft. Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶13.

7

25.    These thirteen motorcycles were eventually sold to other individuals after the close of the model year -- i.e., after July 31, 2003.  Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶14.

26.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number ("VIN") 1HD1FSW143Y638979 was sold to Jarred Buchbaum.  Declaration of Kenneth McPhee, ¶22 ("McPhee Decl."), App. Tab H;[6] Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶15.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 6.

27.    This motorcycle (VIN 1HD1FSW143Y638979) was, in fact, never sold by Cycle-Craft to Jarred Buchbaum, the son of Ronald Buchbaum, Cycle-Craft's general manager.  McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶15.

28.    This motorcycle (VIN 1HD1FSW143Y638979) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Edwin Velasquez.  McPhee Decl., ¶22, App. Tab H; Verduyn Aff., ¶15.  A true copy of Mr. Velasquez' application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 7.

29.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1BWB183Y107390 was sold to Cycle-Craft Sales Manager Michael Bloom.  McPhee Decl., ¶22, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶16.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 8.

30.    This motorcycle (VIN 1HD1BWB183Y107390) was, in fact, never sold by Cycle-Craft to Michael Bloom.  Deposition of Michael Bloom, p. 15 ("Bloom Dep."), App.

---

[6] A copy of the Declaration of Kenneth McPhee (without exhibits) is included in the Appendix filed in support hereof at Tab H.

Tab I;[7] McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶16.

31.    This motorcycle (VIN 1HD1BWB183Y107390) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Joann Stanwood. McPhee Decl., ¶22, App. Tab H; Verduyn Aff., ¶16. A true copy of Ms. Stanwood's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 9.

32.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HDBYB493Y097183 was sold to Roderick Granese. McPhee Decl., ¶22, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶17. A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 10.

33.    This motorcycle (VIN 1HDBYB493Y097183) was, in fact, never sold by Cycle-Craft to Roderick Granese. McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶17.

34.    This motorcycle (VIN 1HDBYB493Y097183) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Jason Blodgett. McPhee Decl., ¶22, App. Tab H; Verduyn Aff., ¶17. A true copy of Mr. Blodgett's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 11.

35.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1BSY123Y105487 was sold to Salvatore Giordano, a relative of Cycle-Craft employee Joe Giordano. McPhee Decl., ¶23, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶18. A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 12.

---

[7] Excerpts from the deposition of Michael Bloom are included in the Appendix filed in support hereof at Tab I.

36.    This motorcycle (VIN 1HD1BSY123Y105487) was, in fact, never sold by Cycle-Craft to Salvatore Giordano.  McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶18.

37.    This motorcycle (VIN 1HD1BSY123Y105487) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Michael Botelho.  McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶15.  A true copy of Mr. Botelho's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 13.

38.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1HAZ113K842917 was sold to Lissa Bloom, daughter of Michael Bloom (Cycle-Craft Sales Manager).  McPhee Decl., ¶23, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶19.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 14.

39.    This motorcycle (VIN 1HD1HAZ113K842917) was, in fact, never sold by Cycle-Craft to Lissa Bloom.  Bloom Dep., p. 15, App. Tab I; McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶19.

40.    This motorcycle (VIN 1HD1HAZ113K842917) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Jorge Orellana.  McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶19.  A true copy of Mr. Orellana's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 15.

41.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1BMY473Y085436 was sold to Matthew Bloom, son of Michael Bloom (Cycle-Craft Sales Manager).  McPhee Decl., ¶23, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶20.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 16.

10

42.    This motorcycle (VIN 1HD1BMY473Y085436) was, in fact, never sold by Cycle-Craft to Matthew Bloom.  Bloom Dep., pp. 15-16, App. Tab I; McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶20.

43.    This motorcycle (VIN 1HD1BMY473Y085436) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Mark Connelly.  McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶20.  A true copy of Mr. Connelly's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 17.

44.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1BJY183Y052286 was sold to Cycle-Craft employee Joseph Giordano.  McPhee Decl., ¶23, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶21.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 18.

45.    This motorcycle (VIN 1HD1BJY183Y052286) was, in fact, never sold by Cycle-Craft to Joseph Giordano.  McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶21.

46.    This motorcycle (VIN 1HD1BJY183Y052286) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Deborah Colleran.  McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶21.  A true copy of Ms. Colleran's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 19.

47.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1HAZ133K839405 was sold to Cycle-Craft's former Sales Manager Sean Walsh.  McPhee Decl., ¶23, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶22.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 20.

11

48.     This motorcycle (VIN 1HD1HAZ133K839405) was, in fact, never sold by Cycle-Craft to Sean Walsh.   Deposition of Sean Walsh, pp. 21-24 ("Walsh Dep."), App. Tab J;[8] McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶22.

49.     This motorcycle (VIN 1HD1HAZ133K839405) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Paul Kalinoski.   McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶22.  A true copy of Mr. Kalinoski's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 21.

50.     On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1FFW103Y638193 was sold to Cycle-Craft General Manager Ronald Buchbaum.  McPhee Decl., ¶23, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶23.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 22.

51.     This motorcycle (VIN 1HD1FFW103Y638193) was, in fact, never sold by Cycle-Craft to Ronald Buchbaum.  McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶23.

52.     This motorcycle (VIN 1HD1FFW103Y638193) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Robert Tindle. McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶23.   A true copy of Mr. Tindle's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 23.

53.     On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1BHY143Y099680 was sold to John Sica, a friend of Cycle-Craft employee Jamie McGrath.   McPhee Decl., ¶23, App. Tab H; Buchbaum Dep.,

---

[8] Excerpts from the deposition of Sean Walsh are included in the Appendix filed in support hereof at Tab J.

pp. 212-213, App. Tab F; Verduyn Aff., ¶24. A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 24.

54. This motorcycle (VIN 1HD1BHY143Y099680) was, in fact, never sold by Cycle-Craft to John Sica. Deposition of Jamie McGrath, p. 44 ("McGrath Dep."), App. Tab K;[9] McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶24.

55. This motorcycle (VIN 1HD1BHY143Y099680) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Robert Richards. McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶24. A true copy of the SWR submitted by Cycle-Craft to Harley-Davidson concerning the sale of this motorcycle to Mr. Richards is attached to the Verduyn Aff. at Exhibit 25.

56. On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1GDV443K314331 was sold to Daniel Sica. McPhee Decl., ¶23, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶25. A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 26.

57. This motorcycle (VIN 1HD1GDV443K314331) was, in fact, never sold by Cycle-Craft to Daniel Sica. McGrath Dep., p. 44, App. Tab K; McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶25.

58. This motorcycle (VIN 1HD1GDV443K314331) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Stephen Kenney. McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶25. A true copy of Mr. Kenney's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 27.

_____

[9] Excerpts from the deposition of Jamie McGrath are included in the Appendix filed in support hereof at Tab K.

59.     On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1HAZ403K842594 was sold to Cycle-Craft employee Jamie McGrath.  McPhee Decl., ¶23, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab; Verduyn Aff., ¶26.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 28.

60.     This motorcycle (VIN 1HD1HAZ403K842594) was, in fact, never sold by Cycle-Craft to Jamie McGrath.  McGrath Dep., p. 45, App. Tab K; McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶26.

61.     This motorcycle (VIN 1HD1HAZ403K842594) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Vincent Fiamma.  McPhee Decl., ¶23, App. Tab H; Verduyn Aff., ¶26.  A true copy of Mr. Fiamma's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 29.

62.     On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1HAZ133K848962 was sold to Elaine Bloom, wife of Michael Bloom (Cycle-Craft Sales Manager).  McPhee Decl., ¶24, App. Tab H; Buchbaum Dep., pp. 212-213, App. Tab F; Verduyn Aff., ¶27.  A true copy of the electronic SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 30.

63.     This motorcycle (VIN 1HD1HAZ133K848962) was, in fact, never sold by Cycle-Craft to Elaine Bloom.  Bloom Dep., p. 15, App. Tab I; McPhee Decl., ¶20, App. Tab H; Buchbaum Dep., p. 216, App. Tab F; Verduyn Aff., ¶27.

64.     This motorcycle (VIN 1HD1HAZ133K848962) was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Thomas Mulvey.  McPhee Decl., ¶24, App. Tab H; Verduyn Aff., ¶27.  A true copy of the invoice from Cycle-Craft to Mr. Mulvey for this motorcycle is attached to the Verduyn Aff. at Exhibit 31.

65.    Cycle-Craft's submission of SWRs to Harley-Davidson on July 31, 2003 for these thirteen individuals violated the Dealer Agreement and the NRSP.  Verduyn Aff., ¶28.  By submitting these SWRs for these thirteen individuals that did not purchase the motorcycles, Cycle-Craft obtained incentive payments from Harley-Davidson and increased allocation for the 2004 model year to which it was not entitled.  *Id.*

**B.    In Violation of the 2003 NRSP, Cycle-Craft Reported that Three Motorcycles Were Sold At Retail When They Remained in its Inventory**

66.    On July 31, 2003, Cycle-Craft submitted an SWR to Harley-Davidson indicating that it had sold a motorcycle (VIN 1HD1FCW463Y630589) at retail, when, in fact, this motorcycle was never sold by Cycle-Craft.  Deposition of Kenneth McPhee ("McPhee Dep."), pp. 113-115, App. Tab L;[10]  Verduyn Aff., ¶29.  This motorcycle is still owned by Cycle-Craft and was never sold to a retail buyer.  Atwood Dep., pp. 95-96, App. Tab B; Verduyn Aff., ¶29.  A true copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 32.

67.    On July 31, 2003, Cycle-Craft submitted an SWR to Harley-Davidson indicating that it had sold a motorcycle (VIN 1HD1PAC25YY951664) at retail, when, in fact, this motorcycle was never sold by Cycle-Craft.  McPhee Dep., pp. 113-115, App. Tab L; Verduyn Aff., ¶30.  This motorcycle is still owned by Cycle-Craft and was never sold to a retail buyer.  Atwood Dep., pp. 95-96, App. Tab B; Verduyn Aff., ¶30.  A true copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 33.

68.    On July 31, 2003, Cycle-Craft submitted an SWR to Harley-Davidson indicating that it had sold a motorcycle (VIN 1HD1CGP413K431340) at retail, when, in fact, this motorcycle was never sold by Cycle-Craft.  McPhee Dep., pp. 113-115, App. Tab L; Verduyn Aff., ¶31.  This motorcycle is still owned by Cycle-Craft and was never sold to a retail buyer.

---

[10] Excerpts from the deposition of Kenneth McPhee are included in the Appendix filed in support hereof at Tab L.

Atwood Dep., pp. 95-96, App. Tab B; Verduyn Aff., ¶31. A true copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 34.

69. Cycle-Craft's submission of SWRs to Harley-Davidson on July 31, 2003 for these three motorcycles violated the Dealer Agreement. Verduyn Aff., ¶32. By submitting SWRs to Harley-Davidson on July 31, 2003 for these three motorcycles that were not sold by Cycle-Craft to a retail buyer, Cycle-Craft obtained incentive payments from Harley-Davidson and increased allocation for the 2004 model year to which it was not entitled. *Id.*

**C.    In Violation of the Dealer Agreement and the 2003 NRSP, Cycle-Craft Sold Nineteen Motorcycles To DC Imports**

70. DC Imports was an entity that would import motor vehicles into the United States and resell them, primarily to motor vehicle dealers. Deposition of Debra Lunsford, pp. 13-14 ("Lunsford Dep."), App. Tab M.[11]

71. In July 2003, Sean Walsh, sales manager at Cycle-Craft, had conversations with Michael Stevens and Debra Lunsford of DC Imports concerning the sale of 19 motorcycles. Walsh Dep., pp. 43, 51, App. Tab J.

72. Sean Walsh was authorized by Cycle-Craft General Manager Ronald Buchbaum to make the deal with DC Imports. Buchbaum Dep., Vol. II., pp. 18-19, App. Tab F.

73. After an initial conversation with Mr. Stevens, Mr. Walsh received a fax from DC Imports indicating the 19 motorcycles that DC Imports wanted to purchase from Cycle-Craft. Walsh Dep., p. 40, App. Tab J. See also Exhibit 6 to the Walsh Dep., a copy of which is included in the Appendix filed in support hereof at Tab N. Mr. Walsh knew that Mr. Stevens was working for DC Imports and was not working for himself. Walsh Dep., p. 52, App. Tab J.

---

[11] Excerpts from the deposition of Debra Lunsford are included in the Appendix filed in support hereof at Tab M.

74.    During a conversation with Mr. Walsh, Ms. Lunsford advised Mr. Walsh that DC Imports planned to resell the 19 motorcycles to another dealer. Lunsford Dep., pp. 30-32, App. Tab M. Ms. Lunsford also advised Mr. Walsh that another Harley-Davidson dealer had provided DC Imports with a deposit for the 19 motorcycles that DC Imports wanted to purchase from Cycle-Craft. *Id.,* pp. 32-33, App. Tab M.

75.    Cycle-Craft's General Manager, Ron Buchbaum, approved the sale to DC Imports so long as Mr. Walsh received individual names for the motorcycles being sold. Buchbaum Dep., p. 254, App. Tab F. This was despite the fact that Mr. Buchbaum always knew that Harley did not want dealers selling motorcycles to people that were going to resell them. *Id.,* pp. 244-245, App. Tab F. Mr. Walsh informed Ms. Lunsford that the deal between Cycle-Craft and DC Imports had to be in 19 individual names. *Id.,* pp. 27-28, App. Tab M.

76.    DC Imports purchased 19 motorcycles from Cycle-Craft. Lunsford Dep., p. 114, App. Tab M. All of the money to purchase the 19 motorcycles came from DC Imports. Lunsford Dep., p. 51, App. Tab M. Sean Walsh, on behalf of Cycle-Craft, knew that DC Imports, and not the named individuals, would be providing the money for the 19 motorcycles. Walsh Dep, p. 57, App. Tab J.

77.    Ms. Lunsford took 19 names of DC Imports employees, as well as friends and relatives of employees to insert into deal documentation to make it appear as if those individuals were the actual buyers. Lunsford Dep., pp. 39, 96, App. Tab M.

78.    The 19 motorcycles were, in fact, not sold to retail customers at the Cycle-Craft dealership as required by the Dealer Agreement and the 2003 NRSP. Lunsford Dep., p. 118, App. Tab M.

79.    DC Imports contracted with a carrier to pick up the motorcycles at Cycle-Craft and deliver them back to DC Imports. Lunsford Dep., p. 118, App. Tab M.

LITDOCS/609183.2

80.    The 19 motorcycles were loaded onto a truck at the Cycle-Craft dealership. Buchbaum Dep., p. 259, App. Tab F.

81.    Cycle-Craft had DC Imports complete SWRs and return them to Cycle-Craft. Deposition of Michael Stevens, ("Stevens Dep."), pp. 39-40, 48, App. Tab N[12]  On or about July 30, 2003, Cycle-Craft then submitted the SWRs electronically to Harley-Davidson designating these sales as "retail."  Verduyn Aff., ¶33.  Copies of the SWRs submitted by Cycle-Craft to Harley-Davidson for these motorcycles are attached to the Verduyn Aff. at Exhibit 35.

82.    Cycle-Craft's submission of SWRs to Harley-Davidson on July 31, 2003 for these nineteen motorcycles violated the Dealer Agreement and the NRSP.  Verduyn Aff., ¶34.  The SWRs falsely reported the customer for these units as individuals rather than DC Imports, and falsely claimed the sales as retail sales.  *Id.*  By submitting falsified SWRs to Harley-Davidson for these nineteen motorcycles, Cycle-Craft obtained incentive payments from Harley-Davidson and increased allocation for the 2004 model year to which it was not entitled.  *Id.*

### 1.    Investigation By Florida Highway Patrol

83.    In August 2003, the Florida Highway Patrol investigated the sale of the 19 motorcycles from Cycle-Craft to DC Imports.  Walsh Dep., p. 71, App., Tab J; *See also* Declaration of David H. Brierton ("Brierton Decl.") and attached Offense Incident Report, which is included in the Appendix filed in support hereof at Tab O.

84.    The Florida Highway Patrol concluded that "[t]he records reflect that DC Imports applied for title in the name of 19 individuals who are friends and family of Mrs. Cooke [DC Imports principal] to make the purchases look like individual retail sales.  This was done to circumvent Harley-Davidson policy prohibiting dealer to dealer sales." *See* Brierton Decl., App. Tab O.

---

[12] Excerpts from the deposition of Michael Stevens are included in the Appendix filed in support hereof at Tab N.

**D.    In Violation of the Dealer Agreement and the 2003 NRSP, Cycle-Craft Sold Eight Motorcycles to Lee Custom Cycle**

85.    Lee Custom Cycle ("Lee") is a business that purchases new and used motorcycles and attempts to resell them for a profit. Deposition of Jeffrey Christensen, p. 11 ("Christensen Dep."), App. Tab P.[13] For some time, Lee had been a regular customer of Cycle-Craft for the purchase of used motorcycles. Deposition of Jason Marasca, p. 13 ("Marasca Dep."), App. Tab Q.[14]

86.    In 2003, Lee Custom Cycle purchased 8 new motorcycles from Cycle-Craft in 2003. Christensen dep., pp. 49-51, 57-58, App. Tab P; Marasca Dep., p. 11, App. Tab Q. All of the funds to purchase these motorcycles came from Lee Custom Cycle's bank accounts. Christensen Dep., p. 47-48, App. Tab P; Marasca Dep., p. 11, App. Tab Q. The 8 motorcycles were then transported to Lee Custom Cycle and were sold by Lee Custom Cycle to other individuals. Christensen Dep., p. 58, App. Tab P.

87.    In July 2003, Cycle-Craft salesperson Jason Marasca advised Jeff Christensen at Lee Custom Cycle that in order to sell new motorcycles to Lee Custom Cycle, he needed to provide eight individual names for the paperwork. Christensen Dep., pp. 65-66, App. Tab P; Marasca Dep., p. 16, App. Tab Q. Christensen gave Marasca names of Lee employees and friends to plug into the Cycle-Craft paperwork. Christensen Dep., pp. 41-42, App. Tab P; Marasca Dep., pp. 16-17, App. Tab Q. Jason Marasca, on behalf of Cycle-Craft, was aware that the 8 motorcycles were actually going to Lee Custom Cycle for resale to its customers. Christensen Dep., pp. 67, 72, App. Tab P; Marasca Dep., p. 25, App. Tab Q.

88.    Cycle-Craft submitted SWRs to Harley-Davidson indicating that these eight motorcycles were sold to a retail customer. However, these eight motorcycles, in fact, were not

---

[13] Excerpts from the deposition of Jeffrey Christensen are included in the Appendix filed in support hereof at Tab P.

[14] Excerpts from the deposition of Jason Marasca are included in the Appendix filed in support hereof at Tab Q.

sold to retail customers as defined by the 2003 NRSP. Verduyn Aff., ¶35. Copies of the SWRs submitted by Cycle-Craft to Harley-Davidson for these motorcycles are attached to the Verduyn Aff. at Exhibit 36.

89.     By submitting falsified SWRs to Harley-Davidson for these eight motorcycles, Cycle-Craft obtained incentive payments from Harley-Davidson and increased allocation to which it was not entitled. Verduyn Aff., ¶36.

## VII.    Harley-Davidson's Inspection of Records and Notice of Termination

90.     On April 20, 2004, Harley-Davidson sent a letter to Cycle-Craft informing them of the results of its inspection. Atwood Decl., ¶40, App. Tab D. A copy of Harley Davidson's April 20, 2004 letter is included in the Appendix at Tab R.

91.     On April 20, 2004, Harley-Davidson issued a Notice of Termination to Cycle-Craft based on Cycle-Craft's submission of false sales information to Harley-Davidson. Atwood Decl., ¶42, App. Tab D. A copy of Harley Davidson's April 20, 2004 letter is included in the Appendix at Tab S.

## VIII.   Harley-Davidson's Discovery of Additional False Sales By Cycle-Craft

92.     Based on discovery conducted in the course of this litigation, Harley-Davidson discovered that Cycle-Craft, on July 31, 2003, had submitted additional SWRs to Harley-Davidson for individuals that in fact had not made purchases from Cycle-Craft. Verduyn Aff., ¶39. Specifically, Cycle-Craft produced a dealership record entitled "July 2003 SWRs." *Id., See* Exhibit 39 attached to Verduyn Aff. That document listed all 16 of the falsely reported sales referenced above and in addition, however, listed another seven units that Harley-Davidson did not discover during its inspection of Cycle-Craft's records in February of 2004. *Id.* These seven units were also falsely reported as having been sold on July 31, 2003, when in fact they had not been sold as reported by Cycle-Craft. *Id.*

20

93.     On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1BMY153Y105320 was sold to Robert Misiano. Verduyn Aff., ¶40.  A copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 40.

94.     This motorcycle was, in fact, never sold by Cycle-Craft to Robert Misiano. Verduyn Aff., ¶40.

95.     This motorcycle was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer David Hamner.  Verduyn Aff., ¶40.  A copy of Mr. Hamner's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 41.

96.     On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1GHV193K310865 was sold to James Jouve.  Verduyn Aff., ¶41.  A copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 42.

97.     This motorcycle was, in fact, never sold by Cycle-Craft to James Jouve.  Verduyn Aff., ¶41.

98.     This motorcycle was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Robert Duff.  Verduyn Aff., ¶41.  A copy of Mr. Duff's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 43.

99.     On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1GEV183K318650 was sold to Robin Misiano.  Verduyn Aff., ¶42.  A copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 44.

100.    This motorcycle was, in fact, never sold by Cycle-Craft to Robin Misiano. Verduyn Aff., ¶42.

101.    This motorcycle was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Robert Romig.  Verduyn Aff., ¶42.  A copy of Mr. Romig's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 45.

102.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1GEV193K330502 was sold to Marisa Olivo.  Verduyn Aff., ¶43.  A copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 46.

103.    This motorcycle was, in fact, never sold by Cycle-Craft to Marisa Olivo. Verduyn Aff., ¶43.

104.    This motorcycle was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Louis Nardone.  Verduyn Aff., ¶43.  A copy of Mr. Nardone's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 47.

105.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1BTY1X3Y091568 was sold to Howard Cook.  Verduyn Aff., ¶44.  A copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 48.

106.    This motorcycle was, in fact, never sold by Cycle-Craft to Howard Cook. Verduyn Aff., ¶44.

107.    This motorcycle was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Scott Desalvo.  Verduyn Aff., ¶44.  A copy of Mr. Desalvo's

22

application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 49.

108.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1HAZ423K849398 was sold to Andre Silva.  Verduyn Aff., ¶45.  A copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 50.

109.    This motorcycle was, in fact, never sold by Cycle-Craft to Andre Silva.  Verduyn Aff., ¶45.

110.    This motorcycle was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer Theodore Shomos.   Verduyn Aff., ¶45.   A copy of Mr. Shomos' application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 51.

111.    On July 31, 2003, Cycle-Craft reported to Harley-Davidson that a motorcycle with Vehicle Information Number 1HD1HAZ183K843207 was sold to Sheila Firth.  Verduyn Aff., ¶46.  A copy of the SWR submitted by Cycle-Craft to Harley-Davidson is attached to the Verduyn Aff. at Exhibit 52.

112.    This motorcycle was, in fact, never sold by Cycle-Craft to Sheila Firth.  Verduyn Aff., ¶46.

113.    This motorcycle was actually sold and delivered by Cycle-Craft after the close of the 2003 model year to customer John Holbrook. Verduyn Aff., ¶46.  A copy of Mr. Holbrook's application to the Massachusetts Registry of Motor Vehicles is attached to the Verduyn Aff. at Exhibit 53.

114.    Cycle-Craft's submission of SWRs to Harley-Davidson on July 31, 2003 for these seven individuals violated the Dealer Agreement and the 2003 NRSP.  Verduyn Aff., ¶47.  By submitting these SWRs for these seven individuals that did not purchase the motorcycles, Cycle-

Craft obtained incentive payments from Harley-Davidson and increased allocation for the 2004 model year to which it was not entitled. *Id.*

## IX. Harley-Davidson's Decision-Making Process

115.    Harley-Davidson's decision to inspect Cycle-Craft's sales records was triggered by Mr. Verduyn's recommendation, which, as noted, was based on the unsolicited email Harley-Davidson received in August, 2003, and the unusual sales activity by the Cycle-Craft dealership at the end of the 2003 model year. Verduyn Aff., ¶48. Harley-Davidson's notice of termination, in turn, was based solely on the contractual breaches by the dealership discovered as a result of our inspection of records. *Id.* Harley-Davidson had no "ulterior motives" whatsoever. *Id.*

Harley-Davidson Motor Company, Inc.,
and Buell Distribution Company, LLC

By their attorneys,


  /s/ William F. Benson
William N. Berkowitz, BBO# 544148
Sabita Singh, BBO# 560146
William F. Benson, BBO# 646808
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
Ph:  (617) 951-8000
Fx:  (617) 951-8736

Dated:  August 12, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by hand on August 12, 2005.


/s/ William F. Benson
William F. Benson

LITDOCS/609183.2