# EXHIBIT 2

## 1998 POLICY

## POLICY ON VARIOUS NON-RETAIL SALES
### (Revised July, 1997)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred in paragraph B-6 of the current Dealer contract) is further detailed as follows:

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, i.e. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3. The SWR form accompanies the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. A sale to a business will be considered a retail sale if the business/individual is the ultimate consumer and the sale is not for resale or eventual brokering of the motorcycle. The business must register the vehicle in the business entity's name and pay applicable taxes and registration fees. Submit the SWR form with the appropriate sale type checked and proof that sales tax has been paid. For sales into another state, attach a copy of the title application and/or vehicle registration. SWRs received for business entities without documentation will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if; (a) the dealer notifies the Director of Franchise Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Sales to rental companies are generally considered retail sales. Generally the guidelines and requirements for a retail sale to a rental agency are the same as those outlined for a lease (see paragraph 5) If there is any question about whether the rental company is a bonafide entity, please contact your District Manager, Director of Franchise Operations, or Manager of Fleet Sales prior to delivery.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in the policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

8. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

CONFIDENTIAL SUBJECT
TO PROTECTIVE ORDER

H-D 1631
Confidential

# 1999 POLICY
## Policy on Various Non-Retail Sales

*(Revised June, 1998)*

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred in paragraph B-6 of the current Dealer contract) is further detailed as follows:

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

H-D 1632
Confidential

# 1999 POLICY
## Policy on Various Non-Retail Sales - continued -

3. The SWR form accompanies the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with he 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of H-D's motorcycle allocation program.

4. A sale to a business will be considered a retail sale if the business is the ultimate consumer and the sale is not for resale or eventual brokering of the motorcycle. The business must register the vehicle in the business entity's name and pay applicable taxes and registration fees. Submit the SWR form with the appropriate sale type checked and proof that sales tax has been paid. For sales into another state, attach a copy of the title application and/or vehicle registration. SWRs received for business entities without documentation will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if; (a) the dealer notifies the Director of Franchise Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Sales to rental companies are generally considered retail sales. Generally the guidelines and requirements for a retail sale to a rental agency are the same as those outlined for a lease (see paragraph 5) If there is any question about whether the rental company is a bonafide entity, please contact your District Manager, Director of Franchise Operations, or Manager of Fleet Sales prior to delivery.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in the policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

H-D 1633
Confidential

## 2000 MODEL YEAR POLICY  Policy on Various Non-Retail Sales

(Revised May, 1999)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred in paragraph B-6 of the current Dealer contract) is further detailed as follows:

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Field Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3. Unless expressly exempted under a specific program, the SWR form accompanies the motorcycle on all dealer-to dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. A sale to a business will be considered a retail sale if the business is the ultimate consumer and the sale is not for resale or eventual brokering of the motorcycle. The business must register the vehicle in the business entity's name and pay applicable taxes and registration fees. Submit the SWR form with the appropriate sale type checked and proof that sales tax has been paid. For sales into another state, attach a copy of the title application and/or vehicle registration. SWRs received for business entities without documentation will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if: (a) the dealer notifies the Director of Field Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Sales to rental companies are generally considered retail sales. Generally the guidelines and requirements for a retail sale to a rental agency are the same as those outlined for a lease (see paragraph 5) If there is any question about whether the rental company is a bonafide entity, please contact your District Manager, Director of Field Operations, or Manager of Rental Fleet Sales prior to delivery.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in the policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

8. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

## 2001 MODEL YEAR Policy  Policy on Various Non-Retail Sales

(Revised May, 2000)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred in paragraph B-6 of the current Dealer contract) is further detailed as follows:

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Field Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3. Unless expressly exempted under a specific program, the SWR form accompanies the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. Except as otherwise provided in this policy, a sale to a business will be considered a retail sale if the business is the ultimate consumer and the sale is not for resale or eventual brokering of the motorcycle. The business must register the vehicle in the business entity's name and pay applicable taxes and registration fees. Submit the SWR form with the appropriate sale type checked and proof that sales tax has been paid. For sales into another state, attach a copy of the title application and/or vehicle registration. SWRs received for business entities without documentation will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if; (a) the dealer notifies the Director of Field Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Effective September 15, 1999, non-dealer "Harley-Davidson Authorized Rentals" operators may purchase, from authorized Harley-Davidson dealers, units sourced from the Rentals Fleet Pool and provided above Sales Unit Allocation (SUA). A list of these operators will be maintained by Harley-Davidson in the Rentals Department and will be made available upon request. All sales from the Rentals Fleet Pool to these operators are governed by the Harley-Davidson Fleet Sales Policy, which includes limits on vehicle availability per dealer and operator. Please refer to the Fleet Sales Policy for details on sales to "Harley-Davidson Authorized Rentals" operators. Retail Sales of motorcycles to rental companies not authorized by Harley-Davidson and to "Harley-Davidson Authorized Rentals" operators desiring units beyond the units already sourced through dealers from the Rentals Fleet Pool, by any one dealer are limited to five (5) units per rental company or operator per model year. Sales in excess of five (5) per rental company or operator location per model year will be deemed non-retail sales under this policy. A sale by a Dealer of a new or previously unregistered motorcycle to a rental company including a "Harley-Davidson Authorized Rentals" operator for use in the United States will be deemed a retail sale only if; (a) it is not sourced from the Rentals Fleet Pool, (b) it does not exceed the five (5) unit limit under this policy, (c) the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the rental company, (d) Dealer notifies Rentals & Tours Department Vehicle Account Representative of the rental company's name and address in advance of delivery and supplies the Vehicle Account Representative with a copy of the company's license to do business as required, (e) the Vehicle Account Representative is able to confirm that the rental company is a bona fide entity and approves the retail sale in writing, and (f) the motorcycle is supplied from Dealer's sales unit allocation (SUA).

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in the policy, or submission of false SWR information, will be grounds for termination of the Dealer Contract.

8. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

## 2002 MODEL YEAR POLICY   *Policy on Various Non-Retail Sales*

*(Revised May, 2001)*

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales. Ultimately, this task force created a non-retail sales policy to ensure customer satisfaction and safety, facilitate compliance with federal and state law and laws in various foreign countries, maintain Harley-Davidson's competitive position and protect the integrity of Harley-Davidson's worldwide distribution network. This policy expanded upon and interpreted the non-retail sales provision in the Dealer Contract (paragraph B-6). It has been amended over the last twelve years, and is currently in effect as follows:

1. As provided in the Dealer Contract, dealers are prohibited from engaging in non-retail sales of motorcycles unless the sale is approved by their respective Director of Field Operations (DFO). A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, without the intent to resell, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. Please note that although payment of taxes and registration fees and titling in the customer's name will normally be sufficient evidence of a retail sale, the sale to a customer who the dealer knows, or should know, intends to resell the motorcycle may still be deemed a non-retail sale. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. Paragraphs 4, 5, and 6 of this policy provide more guidance on when a motorcycle sale to a business, a lease financing agency or rental company is considered a non-retail sale. Please note that all non-retail sales must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to a dealer's respective DFO. This policy does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by Harley-Davidson's Fleet Sales Policy.

2. Factory incentives and allowances, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time.

3. This policy does not apply to domestic Harley-Davidson dealer transfers. Unless expressly exempted under a specific program, the SWR form must accompany the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program.

4. Except as otherwise provided in this policy, a sale to a business will be considered a retail sale if the business is the ultimate consumer, the sale is not for resale or eventual brokering of the motorcycle, and the business registers the vehicle in the business entity's name and pays applicable taxes and registration fees. In order to receive retail credit for a sale to a business, a dealer must check the appropriate sale type on the SWR form and collect all sales and other taxes that the business is legally required to pay the dealer. For sales into another state, the dealer must also obtain a copy of the title application and/or vehicle registration. The dealer should be prepared to provide to Harley-Davidson upon request evidence of sales tax payment (when such payment is legally required) and such other documentation as is necessary to show that the requirements in this paragraph have been met. If the dealer is unable to provide this documentation, the sale will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale only if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, not the leasing company, and: (a) the dealer notifies the DFO of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Non-dealer "Harley-Davidson Authorized Rentals" operators may purchase, from an authorized Harley-Davidson dealer, units sourced from the Rentals Fleet Pool that are above such dealers Sales Unit Allocation (SUA). A list of these operators will be maintained by Harley-Davidson in the Rentals Department and will be made available upon request. All sales from the Rentals Fleet Pool to these operators are governed by the Fleet Sales Policy, which includes limits on vehicle availability per dealer and operator. Please refer to the Fleet Sales Policy for details on sales to "Harley-Davidson Authorized Rentals" operators. Dealers may also sell up to five (5) additional motorcycles to rental companies not authorized by Harley-Davidson and to "Harley-Davidson Authorized Rentals" operations. However, any such sale will be deemed a retail sale only if : (a) it is not sourced from the Rentals Fleet Pool, (b) the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the rental company, (c) the dealer notifies Rentals & Tours Department Vehicle Account Representative of the rental company's name and address in advance of delivery and supplies the Vehicle Account Representative with a copy of the company's license to do business, (d) the Vehicle Account Representative is able to confirm that the rental company is a bona fide entity and approves the retail sale in writing, and (e) the motorcycle is supplied from the dealer's SUA. Any motorcycle sale to a rental company not meeting each of these requirements will be considered a non-retail sale. In addition, any motorcycle sale to a rental company that exceeds the limit of five (5) per rental company will be considered a non-retail sale, regardless of whether these requirements are met.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale.

8. Harley-Davidson will strictly enforce the terms of this policy using all available means. If a dealer sells a motorcycle in an unapproved non-retail sale, records a non-retail sale as a retail sale on the SWR form or submits false SWR information with respect to a sale, Harley-Davidson may (1) deduct a like number (and model) of motorcycles from such dealer's current and, in certain circumstances, all subsequent model year SUAs and (2) charge back to the dealer any incentives or allowances credited or paid with respect to such motorcycle. In addition, Harley-Davidson reserves the right to take any further action it deems appropriate if a dealer fails to comply with this policy or submits false SWR information. Such actions could include a charge back of internal and external audit and legal expenses to the dealer and the termination of the dealer's Motorcycle Dealer Contract.

9. Harley-Davidson reserves the right to amend this policy form time to time upon written notice to its dealers. In addition, in extraordinary circumstances, Harley-Davidson may make exceptions to one or more of the requirements set forth in this policy, provided that there are legitimate business reasons for doing so. Any such exception will not be construed as a waiver of such requirements for dealers as a whole.

H-D 1636
Confidential

DOMESTIC i