# EXHIBIT 3

# Motorcycle Non-Retail Policy – Pleasure Units

2003 MODEL YEAR

## Policy On Various Non-Retail Sales:

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales. Ultimately, this task force created a non-retail sales policy to ensure customer satisfaction and safety, facilitate compliance with federal and state law and laws in various foreign countries, maintain Harley-Davidson's competitive position and protect the integrity of Harley-Davidson's worldwide distribution network. This policy expanded upon and interpreted the non-retail sales provision in the Dealer Contract (paragraph B-6). It has been amended over the last twelve years, and is currently in effect as follows:

1. As provided in the Dealer Contract, dealers are prohibited from engaging in non-retail sales of motorcycles unless the sale is approved by their respective Director of Field Operations (DFO). A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, without the intent to resell, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. Please note that although payment of taxes and registration fees and titling in the customer's name will normally be sufficient evidence of a retail sale, the sale to a customer who the dealer knows, or should know, intends to resell the motorcycle may still be deemed a non-retail sale. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. Paragraphs 4, 5, and 6 of this policy provide more guidance on when a motorcycle sale to a business, a lease financing agency or rental company is considered a non-retail sale. Please note that all non-retail sales must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to a dealer's respective DFO. This policy does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and Shrine Temples. Such fleet sales are governed by Harley-Davidson's Fleet Sales Policy.

2. Factory incentives and allowances, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the Motorcycle Performance Incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time.

3. This policy does not apply to domestic Harley-Davidson dealer transfers. Unless expressly exempted under a specific program, the SWR form must accompany the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program.

4. Except as otherwise provided in this policy, a sale to a business will be considered a retail sale if the business is the ultimate consumer, the sale is not for resale or eventual brokering of the motorcycle, and the business registers the vehicle in the business entity's name and pays applicable taxes and registration fees. In order to receive retail credit for a sale to a business, a dealer must check the appropriate sale type on the SWR form and collect all sales and other taxes that the business is legally required to pay the dealer.



H-D 0987
Confidential

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale only if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, not the leasing company, and: (a) the dealer notifies the DFO of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company's name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly the the lessee (i.e., warranty and H.O.G. membership, etc.).

6. Non-dealer "Harley-Davidson Authorized Rentals" operators may purchase, from an authorized Harley-Davidson dealer, units sourced from the Rentals Fleet Pool that are above such dealer's Sales Unit Allocation (SUA). A list of these operators will be maintained by Harley-Davidson in the Rentals Department and will be made available upon request. All sales from the Rentals Fleet Pool to these operators are governed by the Fleet Sales Policy, which includes limits on vehicle availability per dealer and operator. Please refer to the Fleet Sales Policy for details on sales to "Harley-Davidson Authorized Rentals" operators. Dealers may also sell up to five (5) additional motorcycles to rental companies not authorized by Harley-Davidson and to "Harley-Davidson Authorized Rentals" operations. However, any such sale will be deemed a retail sale only if: (a) it is not source from the Rentals Fleet Pool, (b) the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the rental company, (c) the dealer notifies Rentals & Tours Department Vehicle Account Representative of the rental company's name and address in advance of delivery and supplies the Vehicle Account Representative with a copy of the company's license to do business, (d) the Vehicle Account Representative is able to confirm that the rental company is a bonafide entity and approves the retail sale in writing, and (e) the motorcycle issupplied from the dea ler's SUA. Any motorcycle sale to a rental company not meeting each of these requirements will be considered a non-retail sale. In addition, any motorcycle sale to a rental company that exceeds the limit of five (5) per rental company will be considered a non-retail sale, regardless of whether these requirements are met.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. The dealer should be prepared to provide to Harley-Davidson upon request evidence of sales tax payment (when such payment is legally required) and such other documentation as is necessary to show that the requirements in the applicable paragraph have been met. For sales into another state, the dealer must also obtain a copy of the title application and/or vehicle registration. If the dealer is unable to provide this documentation, the sale will be automatically considered a non-retail sale.

8. Harley-Davidson will strictly enforce the terms of this policy using all available means. If a dealer sells a motorcycle in an unapproved non-retail sale, records a non-retail sale as a retail sale on the SWR form, submits false SWR information with respect to a sale or otherwise violates this policy, Harley-Davidson may (1) deduct a like number (and model) of motorcycles from such dealer's current and, in certain circumstances, all subsequent model year SUAs and (2) charge back to the dealer any incentives or allowances credited or paid with respect to such motorcycle. In addition, Harley-Davidson reserves the right to take any further action it deems appropriate if a dealer fails to comply with this policy or submits false SWR information. Such actions could include a charge back of internal and external audit and legal expenses to the dealer and the termination of the dealer's Motorcycle Dealer Contract.

9. Harley-Davidson reserves the right to amend this policy from time to time upon written notice to its dealers. In addition, in extraordinary circumstances, Harley-Davidson may make exceptions to one or more of the requirements set forth in this policy, provided that there are legitimate business reasons for doing so. Any such exception will not be construed as a waiver of such requirements for dealers as a whole.



H-D 0988
Confidential