# EXHIBIT 3



# POLICY ON EXPORTS
# AND OTHER NON-RETAIL
# SALES BY DOMESTIC (U.S.) DEALERS
## (Effective July, 1990)

Harley-Davidson has become increasingly concerned about the sales of new vehicles to non-retail purchasers, including sales outside the United States by domestic dealers. During the past year, Harley-Davidson has set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales. Harley-Davidson is considering a number of future policy changes. In the interim, to assure customer satisfaction and safety, to maintain Harley-Davidson's competitive position, and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy is effective immediately.

1. Except for ordinary domestic dealer to domestic dealer transfers, a sale by a U.S. dealer of a new or previously unregistered vehicle will be considered a "non-retail sale" for purposes of this interim policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer, as required by the Harley-Davidson Dealer Contract. The definition of "ultimate consumer" for the purpose of this interim policy is a retail purchaser of a new or previously unregistered vehicle who pays all applicable taxes and registration fees, and titles the vehicle in their name. Please note that all non-retail sales, including export sales, must be recorded by the selling dealer of the Sales and Warranty Registration (SWR) form by checking the "Other" box. Questions concerning the proper classification of any sales should be directed to Frank Cimermancic, Director of Business Planning at Harley-Davidson in Milwaukee.



2. Factory incentives and allowances on 1991 and later model year vehicles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the performance incentive payment, set-up and pre-delivery allowance, SIP, co-op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year vehicles sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3. To ensure compliance with this policy, Harley-Davidson intends to audit dealer records, as appropriate, and strictly enforce the terms of the policy using all available means. Harley-Davidson further reserves the right to amend this policy at any time, upon written notice.

H-D 1624
Confidential

# POLICY ON EXPORTS
# AND OTHER NON-RETAIL
# SALES BY DOMESTIC (U.S.) DEALERS
## (Revised May, 1991)

Harley-Davidson is concerned about the sales of new vehicles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales. Harley-Davidson considered a number of policy changes. Therefore, to assure customer satisfaction and safety, to maintain Harley-Davidson's competitive position, and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy was adopted in July 1990 and remains in effect.

1.  Except for ordinary domestic dealer to domestic dealer transfers, a sale by a U.S. dealer of a new or previously unregistered vehicle will be considered a "non-retail sale" for purposes of this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer, as required by the Harley-Davidson Dealer Contract. An "ultimate consumer" for the purpose of this policy is the retail end user who purchases a new or previously unregistered vehicle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. Please note that all non-retail sales, including export sales, must be recorded by the selling dealer of the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sale will be deemed "Other." Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee.

2.  Factory incentives and allowances on 1991 and later model year vehicles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the performance incentive payment, set-up and pre-delivery allowance, SIP, co-op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year vehicles sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3.  Beginning with the 1992 and later model years, only new motorcycles sold directly to the ultimate consumer will earn credit for purposes of Harley-Davidson's future vehicle allocation programs.

4.  To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records, as appropriate, and will strictly enforce the terms of the policy using all available means. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each retail sale.

5.  Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

H-D 1625
Confidential

# 1993 POLICY

## POLICY ON EXPORTS
## AND OTHER NON-RETAIL SALES BY DOMESTIC (U.S.) DEALERS
### (Revised June, 1992)

Harley-Davidson is concerned about the sales of new vehicles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales. Harley-Davidson considered a number of policy changes. Therefore, to assure customer satisfaction and safety, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended.

1. Except for ordinary domestic dealer to domestic dealer transfers, a sale by a U.S. dealer of a new previously unregistered vehicle will be considered a "non-retail sale" for purposes of this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer, as required by the Harley-Davidson Dealer Contract. An "ultimate consumer" for the purpose of this policy is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered vehicle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sale will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee.

2. Factory incentives and allowances on 1991 and later model year vehicles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the performance incentive payment, set-up and pre-delivery allowance, SIP, co-op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year vehicles sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3. The SWR form accompanies the vehicle on all dealer to dealer transfers, and the wholesaling dealer may not claim credit to the vehicle under the factory's vehicle allocation program. Moreover, beginning with the 1992 and later model years, only new motorcycles sold directly to the ultimate consumer will earn credit for purposes of Harley-Davidson's vehicle allocation program.

4. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records, as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. Submission of false SWR information will be grounds for termination of the Dealer Contract.

5. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

H-D 1626
Confidential

# 1994 POLICY

## POLICY ON VARIOUS NON-RETAIL SALES
### (Revised June, 1993)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended.

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sale will be deemed "Other." Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, i.e., police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the performance incentive payment, set-up and pre-delivery allowance, SIP, co-op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3. The SWR form accompanies the motorcycle on all dealer to dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United Sates will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. A sale by a U.S. dealer of a new or previously unregistered motorcycle to a leasing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if: (a) the dealer notifies the Director of Franchise Operations of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bona fide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company's name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.).

5. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in this policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

6. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

H-D 1627
Confidential

# 1995 POLICY

## POLICY ON VARIOUS NON-RETAIL SALES
### (Revised June, 1994)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales.

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sale will be deemed "Other." Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, i.e., police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the performance incentive payment, set-up and pre-delivery allowance, SIP, co-op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended.

3. The SWR form accompanies the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. A sale by a U.S. dealer of a new or previously unregistered motorcycle to a leasing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if: (a) the dealer notifies the Director of Franchise Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bona fide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company's name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.).

5. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in this policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

6. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.



# 1996 POLICY

## POLICY ON VARIOUS NON-RETAIL SALES
### (Revised June, 1994)

**Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales.**

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. ( A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sale will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, i.e. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

**Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended.**

3. The SWR form accompanies the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. A sale by a U.S. dealer of a new or previously unregistered motorcycle to a leasing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if: (a) the dealer notifies the Director of Franchise Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bona fide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company's name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

5. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in this policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

6. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

H-D 1629
Confidential

**1997 POLICY**

## POLICY ON VARIOUS NON-RETAIL SALES
### (Revised June, 1996)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales.

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sale will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, i.e., police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred to in paragraph B-6 of the current Dealer contract) is further detailed as follows:

3. The SWR form accompanies the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. A sale by a U.S. dealer of a new or previously unregistered motorcycle to a leasing agency located in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if: (a) the dealer notifies the Director of Franchise Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bona fide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company's name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

5. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in this policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

6. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

H-D 1630
Confidential

## 1998 POLICY

### POLICY ON VARIOUS NON-RETAIL SALES
### (Revised July, 1997)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force and engaged independent expert consultants to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred in paragraph B-6 of the current Dealer contract) is further detailed as follows:

1.  As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, i.e. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2.  Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3.  The SWR form accompanies the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4.  A sale to a business will be considered a retail sale if the business/individual is the ultimate consumer and the sale is not for resale or eventual brokering of the motorcycle. The business must register the vehicle in the business entity's name and pay applicable taxes and registration fees. Submit the SWR form with the appropriate sale type checked and proof that sales tax has been paid. For sales into another state, attach a copy of the title application and/or vehicle registration. SWRs received for business entities without documentation will be automatically considered a non-retail sale.

5.  A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if; (a) the dealer notifies the Director of Franchise Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6.  Sales to rental companies are generally considered retail sales. Generally the guidelines and requirements for a retail sale to a rental agency are the same as those outlined for a lease (see paragraph 5) If there is any question about whether the rental company is a bonafide entity, please contact your District Manager, Director of Franchise Operations, or Manager of Fleet Sales prior to delivery.

7.  To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in the policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

8.  Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

CONFIDENTIAL SUBJECT
TO PROTECTIVE ORDER

H-D 1631
Confidential

# 1999 POLICY
## Policy on Various Non-Retail Sales

*(Revised June, 1998)*

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred in paragraph B-6 of the current Dealer contract) is further detailed as follows:

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Franchise Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

H-D 1632
Confidential

# 1999 POLICY
## Policy on Various Non-Retail Sales - continued -

3. The SWR form accompanies the motorcycle on all dealer-to dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with he 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of H-D's motorcycle allocation program.

4. A sale to a business will be considered a retail sale if the business is the ultimate consumer and the sale is not for resale or eventual brokering of the motorcycle. The business must register the vehicle in the business entity's name and pay applicable taxes and registration fees. Submit the SWR form with the appropriate sale type checked and proof that sales tax has been paid. For sales into another state, attach a copy of the title application and/or vehicle registration. SWRs received for business entities without documentation will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if; (a) the dealer notifies the Director of Franchise Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Sales to rental companies are generally considered retail sales. Generally the guidelines and requirements for a retail sale to a rental agency are the same as those outlined for a lease (see paragraph 5) If there is any question about whether the rental company is a bonafide entity, please contact your District Manager, Director of Franchise Operations, or Manager of Fleet Sales prior to delivery.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in the policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

H-D 1633
Confidential

**2000 MODEL YEAR POLICY** Policy on Various Non-Retail Sales

(Revised May, 1999)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred in paragraph B-6 of the current Dealer contract) is further detailed as follows:

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Field Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3. Unless expressly exempted under a specific program, the SWR form accompanies the motorcycle on all dealer-to dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. A sale to a business will be considered a retail sale if the business is the ultimate consumer and the sale is not for resale or eventual brokering of the motorcycle. The business must register the vehicle in the business entity's name and pay applicable taxes and registration fees. Submit the SWR form with the appropriate sale type checked and proof that sales tax has been paid. For sales into another state, attach a copy of the title application and/or vehicle registration. SWRs received for business entities without documentation will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if: (a) the dealer notifies the Director of Field Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Sales to rental companies are generally considered retail sales. Generally the guidelines and requirements for a retail sale to a rental agency are the same as those outlined for a lease (see paragraph 5) If there is any question about whether the rental company is a bonafide entity, please contact your District Manager, Director of Field Operations, or Manager of Rental Fleet Sales prior to delivery.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in the policy, or submission of false SWR information will be grounds for termination of the Dealer Contract.

8. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

## 2001 MODEL YEAR Policy   Policy on Various Non-Retail Sales

(Revised May, 2000)

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales.

Harley-Davidson considered a number of policy changes. To assure customer satisfaction and safety, to facilitate compliance with federal and state law and laws in various foreign countries, to maintain Harley-Davidson's competitive position and to protect the integrity of Harley-Davidson's worldwide distribution network, the following policy originated in July 1990 and is in effect as amended. The policy on various non-retail sales (referred in paragraph B-6 of the current Dealer contract) is further detailed as follows:

1. As provided in the Dealer Contract, dealers are not authorized to sell motorcycles to non-retail customers. A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. (A sale to a non-U.S. resident, as determined by driver's license for example, will be considered a sale for use outside of the U.S.) Please note that all non-retail sales, including export sales, must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to your respective Director of Field Operations in Milwaukee. This policy does not apply to domestic Harley-Davidson dealer transfers. This policy also does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by a separate Harley-Davidson policy.

2. Factory incentives and allowances on 1991 and later model year motorcycles, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time. Any such factory incentives or allowances paid or credited with regard to 1991 or later model year motorcycles, sold to non-retail purchasers, including exports, will be debited back to the dealer's account.

3. Unless expressly exempted under a specific program, the SWR form accompanies the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit for the motorcycle under the factory's motorcycle allocation program. Moreover, beginning with the 1992 and later model years, only new or previously unregistered motorcycles sold at retail directly to the ultimate consumer for use in the United States will earn credit for purposes of Harley-Davidson's motorcycle allocation program.

4. Except as otherwise provided in this policy, a sale to a business will be considered a retail sale if the business is the ultimate consumer and the sale is not for resale or eventual brokering of the motorcycle. The business must register the vehicle in the business entity's name and pay applicable taxes and registration fees. Submit the SWR form with the appropriate sale type checked and proof that sales tax has been paid. For sales into another state, attach a copy of the title application and/or vehicle registration. SWRs received for business entities without documentation will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, and not the leasing company, and if: (a) the dealer notifies the Director of Field Operations (DFO) of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Effective September 15, 1999, non-dealer "Harley-Davidson Authorized Rentals" operators may purchase, from authorized Harley-Davidson dealers, units sourced from the Rentals Fleet Pool and provided above Sales Unit Allocation (SUA). A list of these operators will be maintained by Harley-Davidson in the Rentals Department and will be made available upon request. All sales from the Rentals Fleet Pool to these operators are governed by the Harley-Davidson Fleet Sales Policy, which includes limits on vehicle availability per dealer and operator. Please refer to the Fleet Sales Policy for details on sales to "Harley-Davidson Authorized Rentals" operators. Retail Sales of motorcycles to rental companies not authorized by Harley-Davidson and to "Harley-Davidson Authorized Rentals" operators desiring units beyond the units already sourced through dealers from the Rentals Fleet Pool, by any one dealer are limited to five (5) units per rental company or operator per model year. Sales in excess of five (5) per rental company or operator location per model year will be deemed non-retail sales under this policy. A sale by a Dealer of a new or previously unregistered motorcycle to a rental company including a "Harley-Davidson Authorized Rentals" operator for use in the United States will be deemed a retail sale only if; (a) it is not sourced from the Rentals Fleet Pool, (b) it does not exceed the five (5) unit limit under this policy, (c) the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the rental company, (d) Dealer notifies Rentals & Tours Department Vehicle Account Representative of the rental company's name and address in advance of delivery and supplies the Vehicle Account Representative with a copy of the company's license to do business as required, (e) the Vehicle Account Representative is able to confirm that the rental company is a bona fide entity and approves the retail sale in writing, and (f) the motorcycle is supplied from Dealer's sales unit allocation (SUA).

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. Harley-Davidson will strictly enforce the terms of this policy using all available means. A dealer's repeated or substantial non-retail sales, as defined in the policy, or submission of false SWR information, will be grounds for termination of the Dealer Contract.

8. Harley-Davidson reserves the right to amend this policy at any time, upon written notice.

## 2002 MODEL YEAR POLICY *Policy on Various Non-Retail Sales*

*(Revised May, 2001)*

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including polices regarding exports and other non-retail sales. Ultimately, this task force created a non-retail sales policy to ensure customer satisfaction and safety, facilitate compliance with federal and state law and laws in various foreign countries, maintain Harley-Davidson's competitive position and protect the integrity of Harley-Davidson's worldwide distribution network. This policy expanded upon and interpreted the non-retail sales provision in the Dealer Contract (paragraph B-6). It has been amended over the last twelve years, and is currently in effect as follows:

1. As provided in the Dealer Contract, dealers are prohibited from engaging in non-retail sales of motorcycles unless the sale is approved by their respective Director of Field Operations (DFO). A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, without the intent to resell, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. Please note that although payment of taxes and registration fees and titling in the customer's name will normally be sufficient evidence of a retail sale, the sale to a customer who the dealer knows, or should know, intends to resell the motorcycle may still be deemed a non-retail sale. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. Paragraphs 4, 5, and 6 of this policy provide more guidance on when a motorcycle sale to a business, a lease financing agency or rental company is considered a non-retail sale. Please note that all non-retail sales must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to a dealer's respective DFO. This policy does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and shrine temples. Such fleet sales are governed by Harley-Davidson's Fleet Sales Policy.

2. Factory incentives and allowances, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the motorcycle performance incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time.

3. This policy does not apply to domestic Harley-Davidson dealer transfers. Unless expressly exempted under a specific program, the SWR form must accompany the motorcycle on all dealer-to dealer transfers, and the wholesaling dealer may not claim credit for the motorcycle under the factory's motorcycle allocation program.

4. Except as otherwise provided in this policy, a sale to a business will be considered a retail sale if the business is the ultimate consumer, the sale is not for resale or eventual brokering of the motorcycle, and the business registers the vehicle in the business entity's name and pays applicable taxes and registration fees. In order to receive retail credit for a sale to a business, a dealer must check the appropriate sale type on the SWR form and collect all sales and other taxes that the business is legally required to pay the dealer. For sales into another state, the dealer must also obtain a copy of the title application and/or vehicle registration. The dealer should be prepared to provide to Harley-Davidson upon request evidence of sales tax payment (when such payment is legally required) and such other documentation as is necessary to show that the requirements in this paragraph have been met. If the dealer is unable to provide this documentation, the sale will be automatically considered a non-retail sale.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale only if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, not the leasing company, and: (a) the dealer notifies the DFO of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company' name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and HOG membership, etc.)

6. Non-dealer "Harley-Davidson Authorized Rentals" operators may purchase, from an authorized Harley-Davidson dealer, units sourced from the Rentals Fleet Pool that are above such dealers Sales Unit Allocation (SUA). A list of these operators will be maintained by Harley-Davidson in the Rentals Department and will be made available upon request. All sales from the Rentals Fleet Pool to these operators are governed by the Fleet Sales Policy, which includes limits on vehicle availability per dealer and operator. Please refer to the Fleet Sales Policy for details on sales to "Harley-Davidson Authorized Rentals" operators. Dealers may also sell up to five (5) additional motorcycles to rental companies not authorized by Harley-Davidson and to "Harley-Davidson Authorized Rentals" operations. However, any such sale will be deemed a retail sale only if : (a) it is not sourced from the Rentals Fleet Pool, (b) the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the rental company, (c) the dealer notifies Rentals & Tours Department Vehicle Account Representative of the rental company's name and address in advance of delivery and supplies the Vehicle Account Representative with a copy of the company's license to do business, (d) the Vehicle Account Representative is able to confirm that the rental company is a bona fide entity and approves the retail sale in writing, and (e) the motorcycle is supplied from the dealer's SUA. Any motorcycle sale to a rental company not meeting each of these requirements will be considered a non-retail sale. In addition, any motorcycle sale to a rental company that exceeds the limit of five (5) per rental company will be considered a non-retail sale, regardless of whether these requirements are met.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale.

8. Harley-Davidson will strictly enforce the terms of this policy using all available means. If a dealer sells a motorcycle in an unapproved non-retail sale, records a non-retail sale as a retail sale on the SWR form or submits false SWR information with respect to a sale, Harley-Davidson may (1) deduct a like number (and model) of motorcycles from such dealer's current and, in certain circumstances, all subsequent model year SUAs and (2) charge back to the dealer any incentives or allowances credited or paid with respect to such motorcycle. In addition, Harley-Davidson reserves the right to take any further action it deems appropriate if a dealer fails to comply with this policy or submits false SWR information. Such actions could include a charge back of internal and external audit and legal expenses to the dealer and the termination of the dealer's Motorcycle Dealer Contract.

9. Harley-Davidson reserves the right to amend this policy form time to time upon written notice to its dealers. In addition, in extraordinary circumstances, Harley-Davidson may make exceptions to one or more of the requirements set forth in this policy, provided that there are legitimate business reasons for doing so. Any such exception will not be construed as a waiver of such requirements for dealers as a whole.

# Motorcycle Non-Retail Policy – Pleasure Units

### 2003 MODEL YEAR

### Policy On Various Non-Retail Sales:

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. During 1990, Harley-Davidson set up a special task force to evaluate Harley-Davidson's distribution and allocation policies, including policies regarding exports and other non-retail sales. Ultimately, this task force created a non-retail sales policy to ensure customer satisfaction and safety, facilitate compliance with federal and state law and laws in various foreign countries, maintain Harley-Davidson's competitive position and protect the integrity of Harley-Davidson's worldwide distribution network. This policy expanded upon and interpreted the non-retail sales provision in the Dealer Contract (paragraph B-6). It has been amended over the last twelve years, and is currently in effect as follows:

1. As provided in the Dealer Contract, dealers are prohibited from engaging in non-retail sales of motorcycles unless the sale is approved by their respective Director of Field Operations (DFO). A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, without the intent to resell, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. Please note that although payment of taxes and registration fees and titling in the customer's name will normally be sufficient evidence of a retail sale, the sale to a customer who the dealer knows, or should know, intends to resell the motorcycle may still be deemed a non-retail sale. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. Paragraphs 4, 5, and 6 of this policy provide more guidance on when a motorcycle sale to a business, a lease financing agency or rental company is considered a non-retail sale. Please note that all non-retail sales must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to a dealer's respective DFO. This policy does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and Shrine Temples. Such fleet sales are governed by Harley-Davidson's Fleet Sales Policy.

2. Factory incentives and allowances, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the Motorcycle Performance Incentive payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time.

3. This policy does not apply to domestic Harley-Davidson dealer transfers. Unless expressly exempted under a specific program, the SWR form must accompany the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program.

4. Except as otherwise provided in this policy, a sale to a business will be considered a retail sale if the business is the ultimate consumer, the sale is not for resale or eventual brokering of the motorcycle, and the business registers the vehicle in the business entity's name and pays applicable taxes and registration fees. In order to receive retail credit for a sale to a business, a dealer must check the appropriate sale type on the SWR form and collect all sales and other taxes that the business is legally required to pay the dealer.



H-D 0987
Confidential

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale only if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, not the leasing company, and: (a) the dealer notifies the DFO of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company's name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly the the lessee (i.e., warranty and H.O.G. membership, etc.).

6. Non-dealer "Harley-Davidson Authorized Rentals" operators may purchase, from an authorized Harley-Davidson dealer, units sourced from the Rentals Fleet Pool that are above such dealer's Sales Unit Allocation (SUA). A list of these operators will be maintained by Harley-Davidson in the Rentals Department and will be made available upon request. All sales from the Rentals Fleet Pool to these operators are governed by the Fleet Sales Policy, which includes limits on vehicle availability per dealer and operator. Please refer to the Fleet Sales Policy for details on sales to "Harley-Davidson Authorized Rentals" operators. Dealers may also sell up to five (5) additional motorcycles to rental companies not authorized by Harley-Davidson and to "Harley-Davidson Authorized Rentals" operations. However, any such sale will be deemed a retail sale only if: (a) it is not source from the Rentals Fleet Pool, (b) the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the rental company, (c) the dealer notifies Rentals & Tours Department Vehicle Account Representative of the rental company's name and address in advance of delivery and supplies the Vehicle Account Representative with a copy of the company's license to do business, (d) the Vehicle Account Representative is able to confirm that the rental company is a bonafide entity and approves the retail sale in writing, and (e) the motorcycle issupplied from the dea ler's SUA. Any motorcycle sale to a rental company not meeting each of these requirements will be considered a

non-retail sale. In addition, any motorcycle sale to a rental company that exceeds the limit of five (5) per rental company will be considered a non-retail sale, regardless of whether these requirements are met.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. The dealer should be prepared to provide to Harley-Davidson upon request evidence of sales tax payment (when such payment is legally required) and such other documentation as is necessary to show that the requirements in the applicable paragraph have been met. For sales into another state, the dealer must also obtain a copy of the title application and/or vehicle registration. If the dealer is unable to provide this documentation, the sale will be automatically considered a non-retail sale.

8. Harley-Davidson will strictly enforce the terms of this policy using all available means. If a dealer sells a motorcycle in an unapproved non-retail sale, records a non-retail sale as a retail sale on the SWR form, submits false SWR information with respect to a sale or otherwise violates this policy, Harley-Davidson may (1) deduct a like number (and model) of motorcycles from such dealer's current and, in certain circumstances, all subsequent model year SUAs and (2) charge back to the dealer any incentives or allowances credited or paid with respect to such motorcycle. In addition, Harley-Davidson reserves the right to take any further action it deems appropriate if a dealer fails to comply with this policy or submits false SWR information. Such actions could include a charge back of internal and external audit and legal expenses to the dealer and the termination of the dealer's Motorcycle Dealer Contract.

9. Harley-Davidson reserves the right to amend this policy from time to time upon written notice to its dealers. In addition, in extraordinary circumstances, Harley-Davidson may make exceptions to one or more of the requirements set forth in this policy, provided that there are legitimate business reasons for doing so. Any such exception will not be construed as a waiver of such requirements for dealers as a whole.



H-D 0988
Confidential

# Motorcycle Non-Retail Policy – Pleasure Units

### 2004 MODEL YEAR

## Policy On Various Non-Retail Sales:

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers. In light of that concern, Harley-Davidson has created a non-retail sales policy to ensure customer satisfaction and safety, facilitate compliance with federal and state law and laws in various foreign countries, and protect the integrity of Harley-Davidson's worldwide distribution network. This policy expands upon and interprets the non-retail sales provision in the Dealer Contract (paragraph B-6). The policy is as follows:

1. As provided in the Dealer Contract, dealers are prohibited from engaging in non-retail sales of motorcycles unless the sale is approved by their respective Director of Field Operations (DFO). A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, without the intent to resell, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. Please note that although payment of taxes and registration fees and titling in the customer's name will normally be sufficient evidence of a retail sale, the sale to a customer who the dealer knows, or should know, intends to resell the motorcycle may still be deemed a non-retail sale. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside of the United States. Paragraphs 4, 5, and 6 of this policy provide more guidance on when a motorcycle sale to a business, a lease financing agency or rental company is considered a non-retail sale. Please note that all approved non-retail sales must be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to a dealer's respective DFO. This policy does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and Shrine Temples. Such fleet sales are governed by Harley-Davidson's Fleet Sales Policy.

2. Factory incentives and allowances, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the Vehicle Incentive Performance payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time.

3. This policy does not apply to domestic Harley-Davidson dealer transfers. Unless expressly exempted under a specific program, the SWR form must accompany the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program.

4. Except as otherwise provided in this policy, a sale to a business will be considered a retail sale if the business is the ultimate consumer, the sale is not for resale or eventual brokering of the motorcycle, and the business registers the vehicle in the business entity's name and pays applicable taxes and registration fees. In order to receive retail credit for a sale to a business, a dealer must check the appropriate sale type on the SWR form and collect all sales and other taxes that the business is legally required to pay the dealer.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale only if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the lessee, not the leasing company. In addition, the following requirements must also be met: (a) the dealer notifies the DFO of the leasing company's name



H-D 1637
Confidential

and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company's name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and H.O.G. membership, etc.).

6. Non-dealer "Harley-Davidson Authorized Rentals" operators may purchase, from an authorized Harley-Davidson dealer, units sourced from the Rentals Fleet Pool that are above such dealer's Sales Unit Allocation (SUA). A list of these operators will be maintained by Harley-Davidson in the Rentals Department and will be made available upon request. All sales from the Rentals Fleet Pool to these operators are governed by the Fleet Sales Policy, which includes limits on vehicle availability per dealer and operator. Please refer to the Fleet Sales Policy for details on sales to "Harley-Davidson Authorized Rentals" operators. Dealers may also sell up to five (5) additional motorcycles from their own allocation per rental companies not authorized by Harley-Davidson and to "Harley-Davidson Authorized Rentals" operations. However, any such sale will be deemed a retail sale only if: (a) it is not sourced from the Rentals Fleet Pool, (b) the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the rental company, (c) the dealer notifies Rentals & Tours Department Vehicle Account Representative of the rental company's name and address in advance of delivery and supplies the Vehicle Account Representative with a copy of the company's license to do business, (d) the Vehicle Account Representative is able to confirm that the rental company is a bonafide entity and approves the retail sale in writing, and (e) the motorcycle is supplied from the dealer's SUA. Any motorcycle sale to a rental company not meeting each of these requirements will be considered a non-retail sale. In addition, motorcycle sales to rental companys that exceed the limit of five (5) per rental companys will be considered non-retail sales, regardless of whether these requirements are met.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. The dealer should be prepared to provide to Harley-Davidson upon request evidence of sales tax payment (when such payment is legally required) and such other documentation as is necessary to show that the requirements in the applicable paragraph have been met. For sales into another state, the dealer must also obtain a copy of the title application and/or vehicle registration. If the dealer is unable to provide this documentation, the sale will be automatically considered a non-retail sale.

8. Harley-Davidson will strictly enforce the terms of this policy using all available means. If a dealer sells a motorcycle in an unapproved non-retail sale, records a non-retail sale as a retail sale on the SWR form, or submits false SWR information with respect to a sale or otherwise violates this policy, Harley-Davidson reserves the right to take action it deems appropriate. Such actions could include (1) deduct a like number (and model) of motorcycles from such dealer's current and, in certain circumstances, all subsequent model year SUA's, (2) charge back to the dealer any incentives or allowances credited or paid with respect to such motorcycle, (3) a charge back of internal and external audit and legal expenses to the dealer, and (4) the termination of the dealer's Motorcycle Dealer Contract.

9. Harley-Davidson reserves the right to amend this policy from time to time upon written notice to its dealers. In addition, in extraordinary circumstances, Harley-Davidson may make exceptions to one or more of the requirements set forth in this policy, provided that there are legitimate business reasons for doing so. Any such exception will not be construed as a waiver of such requirements for dealers as a whole.



H-D 1638
Confidential

# Motorcycle Non-Retail Policy – Pleasure Units

2004 MODEL YEAR

## Policy On Various Non-Retail Sales:

Harley-Davidson is concerned about the sale of new motorcycles to non-retail purchasers, including sales outside the United States by domestic dealers and sales in e-commerce. In light of that concern, Harley-Davidson has created a non-retail sales policy to ensure customer satisfaction and safety, facilitate compliance with federal and state law and laws in various foreign countries, and protect the integrity of Harley-Davidson's worldwide distribution network. This policy expands upon and interprets the non-retail sales provision in the Dealer Contract (paragraph B-6). The policy is as follows:

1. As provided in the Dealer Contract, dealers are prohibited from engaging in non-retail sales of motorcycles unless the sale is approved by their respective Director of Field Operations (DFO). A sale by a U.S. dealer of a new or previously unregistered motorcycle will be considered a "non-retail sale" for purposes of the Dealer Contract and this policy if the motorcycle is not properly set up, inspected, tested, sold and delivered at the dealership facility, directly to the ultimate consumer. An "ultimate consumer" is the retail end user who purchases, as indicated on the Certificate of Origin, a new or previously unregistered motorcycle for his or her own use, without the intent to resell, pays all applicable taxes and registration fees, and titles the vehicle in his or her name. Please note that although payment of taxes and registration fees and titling in the customer's name will normally be sufficient evidence of a retail sale, the sale to a customer who the dealer knows, or should know, intends to resell the motorcycle may still be deemed a non-retail sale. A sale by a U.S. dealer of a new or previously unregistered motorcycle will also be considered a non-retail sale if it is sold for use outside the United States or if it is sold on an Internet web site or otherwise in e-commerce. A "sale" in e-commerce occurs if an offer is accepted to sell or buy a motorcycle on-line or via the Internet (e.g. through an Internet auction site). Paragraphs 4, 5, and 6 of this policy provide more guidance on when a motorcycle sale to a business, a lease financing agency or a rental company is considered a non-retail sale. Please note that all approved non-retail sales must

be recorded by the selling dealer on the Sales and Warranty Registration (SWR) form by checking the "Other" box. If no box is checked, the sales will be deemed "Other". Questions concerning the proper classification of any sales should be directed to a dealer's respective DFO. This policy does not apply to sales of special motorcycles to authorized fleets, e.g. police agencies, motorcycle escort companies and Shrine Temples. Such fleet sales are governed by Harley-Davidson's Fleet Sales Policy.

2. Factory incentives and allowances, which are intended to promote dealer retail sales, will not apply to any non-retail sales by domestic dealers. These incentives and allowances include the Vehicle Incentive Performance payment, set-up and pre-delivery allowance, SIP, Co-Op advertising allowance and all rebates, refunds, credits and any other factory incentives and allowances offered from time to time.

3. This policy does not apply to domestic Harley-Davidson dealer transfers. Unless expressly exempted under a specific program, the SWR form must accompany the motorcycle on all dealer-to-dealer transfers, and the wholesaling dealer may not claim credit to the motorcycle under the factory's motorcycle allocation program.

4. Except as otherwise provided in this policy, a sale to a business will be considered a retail sale if the business is the ultimate consumer, the sale is not for resale or eventual brokering of the motorcycle, and the business registers the vehicle in the business entity's name and pays applicable taxes and registration fees. In order to receive retail credit for a sale to a business, a dealer must check the appropriate sale type on the SWR form and collect all sales and other taxes that the business is legally required to pay the dealer.

5. A sale by a U.S. dealer of a new or previously unregistered individual motorcycle to a lease financing agency for use in the United States will be deemed a retail sale only if the motorcycle is properly set up, inspected, tested, sold and delivered at the dealer-



H-D 1639
Confidential

ship facility directly to the lessee, not the leasing company. In addition, the following requirements must also be met: (a) the dealer notifies the DFO of the leasing company's name and address in advance of delivery and supplies the DFO with a copy of the lease and leasing company's license to do business; (b) the DFO is able to confirm that the leasing company is a bonafide entity and approves the lease-type retail sale in writing; and (c) the dealer then records the leasing company's name and the lessee's name and address on the SWR. All appropriate "after the sale" information will be mailed by Harley-Davidson directly to the lessee (i.e., warranty and H.O.G. membership, etc.).

6. Non-dealer "Harley-Davidson Authorized Rentals" operators may purchase, from an authorized Harley-Davidson dealer, units sourced from the Rentals Fleet Pool that are above such dealer's Sales Unit Allocation (SUA). A list of these operators will be maintained by Harley-Davidson in the Rentals Department and will be made available upon request. All sales from the Rentals Fleet Pool to these operators are governed by the Fleet Sales Policy, which includes limits on vehicle availability per dealer and operator. Please refer to the Fleet Sales Policy for details on sales to "Harley-Davidson Authorized Rentals" operators. Dealers may also sell up to five (5) additional motorcycles from their own allocation per rental companies not authorized by Harley-Davidson and to "Harley-Davidson Authorized Rentals" operations. However, any such sale will be deemed a retail sale only if: (a) it is not sourced from the Rentals Fleet Pool, (b) the motorcycle is properly set up, inspected, tested, sold and delivered at the dealership facility directly to the rental company, (c) the dealer notifies Rentals & Tours Department Vehicle Account Representative of the rental company's name and address in advance of delivery and supplies the Vehicle Account Representative with a copy of the company's license to do business, (d) the Vehicle Account Representative is able to confirm that the rental company is a bonafide entity and approves the retail sale in writing, and (e) the motorcycle is supplied from the dealer's SUA. Any motorcycle sale to a rental company not meeting each of these requirements will be considered a non-retail sale. In addition, motorcycle sales to rental companys that exceed the limit of five (5) per rental companys will be considered non-retail sales, regardless of whether these requirements are met.

7. To ensure compliance with this policy, Harley-Davidson reserves the right to audit dealer records as appropriate. Dealers who are audited will be responsible for providing the factory with satisfactory evidence substantiating each claimed retail sale. The dealer should be prepared to provide to Harley-Davidson upon request evidence of sales tax payment (when such payment is legally required) and such other documentation as is necessary to show that the requirements in the applicable paragraph have been met. For sales into another state, the dealer must also obtain a copy of the title application and/or vehicle registration. If the dealer is unable to provide this documentation, the sale will be automatically considered a non-retail sale.

8. Harley-Davidson will strictly enforce the terms of this policy using all available means. If a dealer sells a motorcycle in an unapproved non-retail sale, records a non-retail sale as a retail sale on the SWR form, or submits false SWR information with respect to a sale or otherwise violates this policy, Harley-Davidson reserves the right to take action it deems appropriate. Such actions could include (1) deduct a like number (and model) of motorcycles from such dealer's current and, in certain circumstances, all subsequent model year SUA's, (2) charge back to the dealer any incentives or allowances credited or paid with respect to such motorcycle, (3) a charge back of internal and external audit and legal expenses to the dealer, and (4) the termination of the dealer's Motorcycle Dealer Contract.

9. Harley-Davidson reserves the right to amend this policy from time to time upon written notice to its dealers. In addition, in extraordinary circumstances, Harley-Davidson may make exceptions to one or more of the requirements set forth in this policy, provided that there are legitimate business reasons for doing so. Any such exception will not be construed as a waiver of such requirements for dealers as a whole.



Vehicles • Revised March 2004 • 12

H-D 1640
Confidential

# EXHIBIT 4

Deposition of Jon Robert Flickinger, 4/5/2005

1    ------------------------------------------------------

        UNITED STATES DISTRICT COURT

2
        DISTRICT OF MASSACHUSETTS

3    ------------------------------------------------------

4    CYCLE-CRAFT COMPANY, INC.,
     d/b/a BOSTON HARLEY-DAVIDSON/
5    BUELL,

6            Plaintiffs,

7        vs.                          Case No. 04-11402-NMG

8    HARLEY-DAVIDSON MOTOR COMPANY,
     INC., and BUELL DISTRIBUTION
9    COMPANY, L.L.C.,

10           Defendants.

11   ------------------------------------------------------

12       VIDEO DEPOSITION OF JON ROBERT FLICKINGER

13            Tuesday, April 5, 2005

14                 9:29 a.m.

15                   at

16         GRAMANN REPORTING, LTD.
        710 North Plankinton Avenue, Suite 710
17              Milwaukee, Wisconsin

18

19

20

21

22       Reported by Christine Kovac, RPR

23

24

25

Deposition of Jon Robert Flickinger, 4/5/2005

1        regard, no.

2    Q    How long has -- well, do you want to keep going, Mr.

3        Flickinger?  It's just about one.

4    A    I'm comfortable with whatever you guys want to do.  I

5        would prefer to take a lunch break at some time.

6              MR. REHNQUIST:  I think we all would.

7              MR. BERKOWITZ:  If you're at a good breaking

8        point, I suggest we break.  If you want to wrap it --

9        wrap something up, and then break, that's fine.  But I

10       would like to take a break, you know, sometime in the

11       next 15 or 20 minutes.

12             MR. REHNQUIST:  Let's go another 10 or 15

13       minutes.

14             MR. BERKOWITZ:  Sure.

15   BY MR. REHNQUIST:

16   Q    How long has Harley-Davidson had a Non-retail Sales

17       Policy?

18   A    I believe the policy was developed in the early 1990s

19       -- 1990-ish sometime.

20   Q    Was -- I'm sorry.  Go ahead.

21   A    I don't know for sure if the pol -- if there was a non

22       -- if there's a contractual term prior to that.  I

23       just don't recall or know for sure.

24   Q    What -- what -- what lead to the development -- sorry.

25       Withdraw that.

Deposition of Jon Robert Flickinger, 4/5/2005

1        Why did -- why did Harley-Davidson adopt a

2    Non-retail Sales Policy?

3  A   Um, I guess I should first say, you know, I was not

4    employed by Harley at the time when that policy was

5    developed, so --

6  Q   I understand you're not testifying from personal

7    knowledge here.

8  A   Right.  My understanding is that Harley-Davidson

9    became aware of a number of situations that, um, were

10   causing concern about the -- um, the sale of -- of

11   motorcycles that were either outside the U.S., that

12   were U.S. destined motorcycles sold outside the U.S.,

13   um -- and, um, concerns about the sale of motorcycles

14   to non-retail purchasers, and decided to, um, conduct

15   an -- you know, a study or an evaluation of those

16   issues, and, uh, decided to develop a policy around

17   the -- the sale of motorcycles to -- to respond to

18   those issues.

19  Q   To your understanding was the policy that

20   Harley-Davidson developed based upon a consultant's

21   report and recommendation?

22       MR. BERKOWITZ:  Objection.  You may answer.

23       THE WITNESS:  I don't know if it was based

24   -- I don't think it was based -- in fact, I know it

25   was probably not based soley on that.  Um, I believe

Gramann Reporting, Ltd. (414) 272-7878

Deposition of Jon Robert Flickinger, 4/5/2005

1     allocation system, and, um, we were -- we were

2     experiencing demand that exceeded our ability to

3     supply.  And in as much as we were working to

4     aggressively improve supply, we had to implement an

5     allocation system.  And to maintain the integrity of

6     an allocation system, I think one of the -- one of the

7     reasons for the policy was to ensure that -- that we

8     allocated motorcycles to dealers who were selling them

9     to legitimate retail consumers as opposed to brokers

10    or after-market dealers or overseas or whatever.  So

11    that -- so that all dealers had a fair and balanced

12    playing filed in which they were rewarded with

13    additional allocation.

14         Um, I think one of the -- another reason was

15    that we were interested in developing overseas markets

16    ourselves as opposed to having U.S. dealers develop

17    those for us.  That we might want to set up

18    distribution -- authorized distribution channels that

19    would do a much better job of serving consumers in

20    those international markets than so-called gray market

21    sales would.  Again, trying to keep in mind, you know,

22    the safety of the consumer and the brand value

23    associated with, you know, legitimate dealers who

24    have, you know, made investments in their businesses

25    to conduct the business of selling Harley-Davidson

Deposition of Jon Robert Flickinger, 4/5/2005

1          Um, the --- the various versions of the

2     Non-retail Sales Policy, um -- I mean, there have been

3     changes over the years in that policy, correct?

4   A  Yes.  There have been some changes, yes.

5   Q  How have the different versions of the policy been

6     communicated to -- to dealers?

7   A  Uh, the primary method that we use to communicate the

8     policy is annually we send the dealers their model

9     year pricing, and we attach the policy to the -- to

10    the pricing notification.  That's the primary method

11    in which we distribute the policy.

12  Q  When -- when does -- when is that pricing notification

13    sent out?

14  A  It's typically in June.  Um, and I guess I would say

15    plus or minus a month because it may have been late

16    May, and it might have been on a rare occasion perhaps

17    in early July.  But almost -- most usually in June.

18  Q  And what is that -- what does that pricing

19    notification information consist of?

20  A  Ordering information for the -- for the new model

21    motorcycles, pricing for the motorcycles, um, both the

22    Non-retail Sales Policy, the police and fleet sales

23    policies.

24  Q  Is it communicated by mail?

25  A  Yes, generally it would be by mail.

Deposition of Jon Robert Flickinger, 4/5/2005

1          Again, I think I said there are other methods by
2     which we communicated, but that's the primary method.
3  Q   What are the other methods?
4  A   We included in the annual mailing to dealers of all of
5     our various incentive and policy programs -- there's
6     usually material that goes into a sales support
7     binder.  So it's communicated there.  Um, I believe
8     it's also posted to HD Net on an annual basis.
9  Q   Any other means?
10 A   I'm sure there are other ways we've communicated it,
11    but those are the ones that would be the primary.
12 Q   You're not aware of any others?
13 A   Of any other --
14 Q   Any other means of communicating the policy?
15 A   Of the physical property or -- the policy statement
16    you're talking about?
17 Q   The physical policy.
18 A   Yeah.  Yeah.  I think on occasion I've sent a letter
19    to the -- you know, I may have sent a letter to the
20    dealers where we may have attached the policy, but
21    that's not a routine, ongoing, annual procedure.  I
22    mean, there -- I'm sure there are other ways, but I
23    can't think of any right now that we've communicated.
24        I just don't want you to get the impression that
25    that's the only way we've communicated it because I

Video Deposition of Jon Flickinger, 5/27/2005

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
 2    ------------------------------------------------------
      CYCLE-CRAFT CO., INC. d/b/a
 3    BOSTON HARLEY-DAVIDSON/BUELL,

 4              Plaintiff,

 5              vs.                        Case No. 04-11402-NMG

 6    HARLEY-DAVIDSON MOTOR CO., INC.
      AND BUELL DISTRIBUTION CO., LLC.,
 7
                Defendant.
 8    ------------------------------------------------------

 9

10

11              Video Deposition of JON FLICKINGER

12                  Friday, May 27th, 2005

13                      9:32 a.m.

14                         at

15              Gramann Reporting, LTD
                710 N. Plankinton Ave.
16                  Milwaukee, WI

17

18              Reported by Rose M. Coulthart, RPR

19

20

21

22

23

24

25
```

Video Deposition of Jon Flickinger, 5/27/2005

```
 1          exception in the letter?
 2   A      I think that this is the only exception that he gives
 3          in the letter.
 4   Q      The only reason for the exception that he gives?
 5   A      Correct.  Yes.
 6   Q      Is that a permissible exercise of the DFO's
 7          discretion in your opinion?
 8   A      Only, again, when it -- when it involves a very small
 9          number of units.
10   Q      So you believe -- you believe the DFO does have the
11          discretion to -- to make an exception in the event of
12          a small number of vehicles based on the lack of any
13          intent to sell to a broker?
14   A      Yeah, I would.  Yes.  I guess I would agree with that
15          statement.
16   Q      Can you turn to the letter dated September 22, 2004,
17          which in mine is the sixth letter from the bottom?
18                 MR. BERKOWITZ:  Can you give us the dealer
19          name?
20                 MR. REHNQUIST:  The dealer's name is the
21          Cape Fear dealership, Mr. John Tew?
22                 THE WITNESS:  20794?
23   BY MR. REHNQUIST:
24   Q      Yes.  20794.
25   A      Okay.
```

Video Deposition of Jon Flickinger, 5/27/2005

1      stamped HD20798, you are unable to give an opinion as

2      to whether this was a permissible exercise of the

3      DFO's discretion?

4              THE WITNESS:  I -- I would I guess think

5      what I would say is that I believe that the DFO used

6      appropriate discretion.  I don't know if I would have

7      made the same decision if I had -- if I had all the

8      information that's missing here.

9              But I would say I support the DFO's

10     right to make the decision and that he made the right

11     decision.

12  BY MR. REHNQUIST:

13  Q    Why?  Why is it that you believe this was a

14       permissible exercise of his discretion?

15  A    Because, well, I -- I think because the DFO has

16       the -- had the authority to -- to make the

17       decision and -- and he would have done the proper

18       review and -- and given the proper consideration in

19       making that decision.

20  Q    Well, do you feel the same way about the decision by

21       the DFO to make an exception in the case of seven

22       units in the letter that we just looked at?  I mean

23       that also was a DFO making a decision, wasn't it?

24  A    Yes.  Yeah.  I -- I would trust and believe that the

25       DFO's are doing -- making the best decisions possible

Video Deposition of Jon Flickinger, 5/27/2005

1       in this situation.  I mean in these situations, yes.

2    Q   So you don't have -- in your opinion, it was entirely

3       up to the DFO to decide whether or not to make an

4       exception?

5           MR. BERKOWITZ:  Objection.

6           THE WITNESS:  Again, subject to, you know,

7       the things we talked about that I just -- that I

8       mentioned earlier, there are certain areas where the

9       DFO does have the discretion.  Certainly there would

10      have to be a small number of units involved and some

11      of the other things I mentioned.  Yeah.

12               I think that the DFO was given --

13      given the ability to have that discretion in those

14      situations.

15   BY MR. REHNQUIST:

16   Q   There are three DFO's referenced in this -- in

17      Exhibit 87, Weber, Malicki, and Heichelbech, correct?

18   A   Let me just go through.  I've seen two of those.

19   Q   Let me -- I'll just ask you a question.

20          MR. BERKOWITZ:  Hutchinson is in here.

21          THE WITNESS:  Yeah.  Here's one with Johnny

22      Hutchinson.

23   BY MR. REHNQUIST:

24   Q   You're right.  There are four.

25   A   Let me see if I find others or not.

Video Deposition of Jon Flickinger, 5/27/2005

1   Q   Do you recall any discussion at the staff meetings at

2       which nonretail sales issues were discussed whether

3       there was any discussion regarding the DFO's

4       discretion to make an exception based on a small

5       number of violations of the policy?

6   A   I don't remember specific discussions but I -- and I

7       don't know if they occurred at staff meetings.  But I

8       know we have discussions in the past about the number

9       of units and that it had to be a small number.  I

10      just don't remember the specifics of when those

11      occurred.

12  Q   Do you recall any discussions regarding how small was

13      small for purposes of the DFO's exercise of

14      discretion?

15  A   The number I recall was, you know, ten or so was kind

16      of the number at which we said that there could be

17      discretion.  Ten or below.

18  Q   And that would be discretion to make an exception,

19      correct?

20  A   Correct.

21  Q   As the term is used in the letters in Exhibit 87?

22  A   Yes.

23  Q   Do you have any belief as to why Mr. Barnes or

24      Mr. Evers never exercised their discretion to make an

25      exception between 2000 and 2005?