# EXHIBIT 3

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 2 of 13

4/28/05 DEPOSITION OF JASON MARASCA    RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

```
 1                                          VOLUME 1
 2                                          PAGE:  1-82
 3                                          EXHIBITS: 1-9
 4           UNITED STATES DISTRICT COURT
 5             DISTRICT OF MASSACHUSETTS
 6   CYCLE-CRAFT CO., INC.           ) CIVIL ACTION
 7   D/B/A BOSTON HARLEY-DAVIDSON/BUELL, ) NO. 11402NMG
 8        PLAINTIFF,                  )
 9   v.                               )
10   HARLEY-DAVIDSON MOTOR COMPANY, INC.,)
11   AND BUELL DISTRIBUTION COMPANY, LLC,)
12        DEFENDANTS.                  )
13   _____)
14        DEPOSITION OF JASON MARASCA
15        DATE:   APRIL 28, 2005
16        TIME:   10:06 A.M.
17        PLACE:  BINGHAM MCCUTCHEN
18                150 FEDERAL STREET
19                BOSTON, MA   02110
```

MEDEIROS STENO & VIDEO GROUP

"FOR THE TRAVELING LITIGATOR SINCE 1988"

| | | |
|---|---|---|
| *Boston: | 617.590.9767 | *Depositions |
| *New York: | 646.413.4499 | *Arbitrations |
| *Florida | 305.321.7414 | *E-transcript |
| *E-mail: | depo@gomedeiros.com | *Video |

*MA  *CT  *NJ  *NY  *FL

Case 1:04-cv-11402-NMG    Document 66-4    Filed 10/24/2005    Page 3 of 13

4/28/05 DEPOSITION OF JASON MARASCA    RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

50

1       A:  I don't really remember, no.

2       Q:  Did anyone contact you on behalf of

3  Cycle-Craft at anytime?

4       A:  Cycle-Craft, I believe she called me.

5          MR. BERKOWITZ:  For the record, the

6  witness is pointing at Ms. Smagula.

7          THE WITNESS:  Sorry I couldn't pronounce

8  your last name.

9          MS. SMAGULA:  That's okay.

10      Q:  At some point did Ms. Smagula contact you?

11      A:  Yeah, I believe she left me a message at my

12 home phone.

13      Q:  Did you return the call?

14      A:  No, I didn't.

15      Q:  Do you recall what the message indicated?

16      A:  I believe she was saying that she could,

17 Boston Harley-Davidson would like to represent me in

18 this case.

19      Q:  And by "represent" you was it your

20 understanding that Boston Harley-Davidson's counsel

21 was offering to represent you individually in

22 connection with this deposition?

23      A:  Yeah.

24      Q:  Did you have any further conversations with

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 4 of 13

4/28/05 DEPOSITION OF JASON MARASCA    RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

51

```
 1   Cycle-Craft or its counsel?
 2        A:  No, I did not.
 3        Q:  Did you have any other conversations with
 4   Cycle-Craft personnel on the topic of this
 5   litigation, separate and apart from the deposition?
 6        A:  No.
 7        Q:  What about conversations with persons from
 8   my office, attorneys for Harley-Davidson, did you
 9   have any conversations with those attorneys?
10        A:  Yes.
11        Q:  With whom?
12        A:  With Mr. Benson and Sabita.
13        Q:  Sabita.  Do you recall approximately when
14   the first of these conversations was?
15        A:  Actually, I believe Sean called and had a,
16   Sean got the subpoena first, called me and said that
17   he sees my name on it and I'm going to be going, I'm
18   going to be getting one too, so I called Sabita that
19   day.  Then I got this a day after or two.
20        Q:  Do you remember what was discussed between
21   you and Sabita?
22        A:  She, no it was pretty short.  She was
23   saying that, "You are going to be subpoenaed and
24   you'll be coming in for a deposition."
```

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 5 of 13

4/28/05 DEPOSITION OF JASON MARASCA   RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

52

1    Q: What about your conversation with Mr.
2 Benson, do you recall anything that Mr. Benson said
3 to you or you said to Mr. Benson?
4    A: I believe Mr. Benson called me to remind me
5 about the subpoena and he asked me a couple of
6 questions.
7    Q: Do you remember what he asked you?
8    A: A couple of questions about Lee Custom
9 Cycles. I don't remember the specifics, though.
10    Q: Do you remember, even if you don't remember
11 the specifics, do you remember any topics Mr. Benson
12 asked you about?
13    A: He asked me if I sold the motorcycles to
14 Lee Custom Cycles and I believe that was it. I
15 really don't remember anymore conversation.
16    Q: Do you recall any other conversations that
17 you had with representatives of either Cycle-Craft or
18 Harley-Davidson on the subject of this litigation,
19 apart from what you've already told us?
20    A: No, I don't believe so.
21        MR. BERKOWITZ: Off the record.
22        THE VIDEOGRAPHER: The time is 11:18 a.m.
23 We're now off the record.
24            (Off the Record)

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 6 of 13

4/28/05 DEPOSITION OF JASON MARASCA    RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

58

1    Manager at Kelly's Harley-Davidson?
2        A:   That's correct.
3        Q:   What's the name of the General Manager?
4        A:   Wayne Hathaway.
5        Q:   Does Wayne Hathaway, as far as you
6    understand it, report directly to Brian Kelly?
7        A:   Yes.
8        Q:   Have you had any conversations with either
9    Wayne Hathaway or Brian Kelly about any of your
10   experiences at Boston Harley-Davidson?
11       A:   Yes.
12       Q:   What have you told them about your
13   experiences at Boston Harley-Davidson?
14       A:   That towards the end of my job there I just
15   didn't like working there anymore.
16       Q:   Was that because of Ron Buchbaum?
17       A:   Yes.
18       Q:   Did you tell that to Wayne Hathaway and/or
19   Brian Kelly?
20       A:   To Wayne Hathaway I did, yes.
21       Q:   Have you had any conversations with anyone
22   at Kelly Harley-Davidson, and when I say, I'm not
23   saying the whole name Kelly's World of
24   Harley-Davidson, but if I say Kelly's Harley-Davidson

4/28/05 DEPOSITION OF JASON MARASCA    RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

70

1    A:  I'm not positive.  No.
2    Q:  Have you talked to Sean Walsh in the last
3 48 hours?
4    A:  Yes.
5    Q:  When did you talk to him?
6    A:  Last night.
7    Q:  Did he call you or did you call him?
8    A:  I called him.  He called me back.
9    Q:  Had you guys previously planned to touch
10 base last night so that he could tell you how his
11 deposition went?
12    A:  I think so.
13    Q:  What did he tell you?
14    A:  He said he got out at 2:30.  It was long.
15 We went over a few things and that's pretty much it.
16    Q:  What else did else did he tell you?  Tell
17 me as best you can every single thing that he told
18 you about the deposition?
19    A:  You want ever single thing that he told me?
20       MR. REHNQUIST:  I want every single thing
21 that he told you.
22       THE WITNESS:  Okay.  He told me how it
23 went, that Bill went over a bunch of questions with
24 him.  He answered a bunch of questions about  --

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 8 of 13

4/28/05 DEPOSITION OF JASON MARASCA    RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

71

```
 1        Q:  I'm sorry, when you say "Bill" do you mean,
 2   you gestured over there, I assume you're meaning Mr.
 3   Berkowitz?
 4             MR. BERKOWITZ:  There's two Bills here.
 5             THE WITNESS:  I'm sorry.  Mr. Berkowitz.
 6   And that he was asked about the dealings with the
 7   Florida guy, I'm not sure of the name of the company
 8   that Sean was talking about.  And he mentioned that
 9   he was asked about the Lee Custom Cycles deals and
10   the Lou Winz deals and that my name came up a couple
11   of times about the Lee Custom Cycles deal, but that's
12   pretty much it.  Jamie McGrath's name came up a bunch
13   about a few things and then you asked a bunch of
14   questions and that's pretty much what he said, what
15   we talked about.
16        Q:  What did he tell you about the questions
17   about the Florida situation?
18        A:  We really didn't get involved in that too
19   much because I didn't know anything about the Florida
20   deals so I didn't really ask.
21        Q:  Did he tell you whether there was any
22   questions about Mr. Buchbaum?
23        A:  Yeah, he told me there was questions about
24   Mr. Buchbaum.
```

4/28/05 DEPOSITION OF JASON MARASCA       RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

72

1    Q: What did he say about that?

2    A: He said that there was a question on what
3 kind of manager he was.

4    Q: What did he say about that?

5    A: That he was a micro manager.

6    Q: Did Mr. Walsh tell you that the atmosphere
7 when Mr. Buchbaum was the General Manager was like
8 walking on egg shells?

9    A: Yes he did.

10   Q: And you used that same term today, didn't
11 you?

12   A: I believe I did, yes.

13   Q: What else did he tell you about the
14 questions about Mr. Buchbaum?

15   A: The walking on egg shells thing was what we
16 always talked about at the dealership. Everyone used
17 that term when we worked there together.

18   Q: What else did he tell you about the
19 questions about Mr. Buchbaum?

20   A: Pretty much it. Can't recall.

21   Q: Did you have any discussion with him about
22 the non-retail sales policy?

23   A: Non-retail sales policy.

24        MR. REHNQUIST: And when I say non-retail

MEDEIROS STENO & VIDEO GROUP      FOR THE TRAVELING LITIGATOR    E-MAIL: VIDEOSTENO@GOMEDEIROS.COM
BOSTON: 617.590.9767         NEW YORK/NEW JERSEY: 646.413.4499         FLORIDA: 305.321.7414

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 10 of 13

4/28/05 DEPOSITION OF JASON MARASCA   RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

73

```
 1   sales policy I'm talking about the policy that you
 2   talked about at Kelly's that Mr. Berkowitz and I both
 3   asked you about, the Harley-Davidson policy.
 4           THE WITNESS:  Did we talk about that last
 5   night?
 6           MR. REHNQUIST:  Yes.
 7           THE WITNESS:  I don't believe so.  I was
 8   cooking dinner at the time.
 9       Q:  How long did you talk to him?
10       A:  Twenty minutes.
11       Q:  Did he tell you whether it was better or
12   worse than he had expected it to be?
13       A:  He said it was a lot longer than he
14   expected it was going to be.
15       Q:  Do you plan to call him after you leave
16   here and tell him how yours went?
17       A:  No.  I'll probably see him as soon as I get
18   out of here.  I gotta go to work so I'll see him
19   there.
20       Q:  And I gather you talked to Mr. Walsh one
21   previous time about the subpoena around the time when
22   both you and he were subpoenaed.  Correct?
23       A:  Correct.
24       Q:  Was that the only conversation that you had
```

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 11 of 13

4/28/05 DEPOSITION OF JASON MARASCA    RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

75

```
 1        Q:  Is that a motorcycle dealership?
 2        A:  It sells motorcycles, yeah.
 3        Q:  I gather you think you were unfairly
 4   treated by Mr. Buchbaum?
 5        A:  Yes I was.
 6        Q:  Are you married?
 7        A:  No.  Divorced.
 8        Q:  What's the name of your ex-wife?
 9        A:  Rhonda Young.
10        Q:  Did she work at Boston Harley-Davidson?
11        A:  She did.
12        Q:  Did she get fired?
13        A:  No.
14        Q:  What were her responsibilities?
15        A:  She was the business manager, finance
16   manager.
17        Q:  How long were you married to her?
18        A:  A year, thirteen months.
19        Q:  When was that thirteen month period
20   approximately?
21        A:  (No verbal response).
22        Q:  Do you remember when you got married, the
23   date?
24        A:  Yeah, it was October 13, 2001.
```

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 12 of 13

4/28/05 DEPOSITION OF JASON MARASCA        RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

77

1      A:   Yes.

2      Q:   Prior to being fired had Mr. Buchbaum been
3 critical of your performance in any respect?

4      A:   Always critical.

5      Q:   About what aspects of your performance?

6      A:   My attitude, my looks, the way I walked,
7 the way I talk, the way I sold a bike, the way I ran
8 the Service Department.  He was critical about every
9 aspect.

10     Q:   And I gather this is what led to your
11 decision to seek employment elsewhere?

12     A:   Yes.

13     Q:   So I gather it wasn't a surprise to you
14 when you were fired?

15     A:   He'd always tell me that I was an asset to
16 this company.  At my tenth anniversary I had a party,
17 they had a party for me on my tenth anniversary to
18 say how great I was and then the next day he told me
19 he wanted to send me home because I didn't look good,
20 or I wasn't talking nice, or I wasn't smiling enough.

21     Q:   Are you saying you got some mixed messages
22 from Mr. Buchbaum?

23     A:   Yeah, I think so.  Very mixed.

24     Q:   But he was critical of your performance on

Case 1:04-cv-11402-NMG   Document 66-4   Filed 10/24/2005   Page 13 of 13

4/28/05 DEPOSITION OF JASON MARASCA   RE: CYCLE-CRAFT CO., INC. V. HARLEY-DAVIDSON COMPANY, ET AL.

78

1    a fairly regular basis?
2        A:  Yes.
3            MR. REHNQUIST:  I have no further
4    question.  Thanks.
5            MR. BERKOWITZ:  No questions.  Thank you.
6            THE VIDEOGRAPHER:  The time is 12:02 p.m.
7    and this deposition is now concluded.  This is the
8    end of video cassette number 1.  We're going off the
9    record.
10           (Off the Record at 12:02 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24