United States District Court
District of Massachusetts

|  |  |
|---|---|
| CYCLE-CRAFT CO., INC., d/b/a ) <br> BOSTON HARLEY-DAVIDSON/BUELL ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HARLEY-DAVIDSON MOTOR COMPANY, ) <br> INC. and BUELL DISTRIBUTION ) <br> COMPANY, LLC ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. <br> 04-11402-NMG |

MEMORANDUM & ORDER

GORTON, J.

The underlying case involves the impending termination by defendant Harley-Davidson Motor Co., Inc. ("Harley-Davidson") of its dealer franchise agreement with the plaintiff, Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft"). Currently pending before the Court are the parties' cross-motions for summary judgment.

I. Background

Cycle-Craft has been operating as a dealer and service provider for Harley-Davidson motorcycles since 1959 under a standard dealer franchise agreement ("the franchise agreement"). It also has a franchise agreement with Harley-Davidson's sister

company, defendant Buell Distribution Co., LLC ("Buell"), pursuant to which plaintiff has sold and serviced Buell motorcycles since approximately 1994 (Buell and Harley-Davidson will collectively be referred to herein as "Harley-Davidson"). Harley-Davidson and Buell motorcycles are the sole product lines sold and serviced by Cycle-Craft.

On April 20, 2004, Harley-Davidson sent a "Notification of Dealer Termination" letter to Cycle-Craft indicating that Harley-Davidson and Buell would terminate their franchise agreements with Cycle-Craft 60 days after receipt of the notification. The grounds for termination stated in the letter were that Cycle-Craft had 1) submitted false sales reports and information, 2) sold Harley-Davidson motorcycles to non-retail purchasers and 3) failed to complete and maintain various reports and forms.[1]

On June 18, 2004, Cycle-Craft filed an initial complaint in federal district court alleging that defendants' intended termination of the franchise agreement constituted a violation of Mass. Gen. Laws ch. 93B ("Chapter 93B") which regulates the business practices of motor vehicle manufacturers, distributors and dealers. Jurisdiction is based on diversity of citizenship. The plaintiff sought preliminary and permanent injunctions to

---

[1] Termination of the franchise agreement between Cycle-Craft and Harley-Davidson apparently precipitates the automatic termination of the franchise agreement between Cycle-Craft and Buell.

prevent the terminations as well as a jury trial.

On July 7, 2004, this Court entered an Order approving the parties' stipulation not to terminate the franchise agreements pending resolution of the case on its merits. Accordingly, the plaintiff withdrew its motion for a preliminary injunction.

In their answer to plaintiff's initial complaint, defendants contended that the termination of Cycle-Craft as a dealer was warranted by material breaches of the franchise agreement and therefore did not constitute a violation of Chapter 93B. Thereafter, defendants filed, and the Court allowed, a motion to strike the jury-trial request from plaintiff's complaint on the grounds that Chapter 93B claims are not triable to a jury.

With leave of Court, plaintiff subsequently amended its complaint to add counts for breach of contract and violation of the implied covenant of good faith and fair dealing. Cycle-Craft requested a jury trial with respect to the added counts. Harley-Davidson denies that it breached the franchise agreement or that it violated the covenant of good faith and fair dealing.

Both parties have filed motions for summary judgment. The defendants' motion maintains that summary judgment in their favor is warranted on all three of Cycle-Craft's claims: Chapter 93B, breach of contract and violation of the covenant of good faith and fair dealing. The plaintiff moves for summary judgment only with respect to its Chapter 93B count and only as to the issue of

whether Harley-Davidson has "good cause" to terminate the franchise agreement.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-movant's favor, the Court

determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

#### 1. Chapter 93B

Both parties seek summary judgment with respect to plaintiff's claim under Chapter 93B which imposes liability on motor vehicle manufacturers who "without good cause, in bad faith or in an arbitrary or unconscionable manner ... terminate the franchise agreement of a motor vehicle dealer". Mass. Gen. Laws ch. 93B, § 5(a). "Good cause", under the statute, may be found where

> the motor vehicle dealer failed to comply with or observe a provision of the franchise agreement that is material to the franchise relationship, including without limitation, reasonable sales and service performance criteria and capital, personnel, and facility requirements, which were communicated in writing to the motor vehicle dealer within a reasonable period before the effective date of the termination or nonrenewal, such that a reasonable opportunity to cure was afforded.

Id. at § 5(h). In addition, a judge evaluating whether good cause for termination has been shown must consider "all pertinent circumstances" which may include, among other considerations, the amount of business transacted by the affected dealer, the extent of the dealer's investment under the existing franchise, the effect of termination on the public and the existence of any violations of applicable law or the agreement between the

manufacturer and dealer. Id. at § 5(j).

In this case, Harley-Davidson maintains that there is uncontroverted evidence demonstrating multiple breaches by Cycle-Craft of the franchise agreement and that those breaches warrant termination for good cause. More specifically, defendants assert that Cycle-Craft violated the non-retail sales provision of the franchise agreement and the Non-Retail Sales Policies ("NRSPs") associated therewith by selling motorcycles to businesses in Florida and New Hampshire with knowledge that those motorcycles would then be resold.

In addition, Cycle-Craft is alleged to have violated the franchise agreement by knowingly submitting false reports of customer sales with respect to 1) the non-retail sales described above, 2) alleged sales to Cycle-Craft employees and their relatives that were never actually consummated and 3) sales to seven other individuals that were reported prior to the close of the model year but which actually occurred after the end of that year.

Cycle-Craft, on the other hand, contends that there was no good cause for termination because it did not materially breach the franchise agreement and consideration of other relevant factors implies a lack of good cause to terminate. In particular, Cycle-Craft avers that it did not violate the franchise agreement because 1) Harley-Davidson's NRSPs were not

incorporated into the agreement, 2) all of the sales made by Cycle-Craft were adequately documented by evidence of direct, retail purchases and 3) the sales reports submitted on behalf of Cycle-Craft employees and relatives were based on commitments to purchase which plaintiff believed were sufficient to constitute sales.

Cycle-Craft asserts, in addition, that Harley-Davidson is using the alleged breach of the franchise agreement as a pretext for the real reason it seeks to terminate Cycle-Craft's franchise, namely, that plaintiff has initiated formal protest proceedings under Chapter 93B, § 6, in order to challenge a new dealership that Harley-Davidson proposes to open in the nearby Danvers/Peabody area. Plaintiff also contends that its exemplary record as a franchisee and Harley-Davidson's history of non-enforcement of those terms allegedly breached by plaintiff belie its contention that the intended termination is not arbitrary and is supported by good cause.

Much of the dispute between the parties depends upon whether the NRSPs of Harley-Davidson were contractually binding upon Cycle-Craft. The franchise agreement between the parties contains a merger clause which states, in pertinent part, that

> [n]o modifications, amendments or changes to this Contract, except as otherwise provided herein, shall be valid and binding unless made in writing and signed by both parties ...

The non-retail sales provision of the franchise agreement states

that

> [Cycle-Craft] shall not sell Harley-Davidson Products for resale to non-retail customers other than United States authorized Harley-Davidson dealers. [Harley-Davidson] reserves the right to establish from time to time such policies and position statements it believes are necessary or advisable to carry out the purpose or intent of this part of the Contract.

Cycle-Craft maintains that, pursuant to the merger clause, the NRSPs cannot be binding because they were issued unilaterally by Harley-Davidson and never agreed to by plaintiff. Harley-Davidson responds that the NRSPs were, indeed, incorporated into the franchise agreement by virtue of the non-retail sales provision expressly permitting it to issue policies and position statements effectuating the purpose of that provision.

Harley-Davidson argues that if the NRSPs are not considered part of the franchise agreement, the non-retail sales provision contemplating their issuance is surplusage. On the other hand, Cycle-Craft maintains that if the NRSPs are considered part of the franchise agreement, the merger clause is rendered impotent.

The Court declines to decide at this time whether the NRSPs are incorporated into the franchise agreement because it concludes that the cross-motions for summary judgment on the Chapter 93B claim should be denied notwithstanding the resolution of that issue. Even if the NRSPs are considered part of the franchise agreement, genuine issues of material fact remain with respect to whether good cause for termination has been shown.

y
z

Although defendants have made a strong showing that plaintiff's conduct violated the franchise agreement, there are disputed facts relating to whether plaintiff knew it was selling motorcycles to non-retail purchasers and whether any violations it made were material. Moreover, evidence of Cycle-Craft's long and successful record as a franchisee and of Harley-Davidson's history of non-enforcement of certain franchise agreement provisions provide circumstantial support for plaintiff's claim that there is no good cause for its termination.

### 2.  Breach of Contract

Although it is a closer call, the Court will also deny Harley-Davidson's motion for summary judgment on Cycle-Craft's breach of contract claim against it. The franchise agreement provides that Harley-Davidson may terminate its franchise with Cycle-Craft under several circumstances including, among others:

> if [Cycle-Craft] submits to [Harley-Davidson] any application, claim, report, record or other information which is fraudulent or contains any material misrepresentation by [Cycle-Craft] ... [or]
>
> [if Harley-Davidson] reasonably believes that [Cycle Craft] has failed, refused or neglected to conform [its] conduct ... with the Values of this Contract, [Harley-Davidson's] Mission, ... in a way that may adversely affect the Ownership, operation, management, reputation, business, goodwill or interests of [Cycle-Craft] or [Harley-Davidson], or may impair the goodwill associated with the Trademarks [or]
>
> [in the event of any] [b]reach, violation or failure [by Cycle-Craft] to fulfill any of [its] other responsibilities under this Contract.

The contentions of Cycle-Craft are marginally supported by the evidence. When considered within the framework of summary judgment, genuine issues of material fact exist with respect to the state of mind of Cycle-Craft's representatives when they submitted allegedly false reports to Harley-Davidson. In addition, there is a genuine dispute as to whether any misrepresentations or breaches by plaintiff were material and whether defendant's belief that plaintiff's conduct would adversely affect company interests was objectively reasonable. Consequently, the Court will deny defendants' motion for summary judgment on the breach of contract count.

### 3. Covenant of Good Faith and Fair Dealing

Cycle-Craft's evidence in support of its claim that defendants violated the contractual covenant of good faith and fair dealing is dubious. Plaintiff's principal argument is that Harley-Davidson violated the covenant by offering a pretextual reason for terminating Cycle-Craft's franchise. The only evidence in support of that allegation is highly circumstantial. Nevertheless, because 1) the good faith and fair dealing claim overlaps, to some extent, the issues involved in the Chapter 93B and breach of contract claims and 2) upon viewing the record in plaintiff's favor, it is possible that a jury could find Harley-Davidson liable, the Court will deny defendants' motion for summary judgment on the covenant of good faith and fair dealing

claim.

### ORDER

In accordance with the foregoing,

1) Defendants' Motion for Summary Judgment (Docket No. 39) is DENIED, and

2) Plaintiff's Motion for Summary Judgment (Docket No. 50) is DENIED.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: December 29, 2005