UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
CYCLE-CRAFT CO., INC.                     )
d/b/a BOSTON HARLEY-DAVIDSON/BUELL,       )
                                          )
                   Plaintiff,             )
                                          )    Civil Action
       v.                                 )    No. 04 11402 NMG
                                          )
HARLEY-DAVIDSON MOTOR COMPANY, INC.,      )
and BUELL DISTRIBUTION COMPANY, LLC,      )
                                          )
                   Defendants.            )
_____)

**CYCLE-CRAFT'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
NO. 3 RE: ADMISSIBILITY OF NON-RETAIL SALES POLICY**

Cycle-Craft Co. Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") submits this memorandum in support of its motion in limine to preclude the admission of copies of Harley-Davidson Motor Company, Inc. ("Harley-Davidson")'s unilaterally issued Non-Retail Sales Policy ("NRSP") into evidence.

Harley-Davidson cited only violations of the Harley-Davidson Motor Company Dealer Contract ("Dealer Contract") as the basis for the termination of Cycle-Craft's dealership in the "Notice of Dealer Contract Termination" Letter dated April 20, 2004. The Termination Letter made no reference to any version of the NRSP. Nevertheless, Harley-Davidson now purports to rely on alleged violations of the NRSP to justify the termination. Harley-Davidson should be prohibited from relying on the various versions of the NRSP at trial for several reasons. First, the NRSPs are not incorporated into the Dealer Contract and therefore any violations of their terms cannot serve as the basis for termination of a dealership under Chapter 93B. Second, the doctrine of judicial estoppel

prevents Harley-Davidson from claiming that documents outside the four corners of the Dealer Contract form part of that agreement. Third, because it did not allege any violations of these policies in the Termination Letter, Harley-Davidson cannot now rely on alleged violations of the NRSP as a basis for the termination. In sum, the NRSPs are irrelevant. Even if marginally relevant – for some purpose other than as a basis for the termination decision – the NRSPs should be ruled inadmissible under Federal Rule of Evidence 403(b) as the presentation of this evidence will result in "undue delay" and "waste of time" at trial.

## BACKGROUND

As its title suggests, the Dealer Contract is a standard form Harley-Davidson contract, written by Harley-Davidson, with a blank space for individual dealer information. The Dealer Contract specifically refers to and incorporates another Harley-Davidson form document, the General Conditions, which "are hereby expressly made a part of this Contract and incorporated herein." Exhibit 1 (Dealer Contract) at 2 in Support of Plaintiff Cycle-Craft Co., Inc.'s Opposition to Harley-Davidson's Motion for Summary Judgment ("Pl. Opp.").

The Dealer Contract makes clear that it memorializes the entire agreement between Harley-Davidson and the dealer, and that the obligations set forth in the Contract cannot be informally altered. Section P.8 of the General Conditions, titled "Entire Contract," states "[e]xcept as explicitly agreed in this Contract, Seller has made no promises to Dealer, Dealer Operator or Owner(s) and there are no other agreements or understandings, either written or oral, between the parties affecting this Contract. Except as otherwise provided herein, this Contract supersedes and cancels all previous

2

agreements between the parties that relate to any matters covered herein." Exhibit 2 (General Conditions) of Pl. Opp. at 20. Section P.8 also provides that "[n]o modifications, amendments, or changes to this Contract, except as provided herein, shall be valid and binding unless made in writing and *signed by both parties*." *Id.* (emphasis added).

Although Harley-Davidson, in Section B.6 of the General Conditions, purports to "reserve[] the right to establish from time to time such policies and position statements it believes are necessary" to carry out the "Non-Retail Sales" provision of the Dealer Contract, nothing in Section B.6, or in any other part of the Contract, incorporates or even makes reference to any of the "policies" or "position statements" that are referred to in Section B.6. *Id.* at 3. Instead of seeking dealer assent to, or even acknowledgement of the provisions of the annual version of the 1-2 page, fine-print NRSP, Harley-Davidson's practice is simply to include the document in a voluminous package of documentation sent annually to dealers regarding pricing and other information on the new model year's motorcycles. Exhibit 4 (Flickinger Dep. I) of Pl. Opp. at 118:7-11; 119:4-7. Though Harley-Davidson does not seek the dealer's assent to their terms, the annual NRSPs purport to impose obligations on dealers that are above and beyond those set forth in the Dealer Contract. *See generally* Exhibit 3 (1999-2004 NRSPs) of Pl. Opp.

I.   **The NRSPs Are Not Part of the Dealer Contract.**

The NRSPs on which Harley-Davidson intends to rely at trial are not part of the Dealer Contract, which does not incorporate or even refer to them. Under Massachusetts law, "it is well established that 'incorporation by reference requires that the document to be incorporated be referred to and described in the contract so that the referenced document may be identified beyond doubt.'" *Lowney v. Genrad, Inc.*, 925 F. Supp. 40, 47

3

(D. Mass. 1995) (citations omitted). The NRSPs are not referred to in the Dealer Contract, and certainly are not "identified beyond doubt." Notwithstanding its facility with incorporating other documents into the Dealer Contract – the General Conditions, for example, are "expressly made a part of [the Dealer] Contract and incorporated [into that Contract]" – Harley-Davidson chose not to attempt to do so with the NRSP. In other words, as in *Lowney*, the parties "knew how to incorporate," and the Contract's failure to expressly incorporate the NRSPs is dispositive. *See Lowney*, 925 F.Supp. at 47 (agreement's explicit incorporation of one document shows parties "knew how to incorporate," and incorporation of a different document is unwarranted).

Further, Cycle-Craft cannot be terminated for any alleged breaches of the NRSP, as opposed to violations of the Dealer Contract. Section 5(j)(7) of Chapter 93B speaks of "the existence and materiality of any breaches, defaults or violations by the affected motor vehicle dealer of the terms or provisions of the *existing franchise agreement* or of applicable law." (emphasis added). The provision contains no reference to breaches of extra-contractual "policies," and certainly does not contemplate such a draconian sanction for violation of a unilaterally promulgated policy. An illustrative case is *American Isuzu Motors, Inc. v. New Motor Vehicle Bd.*, 230 Cal. Rptr. 769, 775-77 (Cal. Ct. App. 1986). In *American Isuzu*, the court held that a dealer's failure to provide an exclusive showroom for an automobile manufacturer's products was not good cause for termination because the franchise agreement did not require the dealer to provide an exclusive showroom, and a letter of intent signed by the manufacturer and dealer requiring a separate showroom was not expressly incorporated into the franchise agreement. *Id.* Similarly, a violation of the NRSP, which unlike the letter in *American*

4

*Isuzu* is not even signed by the dealer, cannot serve as good cause for termination because it is not part of the Contract. *G.A. Imports, Inc. v. Subaru Mid-America, Inc.*, 799 F.2d 1200, 1207 (8th Cir. 1986) (upholding district court's finding that even if dealer was in default of the franchise agreement, there was no good cause to terminate because the default was not substantial as it did not damage the distributor or decrease the distributor's future sales).

II.     **The Doctrine of Judicial Estoppel Precludes Harley-Davidson from Arguing That the NRSPs Are Part of Its Contract with Cycle-Craft.**

Harley-Davidson has successfully taken the position in previous dealer litigation that obligations not contained within the four corners of the Harley-Davidson Dealer Contract are not part of that agreement. It is thus estopped from arguing here that the NRSP imposes contractual obligations on Cycle-Craft. In general, "the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant . . . in a prior legal proceeding." *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003). In the First Circuit, "at a minimum, two conditions must be satisfied before judicial estoppel can attach. First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. Second, the responsible party must have succeeded in persuading a court to accept its prior position." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (citations omitted). "Judicial estoppel is invoked to prevent litigants from "playing fast and loose with the courts." *Id.* (citation omitted).

Both conditions are met here. Contrary to its current position, Harley Davidson argued successfully in *Racine Harley-Davidson, Inc. v. Harley Davidson Motor Co.*, 692 N.W.2d 670 (Wis. Ct. App. 2004), that its contractual obligations are governed *only* by

5

LIBA/1691084.2

the four corners of the dealer agreement. Specifically, in connection with a "protest" brought by Racine Harley-Davidson under the Wisconsin analogue of Ch. 93B, § 6, "Harley-Davidson argued that [Racine's] assigned territory was not contained within the four corners of the motor vehicle dealer agreement; therefore, a change in the composition of the assigned territory is not a modification of the dealer agreement." *Id.* at 675. Racine Harley-Davidson had taken the position that a list of zip codes that were to be included in its territory, presented to it by Harley-Davidson when it signed its Dealer Contract, formed part of its agreement with Harley-Davidson, making the transfer of one of Racine's zip codes to another dealer a modification of the dealership agreement. *See id.* at 673, 675. The Wisconsin Division of Hearing and Appeals granted summary judgment in favor of Harley-Davidson on this issue, a decision that was reversed by the circuit court but later upheld by the court of appeals. *See id.* at 680. Given Harley-Davidson's previous success in arguing that obligations under the Dealer Contract are limited to those contained within the four corners of the document, Harley-Davidson is estopped from arguing that the NRSP is part of its agreement with Cycle-Craft.

III.   **Harley-Davidson Waived the Opportunity to Rely on Alleged Violations of the NRSP to Justify the Termination.**

Harley-Davidson has also waived any right to argue that its termination can be defended by an alleged violation of the NRSP. The NRSP was not mentioned in the termination letter, which only cited alleged violations of the non-retail provision in the General Conditions. Mass. Gen. Laws Ch. 93B, the operative statute in this litigation, requires that a termination notice provide "the specific grounds for such termination," *id.* § 5(b), and courts construing similar language in analogous statutes have precluded manufacturers from defending terminations on grounds not set forth in the notices. *See,*

6

*e.g., Bronx Auto Mall, Inc. v. American Honda Motor Co., Inc.*, 934 F. Supp. 596, 610-11 (S.D.N.Y. 1996). *See also* Cycle-Craft's Memorandum in Support of Motion in Limine No. 2 Re: Grounds Not Cited in Notice of Termination.

IV.     **The NRSPs Are Inadmissible Under Fed. R. Evid. 403**

Finally, this Court should preclude admission of the NRSPs in order to prevent undue delay and waste of time at trial. Rule 403 of the Federal Rules of Evidence provides that "evidence may be excluded if its probative value is substantially outweighed . . . by considerations of undue delay [and] waste of time . . . ." Harley-Davidson first introduced a version of the NRSP in the early 1990s and the language contained in the annually issued versions of the NRSP has undergone significant changes over the last fifteen years. Consequently, if the NRSP is admitted, upwards of ten different versions of the NRSP will need to be considered by the jury and time will need to be dedicated to testimony regarding, among other issues, how the NRSP came into existence, how the NRSP evolved over time, how the annual versions of the NRSP are distributed to dealers, and what kind of guidance is given to dealers on the NRSP.

Testimony on such topics will further protract what is already scheduled to be a two-week trial. Given that the ultimate questions in this case are whether Harley-Davidson had "good cause" for terminating the Dealer Contract, whether the termination was "in bad faith," whether Harley-Davidson breached the Dealer Contract, and whether Harley-Davidson breached the implied covenant of good faith and fair dealing, evidence related to the NRSPs will not assist the fact-finder in reaching a decision. Because evidence concerning the NRSPs will result in an unnecessary expenditure of time and resources, such evidence should be ruled inadmissible.

## CONCLUSION

For the foregoing reasons, Cycle-Craft requests that the Court preclude the admission of the NRSPs into evidence.

Respectfully submitted,

CYCLE-CRAFT CO., INC.

By its attorneys,

\_\_\_/s/ James C. Rehnquist_____
James C. Rehnquist (BBO# 552602)
Christopher C. Nee (BBO# 651472)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

April 28, 2006

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 28, 2006.

_____/s/ Christopher C. Nee_____