UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
CYCLE-CRAFT CO., INC.                     )
d/b/a BOSTON HARLEY-DAVIDSON/BUELL,       )
                                          )
                    Plaintiff,            )
                                          )    Civil Action
          v.                              )    No. 04 11402 NMG
                                          )
HARLEY-DAVIDSON MOTOR COMPANY, INC.,      )
and BUELL DISTRIBUTION COMPANY, LLC,      )
                                          )
                    Defendants.           )
_____)

**CYCLE-CRAFT'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
NO. 2 RE: GROUNDS NOT CITED IN NOTICE OF TERMINATION**

Cycle-Craft Co. Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") submits this memorandum in support of its motion in limine for an order precluding the Harley-Davidson Motor Company, Inc. ("Harley-Davidson") from introducing at trial evidence not cited in its Notice of Termination Dealer Contract Letter, dated April 20, 2004 ("Termination Letter"), in an attempt to prove that the termination of Cycle-Craft's Dealer Contract was for "good cause."  Allowing Harley-Davidson to introduce such evidence would permit it to avoid the dictate of Chapter 93B requiring a manufacturer to state the "specific grounds" for the termination of a dealership in its notice of termination.  Further, evidence of motorcycle sales allegedly made in violation of Harley-Davidson's Dealer Contract discovered after the notice of termination was sent, is wholly irrelevant to the central issues in this case – whether the termination was for "good cause" or whether it was "in bad faith, arbitrary or unconscionable manner."

LIBA/1691640.3

In Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, Harley-Davidson relied on information about motorcycle sales that was not cited in the Termination Letter[1] in arguing that the termination of Cycle-Craft's Dealer Contract was for "good cause."  *See id.* at 13-15, 18-19.  Harley-Davidson also apparently intends to offer evidence of Cycle-Craft's financial situation during 2002 and 2003 in support of its case at trial as its proposed exhibit list identifies documents such as Cycle-Craft's financial statements and tax returns.  Harley-Davidson must be prohibited from relying on evidence related to these additional motorcycle sales at trial, or any other evidence not cited in the Termination Letter, because allowing such information into evidence would permit Harley-Davidson to evade the protections granted to dealers under Mass. Gen. Laws Ch. 93B.  *See Beard Motors, Inc. v. Toyota Motor Distrib., Inc.*, 395 Mass. 428, 432 (1985) (noting the statute "was enacted in recognition of the potentially oppressive power of automobile manufacturers and distributors in relation to their affiliated dealers").  Section 5(b) of Chapter 93B requires that a manufacturer "send notice to a motor vehicle in writing of the termination of the franchise agreement of the dealer at least 60 days before the effective date thereof, *stating the specific grounds for such termination . . . .*" (emphasis added).  Because Chapter 93B limits the grounds that Harley-Davidson can rely on to justify the termination of Cycle-Craft to those identified in the Termination Letter, Harley-Davidson cannot attempt to justify the termination at

---

[1] The Termination Letter, dated April 20, 2004, "incorporate[s] by reference" another letter, the Inspection of Records Letter, which was also dated April 20, 2004.  *See* Exh. 26 (Termination Letter) in Support of Plaintiff Cycle-Craft's Opposition to Harley-Davidson's Motion for Summary Judgment.  In the Inspection of Records Letter, Harley-Davidson identifies the specific motorcycle sales that it believes were made in violation of the Dealer Contract.  *See* Exh. 14 (Inspection Letter) in Support of Plaintiff Cycle-Craft's Opposition to Harley-Davidson's Motion for Summary Judgment.

LIBA/1691640.3

trial with "newly discovered" evidence or information that it was previously aware of but did not cite in the Termination Letter.

Courts construing similar language in analogous statutes have precluded manufacturers from defending terminations on grounds not set forth in the notices.  *See, e.g., Bronx Auto Mall, Inc. v. American Honda Motor Co., Inc.*, 934 F. Supp. 596, 610-11 (S.D.N.Y. 1996) (citing numerous cases).  In *Bronx Auto Mall, Inc.*, the court considered whether a manufacturer's non-renewal of a franchise agreement would have been legal under New York law if "openly taken for the reasons that primarily motivated it" and concluded that the question was "academic" given the posture of the case.  *Id.* at 610.  Specifically,  based on language in the relevant New York statute – which largely mirrors the operative language in Chapter 93B – requiring that a termination notice state "the *specific grounds* for such . . . refusal to renew," the court ruled that "[i]nasmuch as the notice relied upon by [the automobile distributor] did not state the principal reasons for [the automobile distributor's] decisions, the non-renewal cannot be justified on those grounds even if they would have supported the termination had they been adduced."  *Id.* (emphasis added).  Likewise, under the edict of Chapter 93B, Harley-Davidson cannot now attempt to justify the termination of Cycle-Craft on grounds not set forth in the Termination Letter, even if those grounds "would have supported the termination had they been adduced."

To permit Harley-Davidson to raise grounds not specified in the Termination Letter at trial would be to deny Cycle-Craft the notice it is guaranteed under the protections of Chapter 93B.  Given the "potentially oppressive power of automobile manufacturers and distributors in relation to their affiliated dealers," *see Beard Motors,*

3

*Inc.*, 395 Mass. at 432, the Massachusetts legislature enacted particular procedures that manufacturers must follow in terminating franchise agreements with dealers, including the requirement that a notice of termination cite the "specific grounds" for such termination. This Court must prohibit Harley-Davidson from relying on evidence not cited in the Termination Letter in order to give effect to the legislature's policy decision. *See Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 421 F. Supp. 237, 246 n.19 (D.N.J. 1976) (ruling that "it is more consistent with the statutory language and *policy* to prohibit the assertion of additional reasons subsequent to the notice of termination" based on language in New Jersey Franchise Practices Act "requir[ing] that 'all reasons for such termination' be set forth in the notice of termination") (emphasis added). To conclude otherwise would permit a manufacturer to defend a baseless termination decision with evidence unearthed solely in discovery. This cannot have been the result the Massachusetts legislature intended when it enacted Chapter 93B to counterbalance the "potentially oppressive power of automobile manufacturers." Harley-Davidson has forfeited the opportunity to rely on any reasons that were not cited in the Termination Letter to justify the termination.

Further, these additional sales are wholly irrelevant to Harley-Davidson's position that the termination decision was supported by good cause. As Harley-Davidson concedes, it did not view these sales as problematic until sometime in late 2004 or 2005, and only after discovery in this case began, *see* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment at 13-14. Therefore, these sales cannot shed any light on Harley-Davidson's state of mind in April 2004, when it made the decision to terminate Cycle-Craft's Dealer Contract. Section 5(a) of Mass. Gen. Laws

4

Ch. 93B prohibits a manufacturer from terminating a dealer's franchise agreement "without good cause, in bad faith or in an arbitrary or unconscionable manner." One of Cycle-Craft's claims in this case is that the termination was "in bad faith" and that Harley-Davidson's justification for the termination is a pretext for its true motivation. A decision regarding Harley-Davidson's true motivation, and whether the decision was for "good cause" or in "bad faith," will require an inquiry into Harley-Davidson's state of mind. The newly questioned motorcycle sales are irrelevant to Harley-Davidson's state of mind or motivation in terminating Cycle-Craft in 2004. Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." As evidence related to the "newly discovered" motorcycle sales is irrelevant to the questions before the Court, Harley-Davidson should be precluded from presenting evidence related to the sales at trial.

LIBA/1691640.3

## CONCLUSION

For the foregoing reasons, Cycle-Craft requests that the Court prohibit Harley-Davidson from offering evidence at trial not cited in the Termination Letter to justify the termination.

Respectfully submitted,

CYCLE-CRAFT CO., INC.

By its attorneys,

____/s/ James C. Rehnquist____
James C. Rehnquist (BBO# 552602)
Christopher C. Nee (BBO# 651472)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

April 28, 2006

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 28, 2006.

/s/ Christopher C. Nee