UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYCLE-CRAFT CO., INC.<br>d/b/a BOSTON HARLEY-DAVIDSON/BUELL,<br><br>                      Plaintiff,<br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY, INC.<br>and BUELL DISTRIBUTION COMPANY, LLC,<br><br>                      Defendants. | CIVIL ACTION<br>NO. 04 11402 NMG |

**DEFENDANT HARLEY-DAVIDSON'S OPPOSITION TO
CYCLE-CRAFT'S MOTION IN LIMINE NO.1 TO PRECLUDE
ADMISSION OF PRIOR CONVICTION AND DEFERRED ADJUDICATION**

The defendants, Harley-Davidson Motor Company, Inc. and Buell Distribution Company, LLC (collectively, "Harley-Davidson") hereby oppose the Motion *in Limine* of plaintiff, Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") to Preclude Admission of Prior Conviction and Deferred Adjudication and in support thereof states as follows:

### I.    INTRODUCTION

1. In early 2003, John Atwood, Cycle-Craft's president, hired Ronald Buchbaum ("Buchbaum") and placed him in a management position despite his knowledge of Buchbaum's criminal record involving crimes of theft, dishonesty, and false statements. At trial, Harley-Davidson expects to present evidence that Buchbaum, shortly after being hired as Cycle-Craft's general manager, was the central actor in plaintiff's scheme to make non-retail sales and submit false reports in violation of its Dealer Agreement. The evidence will demonstrate that Buchbaum either caused, authorized, and/or oversaw these fraudulent sales to secure Cycle-Craft's allocation of new motorcycles to which it was not entitled.

2.  Buchbaum is expected to testify regarding Cycle-Craft's operations, his knowledge of the Dealer Agreement, and the non-retail sales and false sales reporting at issue in this case. Harley-Davidson also expects that Buchbaum will testify that the wholesaling of motorcycles and false sales reports were the acts of individual members of the Cycle-Craft sales force and will attempt to attack the character of those individuals.

3.  There is no dispute that Buchbaum is a central witness in this case and the credibility of his testimony will be an important issue.

## II.   BUCHBAUM'S CRIMINAL HISTORY

4.  The crimes at issue are extremely important for impeachment purposes since they involve dishonesty, false statements, and theft. On May 23, 1991, Buchbaum was sentenced to 5-years of probation for the crime of "theft of property of the value of $20,000 or more, a second degree felony," after he pled guilty. Harley-Davidson is not seeking to introduce evidence of Buchbaum's guilty plea in this case.

5.  On August 13, 1991, Buchbaum fraudulently transferred the sum of $42,247.72 to the Dallas County Adult Probation Department to pay the balance of his restitution from his 1991 guilty plea. Buchbaum fraudulently concealed these assets from the bankruptcy trustee overseeing the Chapter 7 petition that Buchbaum had filed on August 8, 1991. Immediately after the fraudulent transfer to the Dallas County Adult Probation Department (a violation of Buchbaum's probation terms), Buchbaum caused a Motion to Release Defendant from Probation to be filed in the District Court of Dallas County, Texas falsely representing that (i) he intends to remain a peaceful and law abiding citizen of the community; and (ii) he has complied with the conditions of his probation in every regard. Given his August 13, 1991 fraudulent transfer, the statements made in his motion to be released from probation were false.

6.  On July 28, 1995, Buchbaum was convicted for his fraudulent transfer and concealment of property from the bankruptcy trustee and creditors, after he plead guilty to knowingly and fraudulently concealing over $42,000 in assets and submitting sworn false statements to the court.

7.  This conviction and history of false statements go directly to the issue of Buchbaum's credibility on the witness stand. Further, Buchbaum is not a defendant -- criminal or otherwise -- in this action, and Cycle-Craft hired Buchbaum despite knowing of his criminal history. Therefore, the prejudicial effect of his criminal record is minimal. Given the centrality of Buchbaum as a witness in this action, and the importance of a proper assessment of his credibility, and the limited prejudice with their inclusion, the probative value of the criminal record substantially outweighs its prejudicial effect.

### III.  ARGUMENT

8.  The plaintiff seeks to preclude any mention of Buchbaum's prior convictions arguing that they are over 10-years old. Yet, Federal Rule of Evidence 609(b) provides a balancing test for admitting convictions over 10 years old for the purposes of impeachment. The Rule provides that:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction . . . *unless* the court determines, in the interests of justice, **that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.** (emphasis added).

Courts consider a number of factors in making the determination, including:

1) the impeachment value of the prior crime;
2) the date of the conviction and the witness's subsequent history;
3) the degree of similarity between the past crime and the charged crime;
4) the importance of the witness's testimony; and
5) the centrality of the credibility issue.

Weinstein's Federal Evidence, 609.06[1]; *see also United States v. Pritchard*, 973 F.2d 905, 909 (11th Cir. 1992). Contrary to the plaintiff's assertion, the probative value of the convictions at issue substantially outweighs any prejudicial effect.

A.  **The Impeachment Value of Buchbaum's Conviction and the Importance of His Testimony Favors Admission**

9. As noted above, Buchbaum pled guilty to knowingly and fraudulently concealing over $42,000 of property from the bankruptcy trustee and creditors through submitting a false sworn statement to the court. Because it is undisputed that the 1995 conviction is a crime involving dishonesty and false statement, it would have been automatically entered into evidence if it had occurred within ten years. *See United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998) (making a sworn false statement to the government "is obviously a crime of false statement and dishonesty"). If under ten years old, then the conviction would automatically be admitted under Fed. R. Evid. 609(a)(2). *See Shubert v. B.P. Exploration & Oil Co.*, 1993 WL 534144 *1 (E.D. La. Dec. 13, 1993) (convictions over ten years old involved crimes of dishonesty and false statement and "absent the ten-year limitation, a court would have no discretion and would be required to admit evidence of a forgery conviction."); *United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998) (the convictions at issue involved dishonesty and false statement which bore on the consideration to admit).

10. Because crimes involving dishonesty and false statement bear directly on the credibility of a witness' testimony, they have a high impeachment value. *See Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) ("making a false statement to a government agency is a crime akin to perjury, and . . . therefore bore heavily on his credibility."); *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (impeachment value of a fraud conviction is high).

11. Although credibility is an issue in every case, given Buchbaum's centrality to the issues before the court, Buchbaum's credibility will be especially critical. As the general manager of Cycle-Craft, Buchbaum directly oversaw, controlled, and perpetrated the actions at issue in this case. Harley-Davidson expects to demonstrate that Buchbaum attempted to defraud and did defraud Harley-Davidson through, among other things, the use of sham buyers and false reports of retail sales. Since this trial revolves around the actions of Buchbaum, in determining

whether the jury believes Buchbaum's testimony at trial, the jury is entitled to consider his prior conviction for dishonesty and submitting false statements to a court. *See United States v. Payton*, 159 F.3d at 57-8 (finding credibility crucial where witness testifying in contradiction to government's witness on key element of the case); *Shubert*, 1993 WL 534144 *1 (convictions admitted where witness' credibility crucial element of the action); *Zinman*, 983 F.2d. at 434 ("court recognized that the jury's assessment of [plaintiff's] credibility was highly relevant to several disputed issues in the case").

12.     Further, the need for this conviction is substantial as there are no other convictions within the past ten years with which to impeach Buchbaum. *See Pritchard*, 973 F.2d at 909 ("government's need was substantial. [Defendant] had no convictions within the ten years before the trial; the burglary conviction was not merely cumulative of other impeachment evidence.").

13.     The prejudice to the plaintiff regarding the use of Buchbaum's conviction is minimal. Buchbaum is not the defendant in this case, nor is this a criminal trial where his rights are at stake. *See United States v. Thomas*, 914 F.2d 139, 143 (8th Cir. 1990) (admitting evidence of 1972 conviction for possession of heroin with intent to distribute and noting that "the risk of unfair prejudice was minimal because [the witness] was not the defendant.").

14.     The date of Buchbaum's conviction also weighs in favor of admittance as it is less than eleven years old. Courts have commonly allowed the use of convictions for impeachment that are much older than the one at issue in this action. *See United States v. Brown*, 603 F.2d 1022, 1028-9 (1st Cir. 1979) (admitted conviction for burglary and petty larceny 12 to 16 years); *United States v. Payton*, 159 F.3d 49, 57-58 (2d Cir. 1998) (admitted 13 year old conviction for making an intentionally false statement under oath and larceny); *Zinman*, 983 F.2d at 435 (admitted 17 year old conviction for Medicare fraud); *Shubert*, 1993 WL 534144 at *1 (admitted 1964 conviction for forgery of check).

B.    **Atwood's Hiring of a General Manager With a Criminal Background Is Independently Relevant.**

15.    It is undisputed that John Atwood, Cycle-Craft's president, hired Buchbaum as general manager with knowledge of his criminal history. Specifically, Mr. Atwood testified at his deposition as follows:

> Q. When Ron Buchbaum was hired, did you give him responsibility for running the day-to-day operations of the dealership?
>
> A. Yes.
>
> . . .
>
> Q. Did he tell you that he had two convictions down in Texas?
>
> A. Yes. See, that was the good part. I didn't have to ask him. He just told me.
>
> Q. Did he tell you that the convictions were for insurance fraud and bankruptcy fraud or words to that effect?
>
> A. Words to that effect.
>
> Q. Did he tell you that he had been charged with a crime in Michigan?
>
> A. Yes.

Deposition of John Atwood at 37:13-37:16 and 49:1-49:11, which are attached hereto as <u>Exhibit A</u>.

16.    Mr. Buchbaum's qualifications as General Manager and Mr. Atwood's decision to place the management of his dealership in the hands of an individual who had previously been convicted of a crime involving fraud are independently relevant under Chapter 93B, Section § 5(j)(5) ("whether the affected motor vehicle dealer has . . . qualified personnel to reasonably provide for the needs of the customers . . .") and is a "pertinent" circumstance that the Court should consider in its good cause analysis.

WHEREFORE, for all the above-stated reasons, Harley-Davidson respectfully requests that the Court deny the plaintiff's Motion *in Limine* and allow the admission of Ron Buchbaum's criminal history into evidence under Fed. R. Evid. 609(a) and (b).

**Harley-Davidson Motor Company, Inc., and Buell Distribution Company, LLC**

By their attorneys,

   /s/ William F. Benson
William N. Berkowitz, BBO# 544148
William F. Benson, BBO# 646808
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
Ph: (617) 951-8000
Fx: (617) 951-8736

Dated: May 5 2006