UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYCLE-CRAFT CO., INC. <br> d/b/a BOSTON HARLEY-DAVIDSON/BUELL, <br><br> Plaintiff, <br><br> v. <br><br> HARLEY-DAVIDSON MOTOR COMPANY, INC. <br> and BUELL DISTRIBUTION COMPANY, LLC, <br><br> Defendants. | CIVIL ACTION <br> NO. 04 11402 NMG |

**DEFENDANTS' OPPOSITION TO CYCLE-CRAFT'S MOTION IN LIMINE
NO. 3 RE: ADMISSIBILITY OF NON-RETAIL SALES POLICY**

Plaintiff Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") seeks to exclude defendants, Harley-Davidson Motor Company, Inc. and Buell Distribution Company, LLC (collectively, "Harley-Davidson") from admitting its Non-Retail Sales Policy ("NRSP") into evidence. Cycle-Craft asserts the same arguments that it made as part of its summary judgment motion. On December 29, 2005, after considering this argument, the Court "decline[d] at th[at] time to decide whether the NRSPs are incorporated into the franchise agreement . . ." Nothing has changed since the summary judgment stage. Accordingly, as set forth in more detail below, because the NRSPs are part of the Dealer Agreement and are otherwise relevant to the central issue in this case, namely whether Harley-Davidson has good cause for termination based upon the dealer's alleged submission of false sales reports, plaintiff's motion should be denied.

## Brief Background

On or about September 19, 2000, Harley-Davidson and the plaintiff entered into a Harley-Davidson Motor Company Motorcycle Dealer Contract (the "Dealer Agreement").[1] Under the terms of this contract, a dealer becomes authorized to purchase new Harley-Davidson motorcycles and to resell them to retail (i.e., end-user) customers; however, sales to persons other than retail customers (e.g., wholesalers, brokers, unauthorized bike shops) are expressly prohibited. Specifically, Section B(6) of the Dealer Agreement provides:

> Dealer shall not sell Harley-Davidson Products for resale to non-retail customers other than United States authorized Harley-Davidson dealers. Seller [Harley-Davidson] reserves the right to establish from time to time such policies and position statements it believes are necessary or advisable to carry out the purpose or intent of this part of the Contract.

Under this section, as a matter of business practice and course of dealing, Harley-Davidson has issued NRSPs to its dealers on an annual basis. There is no dispute that Cycle-Craft was aware of the NRSPs and received copies of the NRSPs. Indeed, Cycle-Craft has previously stated to this Court, under oath, that it evaluated each sale at issue in this case under the criteria set forth in the NRSP, and -- after this review -- still claimed that each motorcycle at issue in this case was purchased by an individual. *See* Declaration of Kenneth McPhee, ¶6 ("In point of fact, according to the criteria set out in the <u>Harley-Davidson non-retail sales policy, by which I and my</u>

---

[1] A copy of the Dealer Agreement is attached at Tab A to the Appendix ("App.") Submitted in Support of Harley-Davidson's Motion for Summary Judgment, which was filed on August 12, 2005 (Docket Entry No. 41).

staff evaluate each and every motorcycle purchase, each of these motorcycles was purchased by an individual.") (emphasis added).[2]

As set forth in the 2003 NRSP, the policy is designed to "ensure customer satisfaction and safety, facilitate compliance with federal and state law and laws in various foreign countries, maintain Harley-Davidson's competitive position and protect the integrity of Harley-Davidson's worldwide distribution network."[3] Among other things, by prohibiting Harley-Davidson dealers from selling motorcycles to resellers and by requiring dealers to submit the names and addresses of the retail customers to whom they sell motorcycles, Harley-Davidson can better (i) assure that consumers are receiving proper guidance, instructions and orientation with respect to the safe operation of its motorcycles; (ii) allocate and distribute its products to those geographic areas and dealers where they are most needed, (iii) notify customers in case of a safety recall, (iv) assure the property warranty period for its motorcycles, and (v) comply with federal law.

## Argument

I. **NRSPs Are Part of the Dealer Agreement**

As noted above, the second sentence of Section B(6) of the Dealer Agreement provides that "Seller [Harley-Davidson] reserves the right to establish from time to time such policies and position statements it believes are necessary or advisable to

---

[2] The Declaration of Kenneth McPhee was filed with the Court on or about June 21, 2004 in support of Cycle-Craft's Motion for Preliminary Injunction (Docket Entry No. 8).

[3] A copy of the 2003 NRSP is included in Harley Davidson's App. at Tab E (Docket Entry No. 41).

LITDOCS/639089.1

carry out the purpose or intent of this part of this Contract." There is no dispute that Cycle-Craft agreed to this contractual provision. Nonetheless, although the NRSPs issued by Harley-Davidson plainly state that "[a]s provided in the Dealer Contract, dealers are prohibited from engaging in non-retail sales of motorcycles," Cycle-Craft asserts that the NRSPs are not part of the contract.

In sum, Cycle-Craft argues that even though it contractually agreed that Harley-Davidson could establish NRSPs, Cycle-Craft is free to disregard them upon their actual issuance. Cycle-Craft's interpretation would eviscerate a core provision of the contract and runs afoul of the well-established principle that Courts are to avoid constructions that render terms or phrases meaningless. *See Summit Packaging Systems, Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001) ("basic principle of contract law that constructions that render contract terms meaningless should be avoided"); *Systemized of New England, Inc. v. SCM, Inc.*, 732 F.2d 1030, 1034 (1st Cir. 1984) ("court must favor interpretations which give meaning and effect to every part of a contract and reject those which reduce words to mere surplusage"); *Lexington Ins. Co. v. All Regions Chemical Labs, Inc.*, 419 Mass. 712, 713 (1995) ("A contract should be construed in such a way that no word or phrase is made meaningless by interpreting another word or phrase").

*Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16 (1st Cir. 2001) is instructive on this issue. In *Providence Journal*, the contract at issue provided "employees with the right to purchase discount parking passes" but was "silent on what benefits accrue to the holder of a parking pass." *Id.* at 21. The Court held that "[p]lain language would seem to dictate that a parking pass entitles one to actually park. Otherwise, the right to purchase a discounted parking pass would be completely meaningless." *Id.* Similarly, here, the plain language of Section B(6) provides Harley-Davidson with the right to issue NRSPs and this contractual right

- 4 -

would be rendered meaningless if Cycle-Craft and other Harley-Davidson dealers were free to ignore these policies. Indeed, it would make no sense that Harley-Davidson expressly reserved the right to issue these policies but they would have no actual force and effect upon their issuance. Such an interpretation would improperly render a portion of Section B(6) meaningless. *See id.* ("It makes little sense that the parties bargained for parking passes that did not provide parking . . . it is a basic principle of contract law that construction which render contract terms meaningless should be avoided"). Thus, pursuant to ordinary principles of contractual interpretation, the NRSPs should be considered incorporated by reference into the Dealer Agreement.[4]

## II. Harley-Davidson Did Not Waive the Opportunity to Rely On the NRSP to Justify Termination.

Harley-Davidson's termination is premised on (i) Cycle-Craft's falsification of sales reports and (ii) Cycle-Craft's violation of the Dealer Agreement's prohibition on non-retail sales. *See* October 20, 2004 Notice of Termination

---

[4] Contrary to Cycle-Craft's argument, the doctrine of judicial estoppel is not applicable. Harley-Davidson is not "pressing a claim that is inconsistent with a position taken by [Harley-Davidson] either in a prior legal proceeding or in an earlier phase of the same legal proceeding." *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003). Here, Harley-Davidson asserts that the NRSP is part of the Dealer Agreement, which is not inconsistent with the position set forth in *Racine Harley-Davidson, Inc. v. Harley Davidson Motor Co.*, 692 N.W.2d 670 (Wis.Ct.App. 2004). In *Racine*, Harley-Davidson argued that a dealer's assigned territory is not part of the Dealer Agreement because the Dealer Agreement provided Harley-Davidson with the contractual right at any time to modify, alter or adjust a dealer's assigned territory. *Id.*, at 674-75. In any event, *Racine* did not even involve the NRSP.

("NOT").[5] The NOT specifically states, among other things, that "[b]y falsifying its sales reports to Harley-Davidson, Cycle-Craft has plainly failed to cooperate in the provision of this information, and has otherwise violated Section F.7 of the General Conditions and related Harley-Davidson policies concerning the proper completion of Sales and Warranty Registration Forms." (emphasis added). Accordingly, Cycle-Craft was aware that its violation of the Dealer Agreement, including the NRSPs, was grounds for termination. Harley-Davidson did not waive its right to rely on a violation of the NRSP as a ground for termination. Indeed, as set forth in the 2003 NRSP, which is part of the Dealer Agreement, Harley-Davidson reserved the right to terminate a dealer's Motorcycle Dealer Contract for failing to comply with this policy.

### III. The NRSPs Are Relevant to the Issues in this Case and their Admission Will Not Cause Undue Delay or Waste Time at Trial.

This case is about Cycle-Craft's false motorcycle sales, its reporting of those sales to Harley-Davidson, and whether those purported sales violated the Dealer Agreement. Even if this Court were to determine that the NRSPs are not part of the Dealer Agreement, which it should not, they certainly are relevant to what Harley-Davidson considers to be unacceptable conduct, what conduct violates the Dealer Agreement, and the guidance provided by Harley-Davidson to Cycle-Craft on this topic. This case is not strictly a breach of contract case; rather the central issue is whether Harley-Davidson has good cause for termination. The dealer's failure to abide by the manufacturer's reasonable policies -- specifically referenced in the

---

[5] A copy of the NOT is included in Harley-Davidson's App. at Tab S (Docket No. 41).

LITDOCS/639089.1

parties' contract -- are certainly germane to whether there is good cause for termination. Finally, as noted above, because the Dealer Agreement specifically provides Harley-Davidson with the right to issue such policies, Harley-Davidson should be permitted to introduce those policies into evidence.

Here, Cycle-Craft does not claim, nor could it, that the NRSPs are irrelevant. Indeed, as noted above, Mr. McPhee, Cycle-Craft's operations manager, previously advised the Court that Cycle-Craft evaluated "every sale" at issue in this case to make sure that it complied with the NRSP. Harley-Davidson has the right to question Cycle-Craft's personnel concerning that evaluation and why they believed that the sales at issue complied with the NRSP. Obviously, Harley-Davidson will need to enter the NRSPs into evidence to obtain such testimony.

In its motion, Cycle-Craft claims that it will have to elicit testimony concerning every NRSP that has been issued by Harley-Davidson since 1990. Although Harley-Davidson does not consider every iteration of the NRSP to be relevant, if Cycle-Craft wants to introduce every NRSP into evidence, the jury (and the Court) can review the various versions of the NRSPs during its deliberations and determine how they have evolved over time -- if they deem that such changes are pertinent to its 93B analysis. Further, it will not take an extraordinary amount of time for witnesses to explain how Harley-Davidson distributes the NRSPs to dealers nor will it take a lot of time to question witnesses concerning guidance that has been provided by Harley-Davidson.

For the foregoing reasons, Harley-Davidson requests that Cycle-Craft's Motion *In Limine* to Preclude the Admission of Harley-Davidson's Non-Retail Sales Policy be denied.

Respectfully submitted by,

**Harley-Davidson Motor Company, Inc., and Buell Distribution Company, LLC**

By their attorneys,

   /s/ William F. Benson
William N. Berkowitz, BBO# 544148
William F. Benson, BBO# 646808
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
Ph: (617) 951-8000
Fx: (617) 951-8736

Dated: May 5, 2006

- 8 -