UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYCLE-CRAFT CO., INC.<br>d/b/a BOSTON HARLEY-DAVIDSON/BUELL,<br><br>    Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY, INC.,<br>and BUELL DISTRIBUTION COMPANY, LLC,<br><br>    Defendants. | Civil Action<br>No. 04 11402 NMG |

**CYCLE-CRAFT'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING CHARITABLE CONTRIBUTIONS OF BOTH CYCLE-CRAFT AND THE BOSTON HARLEY OWNERS GROUP**

Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") hereby opposes Harley-Davidson Motor Company, Inc., and Buell Distribution Company, LLC (collectively "Harley Davidson")'s Motion in Limine to Exclude Evidence Concerning Charitable Contributions of Both Cycle-Craft and the Boston Harley Owners Group. Evidence of Cycle-Craft's longstanding record of civic and charitable activities is plainly relevant to the determination of whether its termination was for "good cause" under § 5(j) of Chapter 93B, inasmuch as that provision requires a consideration of "all pertinent circumstances" and specifically provides that one such circumstance is whether the termination would affect the "public welfare." Further, contrary to defendant's suggestion, the Boston Harley Owners Group ("BHOG")'s existence is inextricably linked to and dependent on Cycle-Craft, making its charitable activities and contributions attributable to Cycle-Craft.

I. **<u>Cycle-Craft's Civic and Charitable Activities Are "Pertinent Circumstances" to Be Considered Under Chapter 93B.</u>**

Cycle-Craft has brought multiple claims against Harley-Davidson pursuant to Chapter 93B § 5(a), which prohibits termination "without good cause, in bad faith or in an arbitrary or unconscionable manner." Am. Compl. ¶¶ 28-41. Harley-Davidson attempts to unduly narrow the relevant "good cause" inquiry under Chapter 93B in its motion. Specifically, Harley-Davidson asserts that Cycle-Craft's charitable activities "are irrelevant to whether Cycle-Craft materially violated the Dealer Agreement by submitting false sales reports." Motion at 2. Harley-Davidson fails to mention that "whether Cycle-Craft materially violated the Dealer Agreement" is but one factor of many to be considered in determining whether the termination was for "good cause" under Chapter 93B.

Chapter 93B § 5(j) states that, in determining whether good cause has been established for terminating a franchise agreement, "the court shall consider <u>all pertinent circumstances</u>, that may include, but shall not be limited to:

> (1)   the amount of business transacted by the affected motor vehicle dealer during the 3 year period immediately preceding such notice as compared to the business available to it;
>
> (2)   the investment necessarily made and obligations incurred by the affected motor vehicle dealer to perform its obligations under the existing franchise agreement;
>
> (3)   the permanency of the investment of the affected motor vehicle dealer;
>
> (4)   <u>whether it is injurious or beneficial to the public welfare for the franchise agreement of the affected motor vehicle dealer to expire, to be modified, or to be terminated, or for the affected motor vehicle dealer to be replaced</u>;

2

> (5) whether the affected motor vehicle dealer has adequate motor vehicle sales and service facilities, equipment, vehicle parts and qualified personnel to reasonably provide for the needs of the consumers for motor vehicles handled by the affected motor vehicle dealer;
>
> (6) whether the affected motor vehicle dealer has been and is rendering adequate services to the public; and
>
> (7) the existence and materiality of any breaches, defaults or violations by the affected motor vehicle dealer of the terms or provisions of the existing franchise agreement or of applicable law.

(emphasis added).

As the plain language of the statute states, this list is not exhaustive, and thus allows for a wide ranging inquiry. *See Gallo Motor Center, Inc. v. Mazda Motor Of America, Inc.*, 347 F.3d 20, 25 (1st Cir. 2003) (based on similar language and list of factors appearing in separate provision of Chapter 93B concluding: "'All pertinent circumstances' means all pertinent circumstances. That a particular piece of evidence does not fall within the purview of a particular factor in a non-exhaustive statutory list is not a sound basis for objecting to its admissibility."). Further, evidence of Cycle-Craft's numerous civic and charitable activities is plainly relevant to the question of whether its termination "is injurious or beneficial to the public welfare," one of the factors specifically identified in the statute. The question of the impact on the public welfare is of particular relevance in this case given the extent and breadth of Cycle-Craft's community involvement.

As has been described in previous submissions to the Court, Cycle-Craft is a Boston-area institution that historically has served the community as well as dozens of local police departments. *See* Memorandum in Support of Motion for Preliminary

3

Injunction at 15; Cycle-Craft's Memorandum of Law in Opposition to Harley-Davidson's Motion for Summary Judgment at 2.  In addition, Cycle-Craft lends financial support to and participates in the activities of numerous civic and charitable organizations including, among others, the Muscular Dystrophy Association, the Comen Breast Cancer Foundation, the Ronald McDonald House, My Brother's Table, the Massachusetts Firefighters' Association, the Everett Cal Ripken Buddy Ball League for Mentally Challenged Children, the American Cancer Society, and the local Kiwanis Chapter.  *See* Memorandum in Support of Motion for Preliminary Injunction at 15; Cycle-Craft's Memorandum of Law in Opposition to Harley-Davidson's Motion for Summary Judgment at 2.

Harley-Davidson has confused the questions of whether this evidence is relevant and whether this evidence weighs against Harley-Davidson.  *See* Motion at 2 ("To the extent that evidence of the dealership's alleged charitable endeavors is relevant, any alleged minimal relevance is outweighed by its prejudicial effect").  Harley-Davidson's position that the only issue to be decided is "whether Cycle-Craft materially violated the Dealer Agreement" is contradicted by the plain language of Section 5(j) of Chapter 93B.  The impact that the termination of a franchise agreement would have on "the public welfare" is specifically identified as one of the factors to be considered by the Court in making its "good cause" determination.  Just because evidence of Cycle-Craft's consistent and extensive civic and charitable contributions weighs in favor of Cycle-Craft and demonstrates that it would be "injurious" to the public welfare if Cycle-Craft's Dealer Agreement were terminated does not mean that the evidence is unfairly prejudicial to Harley-Davidson.

4

II.     **BHOG's Charitable Activities Are Attributable to Cycle-Craft.**

Harley-Davidson also claims that the charitable activities of BHOG should be kept out of evidence because Cycle-Craft and BHOG are separate corporate entities and, therefore, "are not one and the same." Motion at 3. Harley-Davidson's own website touts the fundamental relationship between its dealers and HOG chapters. *See* Exhibit A (Harley-Davidson Website) attached hereto ("Every chapter, sponsored by a local dealership . . . ."). Whether or not Cycle-Craft and BHOG are separate corporate entities, BHOG is completely dependent on Cycle-Craft and would not exist save for Cycle-Craft. *See* Exhibit B attached hereto (Atwood Deposition) at 129:16-130:6 ("Harley Owners Groups and dealerships kind of work hand and hand. You can't have a Harley Owners Group club unless you're a dealer, and each dealer can only have one Harley-Owners Group . . . the dealership is also responsible for the Harley Owners Group.").

There is ample evidence of the interconnection between Cycle-Craft and BHOG. For example, Cycle-Craft provides a "clubhouse" free of charge for BHOG at the dealership. *See* Exhibit C (BHOG Website) attached hereto ("The club house is located over the top of the Boston Harley dealership, the entrance is on the side of the building in the main parking lot."). Indeed, the entry from the Secretary of Commonwealth's website that Harley-Davidson relies on in support of its motion confirms that the location of BHOG is 1760 Revere Beach Parkway, Everett, MA 02149 – the address of the Cycle-Craft dealership. In addition, BHOG is referred to as "Boston Chapter 1864," a reference to the dealership number issued to Cycle-Craft by Harley-Davidson. *See* Exhibit C (BHOG Website). While the officers of Cycle-Craft are not currently the officers of BHOG, John Atwood, the owner of Cycle-Craft, appointed the current officers of BHOG. *See* Exhibit B attached hereto (Atwood Deposition) at 130:7-131:14. The

5

charities that benefit from Cycle-Craft's efforts clearly recognize that BHOG is dependent on Cycle-Craft and that its charitable efforts are attributable to Cycle-Craft. *See, e.g.,* Exhibit D (ACRC Award) attached hereto ("To Honor Boston HOG & Boston Harley-Davidson For All Your Hard Work And Dedication to Benefit Children With AIDS") and Exhibit D (Award from Ronald McDonald Run) attached hereto (to "Harley Davidson Buell of Boston For Your Continued Support of Boston Harley Owners Group And The 10th Annual Benefit Run").  Simply put, given BHOG's dependence on Cycle-Craft, it would be impossible to separate the activities of BHOG from the charitable activities of Cycle-Craft.

## CONCLUSION

For the foregoing reasons, Cycle-Craft requests that the Court deny Harley-Davidson's Motion in Limine to Exclude Evidence Concerning Charitable Contributions of Both Cycle-Craft and the Boston Harley Owners Group.

        Respectfully submitted,

        CYCLE-CRAFT CO., INC.

        By its attorneys,

        ___/s/ James C. Rehnquist_____
        James C. Rehnquist (BBO# 552602)
        Samantha L. Schreiber (BBO# 640058
        Christopher C. Nee (BBO# 651472)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA 02109
        (617) 570-1000
        April 28, 2006

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 5, 2006.

        /s/ Christopher C. Nee_____