UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
CYCLE-CRAFT CO., INC.               )
d/b/a BOSTON HARLEY-DAVIDSON/BUELL, )
                                    )
            Plaintiff,              )
                                    )   Civil Action
      v.                            )   No. 04 11402 NMG
                                    )
HARLEY-DAVIDSON MOTOR COMPANY, INC.,)
and BUELL DISTRIBUTION COMPANY, LLC,)
                                    )
            Defendants.             )
_____)

**CYCLE-CRAFT'S REPLY MEMORANDUM IN SUPPORT OF MOTION
IN LIMINE NO. 1 TO PRECLUDE ADMISSION OF
<u>PRIOR CONVICTION AND DEFERRED ADJUDICATION</u>**

Conceding only now, in response to Cycle-Craft's motion, that only one of the two "convictions" of Cycle-Craft General Manager Ronald Buchbaum amounts to a "conviction" under Rule 609, Harley-Davidson nevertheless continues to ignore the requirements of Rule 609(b). It has done nothing to demonstrate that this is the sort of "exceptional" case where a conviction over ten years old should be admitted. Harley-Davidson should therefore be precluded from questioning Mr. Buchbaum about this conviction or otherwise offering this evidence for any purpose.

<u>First</u>, Harley-Davidson's opposition flouts the plain language of the Rule. Rule 609(b) specifically bars the use of a conviction more than ten years old to attack a witness's credibility "unless the court determines, in the interests of justice, that the probative value of the conviction supported by *specific facts and circumstances* substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b) (emphasis added).

Thus, the rule establishes a "presumption" that convictions more than ten years old "should *not* be received to impeach." *Grenier v. Dow Chemical Co.*, 624 F. Supp. 1207, 1209 (D. Maine 1986) (emphasis in original) (citation omitted). The burden of establishing such "specific facts and circumstances" is on the proponent of the evidence. *See United States v. Beahm*, 664 F.2d 414, 418 (4th Cir. 1981). Moreover, the legislative history of the rule makes clear that the "specific facts and circumstances" requirement reflects Congress's intent that convictions over ten years old be admitted "very rarely and only in exceptional circumstances." S*ee* Fed. R. Evid. 609(b) Advisory Committee's Notes (1974 Enactment); *see also United States v. Mahler*, 579 F.2d 730, 736 (2d Cir. 1978).

Notwithstanding the rule's clear mandate, Harley-Davidson does not attempt to identify any "exceptional circumstances" that justify the use of Mr. Buchbaum's conviction for impeachment purposes. Rather, it makes liberal use of the adverbs "fraudulently" and "falsely" – terms that are equally applicable to any crime involving dishonesty or false statement under Rule 609(a)(2) – in describing the circumstances of Mr. Buchbaum's conviction. *See, e.g.,* Harley-Davidson's Opposition to Motion in Limine No. 1 at ¶ 5 ("Buchbaum fraudulently transferred . . . ." "Buchbaum . . . falsely representing . . . ."); ¶ 6 ("he plead guilty to . . . fraudulently concealing . . . ."); ¶ 9 ("Buchbaum pled guilty to . . . fraudulently concealing . . . .").

Indeed, all of the "circumstances" of the conviction cut against its admissibility. The conduct giving rise to the conviction took place in 1991, a dozen years before Mr. Buchbaum even came to work at Cycle-Craft. *See* Cycle-Craft's Memorandum of Law in Support of Motion in Limine No. 1, *Exhibit A* at 4. Mr. Buchbaum accepted full

responsibility for his actions and pleaded guilty to an Information. *See id.* The asset that had been "concealed" from the bankruptcy trustee was a restitution payment made to the Dallas County Adult Probation Department to resolve Mr. Buchbaum's prior criminal case and was not the type of personal property (e.g., bank accounts, real estate, cars, etc.) that is ordinarily the basis for a bankruptcy fraud charge. *See id.* at 15-16. Moreover, that the judge – in a district not known for sentencing leniency – imposed a sentence of straight probation, even though the guidelines called for an imprisonment range of 6-12 months, further suggests that the court viewed these circumstances as mitigating factors. *See id.* at 5, 7, and 8.

Harley-Davidson's reliance on *United States v. Pritchard*, 973 F.2d 905 (11th Cir. 1992), for the proposition that there is a heightened need for this impeachment evidence is misplaced. *Pritchard* hinged on the credibility of the cooperating witness, who was the only direct witness against the defendant, versus the credibility of the defendant, where the jury had before it only the criminal record of the cooperating witness. *See id.* at 909. Thus, the court found that because the "crux" of that case was "a credibility issue" between the defendant and the cooperating witness, the defendant's "criminal record, or absence thereof, took on special significance." *Id.* Indeed, most of the cases cited by Harley-Davidson are cases where the conviction is the conviction of a <u>party</u>.

In contrast, while Mr. Buchbaum is undoubtedly an important witness as to some issues, this case hardly turns on his credibility. Most of the key issues in the case – Cycle-Craft's facilities, performance, history, and community involvement; the contractual relationship between Cycle-Craft and Harley-Davidson; and the circumstances surrounding Harley-Davidson's conduct in its investigation, audit, and

termination of Cycle-Craft – have little or nothing to do with Mr. Buchbaum. Even as to the issue regarding the sales that have been challenged by Harley-Davidson, Mr. Buchbaum's testimony is not dispositive. There are dozens of documents memorializing these sales and other witnesses who had first-hand knowledge of, and involvement in, the sales. Therefore, unlike the defendant in *Pritchard,* Mr. Buchbaum's credibility does not carry "special significance."[1] *See United States v. Orlando-Figueroa*, 229 F.3d 33, 46 (1st Cir. 2000) (holding that ten-year old mail fraud conviction was properly excluded because case did not turn on cooperator's testimony alone). In short, because Harley-Davidson has not demonstrated "exceptional circumstances," it should not be allowed to impeach Mr. Buchbaum's credibility using this antiquated conviction.

Second, Harley-Davidson's attempt to avoid the dictates of Rule 609(b) on the theory that Mr. Buchbaum's conviction is somehow independently relevant to the "good cause" analysis under Chapter 93B – because it is relevant to whether Cycle-Craft had "qualified personnel" – should be rejected. *See* Opposition at ¶¶ 15-16. Section 5(b) of Chapter 93B requires that a manufacturer state the "specific grounds" for the termination of a dealership in its notice of termination. The purpose of this requirement is to put the

---

[1] The other cases cited by Harley-Davidson in its opposition are similarly inapposite as they all involve circumstances where the case turned on the credibility of the witness thereby heightening the probative value of the impeachment evidence. *See United States v. Brown*, 603 F.2d 1022, 1028-29 (1st Cir. 1979) (no abuse of discretion where court ruled that if the defendant testified, evidence of his convictions over ten years old could be introduced for impeachment purposes because defendant's credibility had been pitted against the credibility of an alternative culprit whose criminal record was in evidence); *United States v. Payton*, 159 F.3d 49, 57-58 (2d Cir. 1998) (finding that defendant's mother's credibility was "crucial" because she would be testifying "in direct contradiction to the government's witnesses" and therefore the impeachment value of her food stamp and welfare fraud convictions was substantial); *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) (in personal injury case, evidence of plaintiff's false statement conviction was admissible where the jury's assessment of the plaintiff's credibility was highly relevant to several disputed issues where plaintiff was sole fact witness); *Shubert v. B.P. Exploration & Oil Co.*, 1993 WL 534144 at *1

dealership on notice as to the basis for the termination of the dealer contract. Harley-Davidson's April 20, 2004 letter terminating the Cycle-Craft's Dealer Contract, however, contains no reference to either Mr. Atwood's hiring of Mr. Buchbaum despite his knowledge of Mr. Buchbaum's criminal history, nor any allegation that Mr. Atwood failed to have "qualified personal to provide for the needs of customers." Thus, permitting Harley-Davidson to rely on this evidence would permit it to make an end run around the statute's notice requirement. *See Bronx Auto Mall, Inc. v. American Honda Motor Co., Inc.*, 934 F. Supp. 596, 610-11 (S.D.N.Y. 1996) (citing numerous cases) (holding that non-renewal could not be justified on grounds not stated in the distributor's notice to the dealer based upon language in the relevant New York statute, which largely mirrors the operative language in Chapter 93B).

As an alternative theory of "independent relevance," Harley-Davidson implies that the decision by Cycle-Craft to hire Mr. Buchbaum even though it knew of his convictions is a "pertinent circumstance." But its selective quotations from the deposition of John Atwood, Cycle-Craft's president, present a wholly misleading picture of Cycle-Craft's hiring of Mr. Buchbaum. Prior to hiring Mr. Buchbaum, Cycle-Craft's president John Atwood consulted multiple members of Harley-Davidson management as well as a Harley-Davidson vendor before hiring Mr. Buchbaum. First, Mr. Atwood informed William Holaday, then the Harley-Davidson District Manager of Cycle-Craft, that he was considering hiring Mr. Buchbaum as general manager of Cycle-Craft. *See Exhibit 1* (Atwood Dep.) at 59:11-60:7. At the suggestion of Mr. Holaday, Mr. Atwood

---

(E.D.La. Dec. 13, 1993) (finding that plaintiff's credibility was "crucial" element because plaintiff was one of three witnesses and each party was contending that the oil spill was caused by the other).

spoke to Terry Payne, the Harley-Davidson District Manager in the Michigan area when Mr. Buchbaum was the General Manager of Motown Harley-Davidson in Michigan. Mr. Payne advised Mr. Atwood that Mr. Buchbaum "did an excellent job at Motown" and "gave him an excellent recommendation." *Id.* (Atwood Dep.) at 50:6-16. Mr. Atwood also sought input from Frank Turck of Harley-Davidson Financial Services and Ron Strapman, a vendor for Harley-Davidson, regarding Mr. Buchbaum's potential as a general manager for Cycle-Craft. Both Mr. Turck and Mr. Strapman gave Mr. Buchbaum glowing recommendations. *See id.* (Atwood Dep.) at 56:1-57:6 ("Frank Turck thought that Ron was a great guy and that he was a hard worker and that he did very well at his job.") and 58:13-59:10 (Mr. Strapman said "Ron was – was a great guy, that he did – everyone did. He did his job very well. He made his dealers that he worked at very successful. He was great."). Given the due diligence completed by Mr. Atwood prior to hiring Mr. Buchbaum, his solicitation of input from Harley-Davison's own personnel on the hire, and the positive recommendations received from those employees, Harley-Davidson cannot credibly assert now that Mr. Buchbaum's qualifications and Mr. Atwood's decision to hire him demonstrate that Cycle-Craft failed to hire "qualified personnel." Indeed, the recommendations from Harley-Davidson's own personnel demonstrate that Mr. Buchbaum was eminently qualified.

Third, Harley-Davidson's claim that the prejudicial impact of Mr. Buchbaum's conviction is minimal because Mr. Buchbaum is not a criminal defendant misapprehends the fundamental purpose of Rule 609(b)'s balancing test. That test explicitly recognizes the inherently prejudicial nature of criminal convictions, especially old convictions whose probative value is minimal given their age. Moreover, the injection of a criminal

conviction into a civil trial will arguably have a greater prejudicial effect than if that same evidence is admitted a criminal trial.[2]  The risk of prejudice from Mr. Buchbaum's conviction is particularly significant in this case because it would invite the jury to improperly impute Mr. Buchbaum's credibility to Cycle-Craft and thereby tainting the credibility of Cycle-Craft's other witnesses.   Moreover, the introduction of Mr. Buchbaum's conviction for impeachment purposes is likely to result in a mini-trial about Mr. Buchbaum's bankruptcy fraud case and thereby further distract the jury from the central issues in the case – whether the termination was supported by "good cause" or was "in bad faith, arbitrary or unconscionable manner."  Allowing cross on Mr. Buchbaum's prior convictions would not only put Cycle-Craft in the unenviable position of having to offer proof of the mitigating circumstances surrounding the conviction, but Cycle-Craft would be forced to explain the circumstances underlying the conviction by reference to Mr. Buchbaum's earlier insurance fraud case, even though that case – having resulted in a deferred adjudication – is inadmissible under Rule 609.

---

[2]  *United States v. Thomas*, 914 F.2d 139 (8th Cir. 1990), upon which Harley-Davidson relies is inapposite.  *See* Opposition at ¶ 13.  In that case, the defendant accused the officers that arrested him of falsifying the facts of his arrest due to their personal bias against him.  *Thomas*, 914 F.2d at 142.  As support, the defendant called his cousin to testify about a previous incident during with the officers had beaten both of them during an arrest.  *See id.*  The court allowed the cousin to be cross-examined about an old conviction for possession with intent to distribute heroin because the defendant had made credibility paramount by alleging that the officers had deliberately falsified facts.  *See id.* at 143.  Only in dicta did the court make a passing comment that the risk of unfair prejudice was minimal because the witness was not the defendant.  *See id.*

**CONCLUSION**

Because admission of evidence of Mr. Buchbaum's conviction has minimal impeachment value and no probative value relative to the ultimate questions before the Court in this case and would have a substantial prejudicial effect on Cycle-Craft, this Court should exclude the evidence pursuant to Rule 403, 404, 608 and 609 of the Federal Rules of Evidence.

Respectfully submitted,

CYCLE-CRAFT CO., INC.

By its attorneys,

 /s/ James C. Rehnquist
James C. Rehnquist (BBO# 552602)
Samantha L. Schreiber (BBO# 640058)
Christopher C. Nee (BBO# 651472)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

May 9, 2006

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 28, 2006.

 /s/ Christopher C. Nee