UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————— )
CYCLE-CRAFT CO., INC.                                    )
d/b/a BOSTON HARLEY-DAVIDSON/BUELL,   )
                                                                         )
                                              Plaintiff,             )
                                                                         )        Civil Action
                              v.                                       )        No. 04 11402 NMG
                                                                         )
HARLEY-DAVIDSON MOTOR COMPANY, INC.,  )
and BUELL DISTRIBUTION COMPANY, LLC,     )
                                                                         )
                                              Defendants.         )
—————————————————————— )

## CYCLE-CRAFT'S PROPOSED JURY INSTRUCTIONS

Plaintiff Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") hereby requests that the jury be instructed by the Court in conformity with the following specifically enumerated requests. Cycle-Craft reserves leave to request additional instructions based upon the evidence presented at trial, review of the proposed jury instructions of defendant Harley-Davidson Motor Company, Inc. ("Harley-Davidson"), or other developments.

Cycle-Craft submits only those general jury instructions that the Court may not regularly issue (relying on the Court's general instructions for direction on most subjects), and submits substantive instructions relevant to the case currently pending before the Court.

# Table of Contents

Proposed Jury Instruction No. 1 – The Parties..............................................................2

Proposed Instruction No. 2 – Nature of the Claims ......................................................3

Proposed Jury Instruction No. 3 – Burdens of Proof ...................................................4

Proposed Jury Instruction No. 4 – Determination of Good Cause ...........................5

Proposed Jury Instruction No. 5 – Material Breach ....................................................6

Proposed Jury Instruction No. 6 – Determination Whether Termination Was
    in Bad Faith, or in an Arbitrary or Unconscionable Manner.........................7

Proposed Jury Instruction No. 7 – Breach of Contract ...............................................8

Proposed Jury Instruction No. 8 – Contract Construed Against Drafter..................9

Proposed Jury Instruction No. 9 – Breach of the Implied Covenant of Good
    Faith and Fair Dealing ................................................................................10

Proposed Instruction No. 10 – Notice of Termination Must State Specific
    Grounds .........................................................................................................11

Proposed Jury Instruction No. 11 – Laws of the Commonwealth Govern the
    Interpretation of the Franchise Agreement ...................................................12

Proposed Jury Instruction No. 12 – Definition of Sale Under Chapter 93B.............13

Proposed Jury Instruction No. 13 – Any Provision of a Dealer Contract in
    Violation of Chapter 93B Is Unenforceable....................................................14

Proposed Jury Instruction No. 14 – Protest Rights Under Chapter 93B..................15

Proposed Jury Instruction No. 15 – Judicial Notice ...................................................16

Proposed Jury Instruction No. 16 – Adverse Inference Based on Invocation
    of Privilege .....................................................................................................17

Proposed Jury Instruction No. 17 – Damages..............................................................18

Proposed Jury Instruction No. 18 – Definition of Fraud............................................19

Proposed Jury Instruction No. 19 – Use of Interrogatories ......................................20

Proposed Jury Instruction No. 20 – Expert Witnesses ..............................................21

**<u>Proposed Jury Instruction No. 1 – The Parties</u>**

The plaintiff in this case is called Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson Buell, a Harley-Davidson dealership located in Everett, Massachusetts. The defendants are Harley-Davidson Motor Company, Inc. and the Buell Distribution Company, LLC, affiliated motorcycle manufacturers with corporate headquarters in Milwaukee, Wisconsin.

The plaintiff is the party that filed the lawsuit and the defendant is the party the lawsuit is filed against.

**Proposed Instruction No. 2 – Nature of the Claims**

Cycle-Craft claims that defendant-manufacturer Harley-Davidson violated

Chapter 93B of the Massachusetts General Laws, otherwise known as the Massachusetts

Dealer's Bill of Rights, by terminating its Dealer Contract "without good cause."  Cycle-

Craft also claims that the termination violated Chapter 93B because it was made "in bad

faith," and "in an arbitrary or unconscionable manner."  In addition to its claims under

Chapter 93B, Cycle-Craft claims that Harley-Davidson breached the Dealer Contract

Chapter 93B regulates the relationship between motor vehicle manufacturers and

dealers that operate in Massachusetts.  The statute was enacted by the Legislature because

of the potentially oppressive power of manufacturers over dealers, and it aims to protect

dealers from unfair terminations and other practices.  It does not afford a guarantee

against termination, but protects a dealer against a termination "without good cause, [or]

in bad faith or in an arbitrary or unconscionable manner."[1]

---

[1] *Coady Corp. v. Toyota Motor Dist., Inc.*, 361 F.3d 50, 54 (1st Cir. 2004); *Beard Motors, Inc. v. Toyota Motor Distrib., Inc.*, 480 N.E.2d 303, 306 (Mass. 1985); *Tober Foreign Motors v. Reiter Oldsmobile, Inc.*, 381 N.E.2d 908, 911-12 (Mass. 1978); Mass. Gen. Laws Ch. 93B § 5(a).

**Proposed Jury Instruction No. 3 – Burdens of Proof**

Under Chapter 93B, the burden to establish that its termination was for good cause rests with Harley-Davidson.  The burden to establish that the termination was in bad faith, or was in an arbitrary or unconscionable manner, rests with Cycle-Craft.[2]  The burden to establish that the Dealer Contract was breached by Harley-Davidson also rests with Cycle-Craft.

---

[2] Mass. Gen. Laws Ch. 93B § 5(m).

**Proposed Jury Instruction No. 4 – Determination of Good Cause**

As I previously explained, one of Cycle-Craft's allegations in this case is that Harley-Davidson did not have "good cause" to terminate the Dealer Contract. In determining whether Harley-Davidson has carried its burden of proof and established that the termination was for good cause, you must consider all pertinent circumstances, including, but not limited to, the following factors:

(1)    the amount of business transacted by Cycle-Craft during the 3 year period immediately preceding the termination notice as compared to the business available to it;

(2)    the investment necessarily made and obligations incurred by Cycle-Craft to perform its obligations under the existing Dealer Contract;

(3)    the permanency of the investment of Cycle-Craft;

(4)    whether it is injurious or beneficial to the public welfare for the Dealer Contract of Cycle-Craft to be terminated;

(5)    whether Cycle-Craft has adequate motor vehicle sales and service facilities, equipment, vehicle parts and qualified personnel to reasonably provide for the needs of the consumers for motor vehicles handled by Cycle-Craft;

(6)    whether Cycle-Craft has been and is rendering adequate services to the public; and

(7)    the existence and materiality of any breaches by Cycle-Craft of the terms or provisions of the existing Dealer Contract or of applicable law.[3]

---

[3] Mass. Gen. Laws Ch. 93B § 5(j).

**Proposed Jury Instruction No. 5 – Material Breach**

Cycle-Craft contends that even if any breach of the Dealer Contract occurred, it was not a "material" breach. A material breach occurs when there is a breach of an essential or inducing feature of the contract, or when there is a breach that goes to the heart of the agreement. An immaterial breach involves something that is not an essential or inducing feature of the contract. An inducing feature of the contract is a term or provision that was essential to the parties in deciding to enter into the contract.[4]

---

[4]*Lease-It, Inc. v. Massachusetts Port Auth.*, 600 N.E.2d 599, 602 (Mass. App. Ct. 1992).

**<u>Proposed Jury Instruction No. 6 – Determination Whether Termination Was in Bad Faith, or in an Arbitrary or Unconscionable Manner</u>**

Cycle-Craft has alleged that the termination was in bad faith and in an arbitrary or unconscionable manner. I will now define each of these three terms – bad faith, arbitrary, and unconscionable.

"Bad faith" is not simply bad judgment or negligence. It means consciously doing wrong.[5]

Conduct can be "arbitrary" without bad faith. Arbitrary conduct under Chapter 93B means conduct that is inconsistent with "reasonable business practices."[6]

Conduct is "unconscionable" if it results in unfair surprise and is oppressive to the allegedly disadvantaged party. Even conduct that it permitted by a contract may, if extremely unfair, be unconscionable.[7]

---

[5] *Spiegel v. Beacon Participations, Inc.*, 8 N.E.2d 895, 907 (Mass. 1937).

[6] *Coady Corp. v. Toyota Motor Distrib., Inc.*, 361 F.3d 50, 56 (1st Cir. 2004).

[7] *Penney v. First Nat'l Bank of Boston*, 433 N.E.2d 901, 905 (Mass. 1982).

**Proposed Jury Instruction No. 7 – Breach of Contract**

Cycle-Craft also claims that Harley-Davidson has breached the Dealer Contract by improperly threatening to terminate the franchise relationship, by improperly altering Cycle-Craft's vehicle allocation, and by improperly assessing other charges on Cycle-Craft in connection with the threatened termination.

A breach of contract is a failure to comply with one or more terms of the contract. In order to recover for breach of contract, Cycle-Craft must have completely performed its obligations. Where one party to a contract has failed to perform its obligations, then as a matter of law the other party is thereafter excused from performing its contractual obligations.

In order to prevail on a breach of contract claim, Cycle-Craft must prove the following four elements by a preponderance of the evidence:

1.     that there is a contract,

2.     that Cycle-Craft performed its obligations under the contract (or is excused from performance),

3.     that Harley-Davidson breached the contract, and

4.     that Cycle-Craft suffered damages as a result of the breach of contract.[8]

In this case, there is no dispute between the parties about the existence of a contract between them.

---

[8] Hon. Patrick F. Brady, Hon. Elizabeth Butler, John O. Mirick, et al., *Massachusetts Superior Court Civil Practice Jury Instructions*, § 14.1.19 (MCLE 2001) and cases cited therein.

**Proposed Jury Instruction No. 8 – Contract Construed Against Drafter**

In this case, the parties disagree over the meaning of certain language contained in the Dealer Contract.  If terms in a contract are ambiguous, then, under principles of contract law, those terms are interpreted against the party who drafted them.  This means that in the case of doubt as to the meaning of a term or provision, that term or provision is to be interpreted contrary to the interpretation of the party who drafted the agreement, in this case Harley-Davidson.  Accordingly, if you conclude that there is doubt as to the contract's meaning, then you must read the contract consistently with any reasonable interpretation offered by Cycle-Craft.[9]

---

[9] *Merrimack Valley Nat. Bank v. Baird*, 363 N.E.2d 688, 690 (Mass. 1977).

**<u>Proposed Jury Instruction No. 9 – Breach of the Implied Covenant of Good Faith and Fair Dealing</u>**

Cycle-Craft has also alleged that Harley-Davidson has breached the implied covenant of good faith and fair dealing. Every contract contains an unspoken promise that the parties will act in good faith and with fair dealing toward the other party in carrying out its responsibilities under the contract. This means that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits under the contract. A breach of this unspoken promise is a breach of the contract.[10]

---

[10] John M. Greaney, et al., *Massachusetts Jury Instructions,* § 2.17 (LEXIS 1999) and cases cited therein. *See Anthony's Pier Four, Inc. v. HBS Assoc.*, 583 N.E.2d 806, 820 (Mass. 1991).

**Proposed Instruction No. 10 – Notice of Termination Must State Specific Grounds**

Under Chapter 93B, a manufacturer must send written notice of termination to a motor vehicle dealer at least 60 days before the effective date of the termination. The statute mandates that the notice state the specific grounds for such termination, thus preventing a manufacturer from justifying a termination based on grounds not set forth in the notice.[11]

---

[11] Mass. Gen. Laws Ch. 93B § 5(b); *Bronx Auto Mall, Inc. v. American Honda Motor Co., Inc.*, 934 F. Supp. 596, 610-11 (S.D.N.Y. 1996).

**<u>Proposed Jury Instruction No. 11 – Laws of the Commonwealth Govern the Interpretation of the Franchise Agreement</u>**

Notwithstanding any term or provision in the Dealer Contract, the laws of Massachusetts, including Chapter 93B, shall govern the interpretation of the franchise agreement of a motor vehicle dealer in Massachusetts and the performance of the parties.[12]

---

[12] Mass. Gen. Laws Ch. 93B § 15(e).

**Proposed Jury Instruction No. 12 – Definition of Sale Under Chapter 93B**

Harley-Davidson claims that Cycle-Craft violated the Dealer Contract, in part, because it reported retail sales before they actually occurred and under false names. You have heard evidence presented by Cycle-Craft that it received oral agreements from employees, family, and friends to purchase the motorcycles in question.

Chapter 93B provides a definition of the term "sale" or "sell."  The relevant part of the definition states that a "sale" includes the issuance, transfer, agreement for transfer, exchange, pledge, or lease of any motor vehicle.[13]

---

[13] Mass. Gen. Laws Ch. 93B § 1.

**<u>Proposed Jury Instruction No. 13 – Any Provision of a Dealer Contract in Violation of Chapter 93B Is Unenforceable</u>**

You have heard evidence in this case about the "Dealer Contract." Under Chapter 93B, any term or provision in the Dealer Contract, or any practice under the Dealer Contract, that violates Chapter 93B is against public policy and is void and unenforceable.[14]

---

[14] Mass. Gen. Laws Ch. 93B § 16(a).

**Proposed Jury Instruction No. 14 – Protest Rights Under Chapter 93B**

Under Chapter 93B, a manufacturer that intends to open a new dealership to be located within 20 miles of an existing dealer must provide such existing dealers with written notice of its intent to do so.  An existing motor vehicle dealer may object to the placement of the new dealership by filing a lawsuit in a Massachusetts court to prevent the placement of the new dealership.  In such a lawsuit the manufacturer must be able to prove there is "good cause" for the new dealership or it cannot proceed.[15]

---

[15] Mass. Gen. Laws Ch. 93B § 6.

15

**<u>Proposed Jury Instruction No. 15 – Judicial Notice</u>**

Although no evidence has been presented, I instruct you that you must accept as proved that both Danvers and Peabody are located within 20 miles of Cycle-Craft's dealership.[16]

---

[16] *Fifth Circuit Pattern Jury Instructions (Civil)*, § 2.4 (West 2005) (support to be supplied if disputed).

**Proposed Jury Instruction No. 16 – Adverse Inference Based on Invocation of Privilege**

Numerous Harley-Davidson employees have invoked the protection of the attorney-client privilege in response to questions posed by counsel for Cycle-Craft regarding the substance of the discussions that took place during the meeting at which the decision to terminate Cycle-Craft's franchise agreement was reached. Based on this claim of the privilege, you may conclude that the claim is an implied admission that the privileged matter would be harmful to Harley-Davidson's case, namely, that the protest threat or other undisclosed reasons were the true basis for the termination decision.[17]

---

[17] Fed. R. Evid. 501; Paul J. Liacos, *Handbook of Massachusetts Evidence* § 13.4.9 (7th ed. 1999); *Phillips v. Chase*, 201 Mass. 444, 450 (1909); *McCooe v. Dighton*, 173 Mass. 117, 119 (1899).

**Proposed Jury Instruction No. 17 – Damages**

If you should decide in favor of Cycle-Craft on its claims for breach of contract and/or breach of the implied covenant of good faith and fair dealing, then you must fix the amount of money damages which will restore to Cycle-Craft what was lost by Harley-Davidson's breach and what Cycle-Craft reasonably could have expected to gain if Harley-Davidson had not breached.

Any damages found by you must be damages that at the time of making the contract, the parties reasonably could have expected to be a consequence of any breach.

Whether any of these elements of damages has been proved by the evidence is for you to determine. Your verdict must be based on proof and not on speculation, guess, or conjecture.[18] On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.[19]

---

[18] John M. Greaney, et al., *Massachusetts Jury Instructions,* § 2.26 (LEXIS 1999) and cases cited therein.

[19] *Fifth Circuit Pattern Jury Instructions (Civil),* § 15.2 (West 2005).

**Proposed Jury Instruction No. 18 – Definition of Fraud**

You have heard allegations during this case about "fraudulent" behavior and/or the submission of "fraudulent" documents. Fraud is a specific legal term. In order to show fraud, Harley-Davidson would have to show that Cycle-Craft made a false representation of material fact with knowledge of its falsity for the purpose of inducing Harley-Davidson to act thereon, and that Harley-Davidson relied upon the representation as true and acted upon it to its damage.[20]

---

[20] *Macoviak v. Chase Home Mort. Corp.*, 667 N.E.2d 900, 904 (Mass.App.Ct. 1996).

**Proposed Jury Instruction No. 19 – Use of Interrogatories**

[*To be given before interrogatory answer is read.*]  Evidence will now be presented to you in the form of written answers of Harley-Davidson to written questions called "interrogatories" from Cycle-Craft.  These answers were given in writing and under oath by Harley-Davidson before this trial in response to written questions by Cycle-Craft.

You must give the answers the same consideration as if the answers were made from the witness stand.[21]

---

[21] 3 Kevin F. O'Malley, et al., *Federal Jury Practice and Jury Instructions, Civil*, § 102.24 (5th Ed. 2000).

**Proposed Jury Instruction No. 20 – Expert Witnesses**

      When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.[22]

---

[22] *Fifth Circuit Pattern Jury Instructions (Civil)*, § 2.19 (West 2005).

Respectfully submitted,

CYCLE-CRAFT CO., INC.

By its attorneys,


_____/s/ James C. Rehnquist_____
James C. Rehnquist (BBO# 552602)
Samantha L. Schreiber (BBO# 640058)
Christopher C. Nee (BBO# 651472)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: May 15, 2006


## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 15, 2006.

/s/ James C. Rehnquist_____

LIBA/1697183.3

22