UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CYCLE-CRAFT CO., INC.<br>d/b/a BOSTON HARLEY-DAVIDSON/BUELL,<br><br>Plaintiff,<br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY, INC.<br>and BUELL DISTRIBUTION COMPANY, LLC,<br><br>Defendants. | CIVIL ACTION<br>NO. 04 11402 NMG |

**DEFENDANTS' MEMORANDUM OF LAW ON INADMISSIBILITY OF
EVIDENCE CONCERNING HARLEY-DAVIDSON'S RELATIONSHIP
WITH DEALERS OTHER THAN CYCLE-CRAFT**

Pursuant to the Court's instructions at the May 18, 2006 pre-trial conference, defendants, Harley-Davidson Motor Company, Inc. and Buell Distribution Company, LLC (collectively, "Harley-Davidson"), submit this memorandum of law to support their position that evidence concerning Harley-Davidson's relationship with third-party Harley-Davidson dealers is irrelevant to the issues in this case: whether Harley-Davidson has the contractual right and "good cause" under M.G.L. c.93B to terminate the plaintiff, Cycle-Craft Co., Inc. d/b/a/ Boston Harley-Davidson/Buell ("Cycle-Craft").[1] As set forth below in more detail, Cycle-Craft should be precluded from admitting such evidence at trial.

---

[1] At the pretrial conference, defendants indicated that there were two evidentiary issues to be raised with the Court in this memorandum. One of those issues was identified as the relevance of evidence of Harley-Davidson's consideration of the Danvers, MA area as a potential new dealership area. In the spirit of compromise urged by the Court, defendants have agreed to withdraw (without prejudice) their relevance objections to most of the exhibits and related evidence concerning the Danvers, MA area. Accordingly, defendants do not request a ruling on this (Danvers) issue at this time.

-2-

## EVIDENCE PROFFERED BY PLAINTIFF

Cycle-Craft's designation of exhibits and deposition testimony makes clear that it seeks to introduce evidence concerning Harley-Davidson's alleged treatment of some of Harley-Davidson's 670 other dealers nationwide in an effort to show that its prospective termination of Cycle-Craft's Dealer Contract was inconsistent with its actions vis-à-vis these other dealers. Specifically, Cycle-Craft has identified, among others, the following exhibits:

- Various termination letters sent to other dealers (Exhibits CCC, DDD, EEE, FFF);
- Letter Concerning Intent to Audit Dealership (Exhibit HHH);
- Various Invoices sent to other dealers (Exhibit III);
- "Collection of audit letters sent from Harley-Davidson, Inc. to various dealers" (Exhibit JJJ);
- "Series of letters sent from Harley-Davidson, Inc. to various dealers" (Exhibit KKK); and
- Various letters sent by Harley-Davidson to other dealers (Exhibits LLL, MMM, NNN, OOO, PPP, QQQ, RRR, SSS, TTT, UUU).

In addition, Cycle-Craft wishes to introduce deposition testimony relating exclusively to Harley-Davidson's dealings with other dealers around the country involving different facts and circumstances than those raised in this case (and arising outside of Massachusetts and under laws significantly different than G.L c.93B).

## ARGUMENT

Defendants respectfully object to being put on trial for their actions involving *other* dealers and *other* facts and circumstances under *other* states' laws. If the Court were to allow evidence of Harley-Davidson's interaction with other dealers around the country, it would put the defendants in the unfair position of having to explain to the jury

each and every other dealer situation raised by the plaintiff, and to distinguish those situations from the one *sub judice*. As noted, there are approximately 670 other Harley-Davidson dealers located throughout the United States, and each state has different laws concerning the relationship between manufacturers and dealers. To put Harley-Davidson in the position of having to respond -- without meaningful advance notice -- to claims of disparate treatment of other dealers in other parts of the country would prejudice the defendants in their defense of this case.

Particularly given the limited party and public resources which reasonably can be dedicated to this case, opening the door to other dealer issues and evidence would not only be unfair to the defendants, it would significantly prolong and complicate what should otherwise be a straightforward determination of whether Harley-Davidson breached its contract with the plaintiff or violated Massachusetts law. By necessity, the introduction of other dealer activities and defendants' response thereto would create a series of mini-trials -- putting each of the other dealer's individual situation on trial -- an exercise not warranted by the limited issues in this case and not realistic or feasible in the otherwise fair amount of time allocated by the Court for this case.

*Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies,* 970 F.2d 273 (7th Cir. 1992) is instructive on this issue. In *River Valley Cookies,* the Seventh Circuit held that a franchisor's contractual relationship with its other franchisees was not relevant to one franchisee's claim that its termination violated the franchise agreement. *Id.* at 279. The Court reasoned that allegations of disparate treatment were not a defense to the franchisee's breach of the franchise agreement stating that:

> [t]he fact that the [franchisor] may, as the [franchisee] argue[s], have treated other franchisees more leniently is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket.

*Id.* Similarly, here, Harley-Davidson's relationship with other dealers and Harley-Davidson's decision whether or not to terminate other dealers simply has no bearing on whether Cycle-Craft's violations of its obligations under the Dealer Agreement provided sufficient grounds for Harley-Davidson to issue a Notice of Termination. *Id. See also Professional Mobile Home Brokers, Inc. v. Security Pacific Housing Services, Inc.*, 53 F.3d 329, 1995 WL 255937 at *8 (4th Cir. 1995) (affirming district court's exclusion of evidence concerning finance company's dealings with other dealers despite proponent's contention that it was necessary to establish a "scheme" undertaken by finance company in violation of North Carolina's unfair trade practices statute); *Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co.*, 781 F.2d 1520, 1527 (11th Cir. 1986) ("[The Franchisee] also argues that the quota system was applied to it selectively. If by that [the franchisee] means to argue that it is bad faith not to terminate all dealers who fail to reach quotas we reject that argument."); *Zebelman v. Chrysler Corp.*, 299 F. Supp. 653, 658 (E.D. Mo. 1968) ("The franchise agreement does not require that a dealer who falls below his assigned [minimum sales responsibility] must be terminated. It merely makes termination possible. The determination of whether or not to terminate a franchise is a management decision.").

## CONCLUSION

Evidence of disparate treatment of Harley-Davidson dealers is simply irrelevant to the Court's determination concerning whether there has been a breach of contract or whether good cause exists for Harley-Davidson's termination of the plaintiff.

WHEREFORE, Harley-Davidson respectfully requests that the Court issue an order prohibiting Cycle-Craft and its counsel from arguing, offering evidence, or questioning any witness concerning Harley-Davidson's treatment of third-party dealers.

Respectfully submitted by,

**Harley-Davidson Motor Company, Inc.,
and Buell Distribution Company, LLC**

By their attorneys,

\_\_\_\_/s/ William F. Benson_____
William N. Berkowitz, BBO# 544148
William F. Benson, BBO# 646808
David M. Magee, BBO# 652399
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
Ph: (617) 951-8000
Fx: (617) 951-8736

Dated: May 19, 2006

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system on May 19, 2006 will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participating.

/s/ William F. Benson_____
William F. Benson