UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CYCLE-CRAFT CO., INC.
d/b/a BOSTON HARLEY-DAVIDSON/BUELL,

    Plaintiff,

  v.

HARLEY-DAVIDSON MOTOR COMPANY,
INC. and BUELL DISTRIBUTION COMPANY,
LLC,

    Defendants.

Civil Action No. 04-11402 (NMG)

## CYCLE-CRAFT'S OPPOSITION TO HARLEY-DAVIDSON'S MEMORANDUM OF LAW ON INADMISSIBILITY OF EVIDENCE ON OTHER DEALERS

Pursuant to the Court's directive at the May 18, 2006 pre-trial conference, Cycle-Craft Co., Inc. d/b/a Boston Harley-Davidson/Buell ("Cycle-Craft") hereby submits its opposition to Harley-Davidson Motor Company, Inc. and Buell Distribution Company, LLC (collectively "Harley-Davidson")'s memorandum of law on the admissibility of evidence of Harley-Davidson's treatment of other dealers for violations of its non-retail sales policy ("NRSP").

Harley-Davidson's argument fails to recognize the Massachusetts law that governs this action.  Cycle-Craft claims not only that its termination was not supported by "good cause" but also that the termination was conducted in an "arbitrary" manner, which itself would be a basis for enjoining the termination.  Cycle-Craft expects to offer evidence that several aspects of Harley-Davidson's investigation and termination of Cycle-Craft were unusual in that they differed from Harley-Davidson's own practices regarding such investigations and terminations. Such evidence is highly probative of whether Cycle-Craft's termination was "arbitrary," which

has been defined by the First Circuit to mean based on "reasonable business practices." *Coady Corp. v. Toyota Motor Distrib., Inc.*, 361 F.3d 50, 56 (1st Cir. 2004). Such evidence is also probative of whether Harley-Davidson breached the implied covenant of good faith and fair dealing in the Dealer Contract.

## ARGUMENT

Cycle-Craft alleges that Harley-Davidson violated Mass. Gen. Laws Ch. 93B by terminating the franchise agreement "without good cause," "in bad faith," and in an "arbitrary" and "unconscionable manner." Cycle-Craft also alleges that Harley-Davidson has breached the implied covenant of good faith and fair dealing in the Dealer Contract.

Mass. Gen. Laws Ch. 93B §5(j) states that, in determining whether good cause has been established for terminating a franchise agreement, "the court shall consider <u>all pertinent circumstances</u>, that may include, but shall not be limited to:

> (1) the amount of business transacted by the affected motor vehicle dealer during the 3 year period immediately preceding such notice as compared to the business available to it;
>
> (2) the investment necessarily made and obligations incurred by the affected motor vehicle dealer to perform its obligations under the existing franchise agreement;
>
> (3) the permanency of the investment of the affected motor vehicle dealer;
>
> (4) whether it is injurious or beneficial to the public welfare for the franchise agreement of the affected motor vehicle dealer to expire, to be modified, or to be terminated, or for the affected motor vehicle dealer to be replaced;
>
> (5) whether the affected motor vehicle dealer has adequate motor vehicle sales and service facilities, equipment, vehicle parts and qualified personnel to reasonably provide for the needs of the consumers for motor vehicles handled by the affected motor vehicle dealer;

>   (6)   whether the affected motor vehicle dealer has been and is rendering adequate services to the public; and
>
>   (7)   the existence and materiality of any breaches, defaults or violations by the affected motor vehicle dealer of the terms or provisions of the existing franchise agreement or of applicable law.

(emphasis added).

As the plain language of the statute states, this list is not exhaustive, and thus allows for a wide ranging inquiry. Any action — or lack of action — taken by Harley-Davidson against other dealers in circumstances similar to Cycle-Craft's are "pertinent circumstances," as such information will shed light on whether Cycle-Craft's alleged breaches were "material" and whether Cycle-Craft was terminated "in bad faith or in an arbitrary or unconscionable manner" under Mass. Gen Laws Ch. 93B §5. In particular, information regarding Harley-Davidson's dealings with other dealers regarding alleged or suspected violations of Harley-Davidson's non-retail sales policy are relevant to the "materiality" of the breaches alleged here. For example, if Harley-Davidson has historically required that violations of any non-retail policy be of a certain number, or duration, or character before termination or any other discipline is imposed, that would suggest that certain lesser violations are not seen by Harley-Davidson as "material." In addition, if Harley-Davidson has singled out Cycle-Craft for treatment that is markedly different than its treatment of other dealers, this lends substantial support to Cycle-Craft's allegation that the termination is arbitrary and that the stated ground for the termination is pretextual because Harley-Davidson had alternative reasons for its action. In short, Harley-Davidson's claim that its "relationship with third-party Harley-Davidson dealers is irrelevant to the issues in this case," Mem. at 1, is incorrect.

Though Harley-Davidson claims that evidence concerning other dealers is irrelevant and "object[s] to being put on trial for [its] actions involving other dealers and other facts and

3

circumstances under other states' laws," Mem. at 2, most of its argument is dedicated to complaints about time and resources rather than relevancy. *Id.* at 2-3.[1] As explained above, such evidence is relevant to Cycle-Craft's claims and is therefore admissible. *See* Fed. R. Evid. 402 ("All relevant evidence is admissible). Harley-Davidson remains free to argue at trial that its interactions with other dealers involved different circumstance or different laws, but such arguments go to the weight of the evidence, not its admissibility. Further, Harley-Davidson's claim that it has not received "meaningful advance notice" that evidence concerning its treatment of other dealers would be introduced in this case borders on the absurd as there has been substantial time and effort dedicated to discovery on this issue throughout the litigation. Mem. at 3. In fact, Harley-Davidson filed a motion for protective order to prevent Cycle-Craft from initiating such discovery on December 3, 2004 – nearly a year and a half ago.

In any event, ample Massachusetts case law confirms that evidence regarding a manufacturer's dealings with other dealers is admissible in Chapter 93B cases, including those involving terminations. *See, e.g., Coady Corp. v. Toyota Motor Distrib., Inc.,* 361 F.3d 50, 55 (1st. Cir. 2004) (evidence of Toyota's actions with other dealers was presented to show Toyota's allocation system as to plaintiff dealer was arbitrary and unfair); *Blackstone Subaru, Inc. v. Subaru of New England, Inc.,* 1993 WL 818780 at *1 (Mass. Super. 1993) (Court denied motion in limine to exclude post-termination negotiations with other dealers that might reflect on Subaru's good faith in its dealings with Blackstone).

---

[1] Harley-Davidson greatly exaggerates the amount of time it will take to present and rebut the evidence concerning other dealers. Whether or not Harley-Davidson has 670 dealers nationwide, Cycle-Craft plans on introducing a limited amount of evidence regarding only a limited number of other dealerships that Harley-Davidson investigated for non-retail sales. The equal time limits that the Court has imposed on each party's case will ensure that Harley-Davidson will have sufficient time to respond to any evidence that Cycle-Craft presents. In addition, it is worth noting that Cycle-Craft, in the spirit of compromise, has removed numerous exhibits concerning other dealers that Harley-Davidson objects to in its brief.

None of the cases that Harley-Davidson relies on in support of its argument deal with Chapter 93B or even Massachusetts law. Harley-Davidson relies on *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies*, 970 F.2d 273 (7th Cir. 1992), but the language it quotes makes clear that the court was focusing only on whether the contract in that case was breached, and nothing more. That case is not applicable here, where the issues under Mass. Gen. Laws Ch. 93B § 5(a) and Cycle-Craft's pretext claim raise broader issues. The other cases relied on by Harley-Davidson are similarly inapposite as they all involve claims brought under federal or other states' laws and two deal only with sufficiency of evidence, as opposed to admissibility. *See Professional Mobile Home Brokers, Inc. v. Security Pacific Housing Services, Inc.*, 53 F.3d 329, 1995 WL 255937 (4th Cir. 1995) (information regarding the defendant's dealings with other mobile home dealers was ruled inadmissible at trial in action under North Carolina law); *Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co.,* 781 F.2d 1520, 1527-28 (11th Cir. 1986) (evidence at trial that the distributor did not uniformly apply its quota system was not <u>sufficient</u> to prove bad faith termination in action under federal and Alabama law); *Zebelman v. Chrysler Corp.*, 299 F. Supp. 653, 658 (E.D. Mo. 1968) (evidence regarding distributor's inconsistent actions regarding quota allocation with other dealers was held <u>insufficient</u> to enjoin the termination in action under federal and Missouri law).

## CONCLUSION

In sum, evidence regarding Harley-Davidson's treatment of other dealers for alleged non-retail sales is relevant under the plain language of Chapter 93B, as confirmed by Massachusetts case law. Harley-Davidson fails to address the operative statutory language and relevant case law in its brief. Cycle-Craft requests that it be permitted to introduce such evidence at trial.

5

Respectfully submitted,

CYCLE-CRAFT CO., INC.

By its attorneys,

   /s/ James C. Rehnquist
James C. Rehnquist (BBO# 552602)
Samantha L. Schreiber (BBO# 640058)
Christopher C. Nee (BBO# 651472)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: May 22, 2006

**CERTIFICATE OF SERVICE**

    I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 22, 2006.

   /s/ James C. Rehnquist
James C. Rehnquist

LIBA/1700398.1